IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FEESERS, INC.,** | : | **CIVIL NO. 1:CV-04-0576** |
| **Plaintiff,** | : | |
| | : | **JUDGE SYLVIA H.  RAMBO** |
| **v.** | : | |
| **MICHAEL FOODS, INC. and SODEXHO, INC.,** | : | |
| | : | |
| **Defendants.** | : | |

## M E M O R A N D U M

Before the court is Feesers' motion to find Michael Foods in contempt of this court's April 27, 2009 order, and for permanent injunctive relief.  For the reasons that follow, the motion will be granted.

**I.      Background**

**A.      Procedural History**

On May 5, 2009, Feesers filed a motion to find Michael Foods in contempt, and for temporary and permanent injunctive relief barring Michael Foods from refusing to do business with Feesers.  (Doc. 397.)  A supporting brief, (Doc. 400), and declarations by Eamon O'Kelly, (Doc. 398), and John Tighe (Doc. 399) were filed the same day.  On May 11, 2009, Michael Foods filed a brief in opposition (Doc. 409), which was supported by a declaration by Michael Elliott (Doc. 410).   Feesers filed a reply brief on May 13, 2009 (Doc. 418) supported by a declaration by Thomas Brandt (Doc. 417).  Michael Foods has sought leave to file a surreply (Doc. 420), which the court now grants.  On May 15, 2009, the court held a hearing on Feesers' motion for contempt and permanent injunctive relief, at which

both parties were represented by counsel and presented the testimony of a number of witnesses.[1]  Accordingly, the motion is ripe for disposition.

### B.    **Factual Findings**[2]

On April 27, 2009, following five years of litigation and a three week bench trial, this court found that Defendant Michael Foods violated the Robinson-Patman Act by selling its products to Defendant Sodexho at lower prices than its competitor, Plaintiff Feesers.  The court granted injunctive relief to Feesers and enjoined Michael Foods "from discriminating unlawfully in price in favor of Sodexho and against Feesers."  (Apr. 27, 2009 Order, Doc. 395 at 84.)  Rather than seek a stay of that order pending appeal pursuant to Federal Rule of Civil Procedure 62(c), Michael Foods chose to terminate its direct sales to Feesers effective immediately, including orders already in transit, unless Feesers agreed to pay the

---

[1] At the outset of the hearing, Michael Foods objected to the hearing on due process grounds.  "Due process generally requires an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." *Roe v. Operation Rescue*, 920 F.2d 213, 217 (3d Cir. 1990).  Michael Foods raised two claims:  First, Michael Foods argued that it had not been given adequate notice of the contempt charge and opportunity to be heard because the court did not issue a show cause order specifically stating the grounds for contempt.  Second, although the parties' motions and briefs were supported by verified and undisputed affidavits, Michael Foods insisted that due process required it to have the opportunity to cross examine Feeers' affiants at the hearing.

Michael Foods' first argument lacks merit, and the second is moot.  First, although the court did not issue a show cause order,  Plaintiff's motion to find Michael Foods in contempt placed Michael Foods on notice of the conduct against which it must defend itself.  Additionally, the original order setting a hearing date, (Doc. 407), and a second order changing the hearing date (Doc. 408), both clearly state that the purpose of the hearing would be to address Plaintiff's motion for contempt and permanent injunctive relief.  Moreover, Michael Foods filed both a response and a surreply addressing Plaintiff's motion for contempt and injunctive relief.  Michael Foods has identified no prejudice that resulted from the court's failure to issue a show cause order.  Accordingly, the court finds Michael Foods claim that it lacked meaningful notice of the purpose of the hearing and opportunity to be heard is unfounded.

Michael Foods' second objection is moot because Feesers presented its affiants at the hearing, and their testimony was subject to cross examination by Michael Foods.  Additionally, Michael Foods presented the testimony of witnesses in its own defense.  The court rejects Michael Foods' claim that it was deprived of due process.  Michael Foods had both adequate notice of the charge of contempt, and a meaningful opportunity to be heard.

[2] The court finds that these facts were established by clear and convincing evidence presented at the hearing.

2

national list price for Michael Foods products pending appeal. (*See* Contempt Hrg. Exs. P3, P4.) Under duress, Feesers signed the agreement, and an order of food that had been delayed was released and shipped on May 4, 2009. However, upon notice that Feesers was filing the instant motion, Michael Foods terminated its direct sales to Feesers at any price. As a result, Feesers was unable to completely fill a number of customer orders for Michael Foods products. (*See* Ex. P5 (listing shortages in customer deliveries).)

Michael Foods also sent letters to four of Feesers' largest customers informing them that it would no longer directly supply Michael Foods products to Feesers, and providing a list of other competing distributors from whom they could obtain Michael Foods products. (Contempt Hrg. Ex. P8.) Additionally, Michael Foods wrote to UniPro, a group purchasing organization of which Feesers is a member, to inform it that going forward Michael Foods would refuse to honor any discounts or rebates for products resold to Feesers.[3] (Contempt Hrg. Ex. P6.) Finally, in anticipation of the fact that Feesers would purchase its products through a third party, Michael Foods also wrote to Dot Foods, a redistributor, to inform it that Michael Foods would honor no deviations or discounts on Michael Foods products resold to Feesers. (Contempt Hrg. Ex. P7.)

Feesers employee John Tighe testified that Feesers has obtained some Michael Foods products from Dot Foods, which purchases Michael Foods products at the national distributor list price, the same price that Feesers previously paid when it purchased products from Michael Foods. Dot Foods then resells the products to Feesers at a higher price than the national list price. However, as it promised in its

---

[3] The UniPro discounts and customer-specific deviated prices are described at length in this court's April 27, 2009 memorandum and order. In that opinion, this court concluded that unlike the rebates, allowances, and deviated pricing enjoyed by Sodexho, the rebates and price deviations received by Feesers do not constitute unlawful price discrimination.

letter to Dot Foods, Michael Foods refuses to honor any rebates or allowances on its products resold to Feesers. This includes not only the rebates Feesers would otherwise be entitled to as a member of UniPro, but also customer-specific deviated prices which were separately negotiated between Michael Foods and certain institutional food service customers. Thus, in order to obtain Michael Foods products, Feesers must now pay more than the national list price paid by other distributors—the very price that the court found to violate the Robinson-Patman Act—and it can no longer obtain UniPro rebates and customer-specific deviated pricing. Tighe testified that for the time being Feesers is honoring customer-specific price deviations in its resales of Michael Foods products to customers by selling these products at a loss. However, this practice is financially unsustainable for Feesers in the long term.

The court also heard testimony about the impact of the loss of Michael Foods products on Feesers' business. Tighe testified that although Michael Foods products constitute only a small portion of Feesers' sales to any one customer, they are nonetheless important to customers. Michael Foods is one of the nation's leading suppliers of egg and potato products. Its products are often included in market baskets demanded by customers to determine product availability of potential suppliers. Additionally, many of Feesers' customers negotiate agreements with Michael Foods for discounts on their products. Michael Foods presented testimony that customers may obtain similar egg and potato products from Michael Foods' competitors such as Sunnyfresh, and Cargill Kitchen Solutions, which Feesers also carries. However, due to the factors cited above, there is a significant risk that Feesers' customers will choose to purchase Michael Foods products from Feesers' competitors rather than switch products. Indeed, in its letters to four of Feesers' customers informing them that Michael Foods had terminated its

4

relationship with Feesers, Michael Foods attached a list of distributors from whom the customers could still obtain Michael Foods products. For these reasons, the court finds that Michael Foods' termination of sales to Feesers will likely result in lost sales and customers for Feesers.

Michael Foods employee Michael Elliott testified at the hearing about Michael Foods' decision to terminate its direct sales to Feesers. According to Elliott, Michael Foods believed it had four options available to comply with the court's order: (1) offer the Sodexho price to Feesers; (2) offer the national distributor list price to Sodexho; (3) lower the national list price for all distributors; or (4) terminate its business with Feesers. Michael Foods found the first option unappealing because it believed that due to contracts with other distributors, it would be forced to provide lower pricing to other distributors if it offered such prices to Feesers. This would result in lower profits to Michael Foods. Michael Foods rejected the second option because it believed that raising Sodexho's prices would cause Sodexho to purchase its egg and potato products from a competitor. Michael Foods also considered lowering the national list price, but decided against it after estimating that it would cost over $20 million to do so. (May 15, 2009 Hrg. Transcript at 121:12–15.)

Ultimately Michael Foods chose to terminate its direct sales to Feesers. Although Michael Foods has done business with Feesers for many years, Feesers has no supply contract with Michael Foods, nor does it have a standing order. However, as noted above, Michael Foods remains willing to sell its products to Feesers, albeit at the unlawful higher prices. Additionally, Michael Foods continues to sell products to Feesers through a third-party redistributor, and refuses to honor any discounts or price deviations to Feesers, thereby ensuring that Feesers could get Michael Foods products only at unlawfully higher prices. Thus, Michael Foods'

5

decision to terminate business with Feesers was solely motivated by Michael Foods' desire to avoid changing its pricing system to comply with the court's order. Michael Foods has no other business reason for terminating its relationship with Feesers, and it would resume doing business with Feesers if Michael Foods prevails in its appeal of the court's April 27, 2009 decision.

In sum, Michael Foods' conduct following this court's April 27, 2009 opinion and order has placed Feesers in a far worse position than it would have been in had it never sought to vindicate its rights under the Robinson-Patman Act. Sodexho continues to enjoy lower prices on Michael Foods products, and Feesers is now paying an even higher price than any of its competitors for the same products.

## II.        Discussion

### A.      Contempt

Feesers seeks an order finding Michael Foods in civil contempt of the April 27, 2009 order. In order to find a party in contempt, the court must find by clear and convincing evidence the following three elements: (1) the existence of a valid court order; (2) of which the alleged contemnor was aware; and (3) which the alleged contemnor violated. *John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003). "A finding of contempt must be supported by clear and convincing evidence." *Harris v. City of Phila.*, 47 F.3d 1311, 1321 (3d Cir. 1995). Any ambiguity of the order is construed in favor of the alleged contemnor,

> [b]ut this is not to say that where an injunction does give fair warning of the acts that it forbids, it can be avoided on merely technical grounds. The language of an injunction must be read in the light of the circumstances surrounding its entry: the relief sought by the moving party, the evidence presented at the hearing on the injunction, and the mischief that the injunction seeks to prevent.

*United States v. Christie Indus., Inc.*, 465 F.2d 1002, 1006–07 (3d Cir. 1972).

Here there is no dispute that this court's April 27, 2009 order was valid and known to Michael Foods. The only issue is whether Michael Foods' conduct constitutes disobedience of the order. Plaintiff argues that Michael Foods' May 1, 2009 letters to Feesers (Contempt Hrg. Exs. P3, 4), make clear that it is attempting to extort an agreement from Feesers to acquiesce in the higher prices, and that Michael Foods' continued sales to Feesers through Dot Foods constitute tertiary discrimination in violation of the order. The court agrees.

Michael Foods disobeyed the court's injunction by requiring Feesers to accept the unlawfully higher prices as a condition of continued sales pending appeal. In its briefs, Michael Foods characterizes this action as an attempt to seek a stay pending appeal of this court's decision. Michael Foods' reasoning is specious. Its attorneys are well versed in the requirements of the Federal Rules of Civil Procedure. They were aware that the proper course of action would have been to seek a stay of the injunction pursuant to Fed. R. Civ. P. 62(c), which provides that an injunction may only be stayed "on terms for bond or other terms that secure the opposing party's rights." Instead, Michael Foods chose a path intended to circumvent this court's order and to continue its unlawful price discrimination by selling its products to Feesers at a higher price than Sodexho. These actions constituted contempt of the April 27, 2009 order.

Ultimately, Michael Foods terminated its direct sales to Feesers altogether after Feesers sought relief in this court. However, Michael Foods continues to violate the order through its ongoing sales to Feesers through third parties such as Dot Foods. Section 2(a) of the Robinson-Patman Act makes it unlawful "to discriminate in price between different purchasers of like grade and quality . . . where the effect of such discrimination may be substantially to lessen

competition . . . with any person who either grants or knowingly receives the benefit of such discrimination, *or with customers of either of them*." 15 U.S.C. § 13(a). Thus, tertiary price discrimination, or a price disparity that lessens competition between the customers of a seller's customers, is also unlawful under the Robinson-Patman Act. *See, e.g.*, *Perkins v. Standard Oil Co. of Ca.*, 395 U.S. 642 (1969) (finding price discrimination where disparity impaired competition between the customers of the customers of the seller's favored and disfavored purchasers). In *Perkins*, the Supreme Court made clear that a seller cannot insulate itself from a charge of price discrimination simply by adding an additional link in the supply chain. *Id.* at 648.

Here, Michael Foods is attempting to avoid its obligations under the Robinson-Patman Act in defiance of this court's injunction by inserting an additional link into the distribution chain through its sales to Dot Foods for resale to Feesers. However, the price discrimination continues because Dot Foods purchases products for resale to Feesers from Michael Foods at the unaltered national distributor list price, and resells them to Feesers at an even higher rate. Meanwhile, Michael Foods continues to sell products to Sodexho (through its distributor) at the far lower Sodexho-deviated prices. Michael Foods compounds this price disparity by refusing to honor UniPro rebates or customer-specific deviated pricing. Thus Michael Foods continues to discriminate in price between Feesers and Sodexho in violation of the Robinson-Patman Act and in defiance of this court's April 27, 2009 order.

In its surreply, Michael Foods argues that Feesers lacks standing to claim that Michael Foods' tertiary price discrimination violates the Robinson-Patman Act, and thus it has committed no price discrimination "against Feesers" as prohibited by the order. Michael Foods is correct that Feesers would lack standing

8

to file such a suit in the first instance.  *See Klein v. Lionel Corp.*, 237 F.2d 13, 15 (3d Cir. 1956) (holding that only the direct purchaser of food from the seller has standing to bring a Robinson-Patman Act suit against a seller.)  However, in this case, Feesers has already obtained a judgment against Michael Foods prohibiting it from discriminating in price.  Michael Foods cannot avoid this court's mandate to cease unlawful price discrimination by simply inserting an additional link in the supply chain.  Even if Feesers lacks standing to initiate a suit against Michael Foods for tertiary price discrimination, Feesers has standing to enforce this court's order.

Michael Foods further attempts to defend itself against the charge of contempt by arguing that the April 27, 2009 order did not specifically prohibit it from refusing to deal with Feesers, and that the court would have had no power to do so.  However, this argument is misplaced.[4]  Feesers claims, and the court finds, that Michael Foods is in contempt of the order not for refusing to deal, but rather for its continued dealings with Feesers in defiance of the order.

### B.    Permanent Injunctive Relief

As a remedy for Michael Foods' contemptuous conduct, and to prevent future injury, Feesers seeks a permanent injunction pursuant to Section 16 of the Clayton Act requiring Michael Foods to make its products available to Feesers on the same terms as Sodexho or any other distributor, so long as Feesers otherwise qualifies under Michael Foods' usual standards for customers.

In crafting a remedy for Michael Foods' contempt, the court is guided by Section 16 of the Clayton Act, which sets forth the court's remedial powers for violations of the Robinson-Patman Act.  15 U.S.C. § 26.  The Supreme Court has recognized that Section 16 vests the district courts "with large discretion to model

---

[4] The court will address Michael Foods' arguments concerning the court's power to enjoin it from refusing to deal in Section II.B below.

their judgments to fit the exigencies of a particular case." *United States v. Glaxo Group Ltd.*, 410 U.S. 52, 64 (1973). "The purpose of relief in an antitrust case is so far as practicable, cure the ill effects of the illegal conduct, and assure the public freedom from its continuance." *Id.* In *United States v. Ward Baking Co.*, the Supreme Court noted that the equitable relief available to cure an antitrust violation "is not limited to prohibition of the proven means by which the evil was accomplished, but may range broadly through practices connected with acts actually found to be illegal." 376 U.S. 327, 330 (1964).

Here, following five years of litigation and a three week bench trial, this court concluded that Michael Foods' pricing violates the Robinson-Patman Act, and issued an injunction aimed at eliminating such discrimination. Now the court has found that Michael Foods defied this court's injunction through its direct and indirect sales to Feesers at unlawfully high prices. However, Michael Foods has made clear that it believes that it is entitled to continue to circumvent the court's injunction by (1) retaining its current system of discriminatory pricing and (2) refusing to deal with Feesers. The court must now craft an appropriate remedy to cure Michael Foods' continued unlawful price discrimination against Feesers.

A limited injunction prohibiting Michael Foods from direct and indirect discrimination would be an insufficient remedy for contempt in this case. As Michael Foods acknowledges, Feesers can still obtain its products through third parties, all of whom purchase Michael Foods products at the discriminatory national list price. The effect of this is that Feesers would continue buying food at discriminatory prices, the very conduct prohibited by the court's April 27, 2009 injunction. Thus, Michael continues to engage in price discrimination, albeit tertiary rather than secondary. As a result of Michael Foods' actions, Feesers currently pays

significantly higher prices than its competitors for Michael Foods products, and it is forced to sell those products at a loss or risk losing its customers to competitors. In either event, Sodexho continues to benefit from prices far lower than those obtained by Feesers. Under these circumstances, the court concludes that nothing short of an injunction prohibiting Michael Foods from refusing to deal with Feesers will be sufficient to prevent Michael Foods from perpetuating its discriminatory pricing as between Feesers and Sodexho, and to vindicate the Robinson-Patman Act.

Such an injunction would not be unprecedented. For example, in *Trabert & Hoeffer, Inc. v. Piaget Watch Corp.*, the Seventh Circuit upheld an injunction prohibiting a company from refusing to deal. 633 F.2d 477 (7th Cir. 1980). In that case, a customer who was terminated as part of a scheme to create a monopoly prevailed in a Sherman Act claim against the seller. The Seventh Circuit held that an injunction against the seller's refusal to deal was necessary both to cure the past Sherman Act violation and prevent future violations. *Id.* at 486. Other courts have upheld similar injunctive relief granted pursuant to Section 16. *See, e.g.*, *United Shoe Machinery Corp.*, 391 U.S. at 246; *Lorain Journal Co. v. United States*, 342 U.S. 142, 155 (1951) (holding that the right of a private business to select its customers "is neither absolute nor exempt from regulation").

Michael Foods argues that this court has no authority to issue an injunction prohibiting it from refusing to deal with Feesers, citing both statutory authority and case law. First, Michael Foods directs the court to the following provision of the Robinson-Patman Act: "nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade." 15 U.S.C. § 13(a). According to Michael Foods, this proviso restricts the scope of injunctive relief available to remedy a Robinson-Patman Act violation. However,

the court reads the proviso as a limitation on liability under the Robinson-Patman Act, rather than a restriction on the available remedies under Section 16 of the Clayton Act for a violation of the Robinson-Patman Act.[5]  Michael Food cites to no authority supporting a different interpretation.

Moreover, even if the court were to accept Michael Foods' reading of the statute, the plain language of the proviso requires that such transactions be "bona fide."[6]  Here, the evidence is unequivocal that Michael Foods' sole reason for terminating Feesers was to keep its discriminatory pricing arrangements intact. Michael Foods cites no other legitimate business reason justifying its termination of sales to Feesers.  The court is aware of no cases defining bona fide transactions under this section, but under any reading of the statute, Michael Foods' conduct could not be considered bona fide.  Accordingly, the court rejects Michael Foods' claim that § 13(a) bars the imposition of injunctive relief prohibiting it from refusing to deal with Feesers.

Additionally, the cases cited by Michael Foods do not persuade this court that it has no power to enjoin Michael Foods from refusing to deal in this case. It is well settled law that refusing to deal is not an independent violation of the Robinson-Patman Act.  *See L&L Oil Co, Inc. v. Murphy Oil Corp.*, 674 F.2d 1113, 1120–21 (5th Cir. 1982); *see also House of Materials v. Simplicity Pattern Co.*, 298 F.2d 867 (2d Cir. 1962).  Moreover, a number of courts have held that a buyer lacks standing to bring a Robinson-Patman Act claim where it ceased buying from the

---

[5] The court does not suggest, however, that the proviso itself creates any substantive rights under the Robinson-Patman Act.  *See L&L Oil Co., Inc. v. Murphy Oil Corp.*, 674 F.2d 1113, 1120–21 (5th Cir. 1982) (holding that the proviso creates no rights, but instead "merely reiterates the principle announced in *United States v. Colgate*, 250 U.S. 300, 307 (1919), that a supplier may choose its own customers so long as it does not do so in restraint of trade.")

[6] Feesers does not claim that Michael Foods' conduct constitutes a restraint of trade.

12

seller prior to commencement of litigation, and there was no showing that the buyer intended to resume purchases in the future. *See, e.g.*, *H.L. Hayden Co. v. Siemens Med. Systems*, 879 F.2d 1005, 1021–22 (2d Cir. 1988); *see also B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*, 439 F.3d 653, 668–69 (10th Cir. 2006) (citing *Hayden*). However, Feesers does not claim that Michael Foods' refusal to deal constitutes an independent violation; instead, it argues that Michael Foods' refusal to deal with Feesers perpetuates the pricing practices that this court found unlawful. The court is aware of no case in which a seller's refusal to deal came after the court found the seller's pricing practices to violate the Robinson-Patman Act.

Michael Foods also cites *House of Materials, Inc.*, in which the Second Circuit reversed a preliminary injunction requiring a seller to continue to do business with one of its former customers while that customer's suit was pending. 298 F.2d 867 (2d Cir. 1962). In that case, after the FTC prevailed in a Robinson-Patman suit against Simplicity, House of Materials, a small customer of Simplicity, brought a private action to recover treble damages. After the lawsuit was initiated, but before it was resolved, Simplicity announced that it would terminate business with House of Materials. House of Materials sought a preliminary injunction requiring Simplicity to continue to do business while the litigation was pending. The district court concluded that Simplicity's conduct in refusing to deal constituted an independent antitrust violation, and so it granted the preliminary injunction pursuant to Section 16 of the Clayton Act. *Id.* at 869. The Second Circuit reversed, holding that refusal to deal was not itself a violation of any antitrust laws. *Id.* at 870–71.

The court then went on to consider "whether the trial court could have enjoined Simplicity's conduct in the proper exercise of its general equity powers." *Id.* at 871. Although the court expressed the opinion that "in an appropriate case a

13

court might restrain a defendant from attempting to coerce a plaintiff into discontinuing a lawsuit," it concluded that such an injunction was inappropriate in the case before it. The court noted that House of Materials' contract with Simplicity had expired, so it had no contractual right to continue the purchasing relationship. Additionally, the court emphasized that House of Materials sought only treble damages for past injury in its complaint, and not injunctive relief. Thus, the court found that injunctive relief barring Simplicity from refusing to deal was inappropriate. *Id.* at 871–73.

However, less than a year after *House of Materials* was decided, the Third Circuit reached a different conclusion in *Bergen Drug Co. v. Parke, Davis, & Co.*, 307 F.2d 725 (1962). In *Bergen Drug*, the plaintiff filed an antitrust suit seeking treble damages and permanent injunctive relief enjoining the seller from refusing to sell its products to the plaintiff on the same terms as other purchasers. *Id.* Shortly after the suit was filed, the seller terminated all sales to the plaintiff, who sought a preliminary injunction from the district court to enjoin the seller from refusing to deal pending the outcome of the litigation. The district court denied the motion, holding that it had no authority to issue such an injunction. The Third Circuit reversed. Citing *House of Materials*, the court concluded that the grant of such an injunction was within a district court's equity powers. *Id.* at 726. In doing so, the court specifically rejected the defendant's argument that the court lacked the power to enjoin a seller from refusing to deal. The court noted that "the defendant can choose its customers, but it should not be permitted to do so in order to stifle the main action, especially where it is apparent that such conduct will further the monopoly which plaintiff alleges defendant is attempting to bring about and which, if proved, would entitle plaintiff to permanent injunctive relief." *Id.* at 727.

14

The *Bergen* court found that equitable relief enjoining the seller from refusing to deal should have been granted.  In reaching this conclusion, the court placed particular weight on the public interest in private enforcement of the antitrust laws, the impact of refusal to deal on the plaintiff's business and customers, and the relative lack of hardship to the defendant if it were required to continue sales.  *Id*. at 728.  Also significant to the court was the fact that the buyer and seller had enjoyed a longstanding business relationship prior to the lawsuit, and it was clear that the seller's decision was motivated solely by the plaintiff's attempts to vindicate its rights under the antitrust laws, and not by any other legitimate business reason.  *Id.*

Though the *House of Materials* and *Bergen* courts reached opposite decisions about the propriety of injunctive relief in their respective cases, both courts held that it is within a court's equitable power to issue an injunction restricting the right of a seller to refuse to deal with a customer.  To the extent that the two cases conflict, the court is bound by *Bergen*, which remains the law of this circuit.

In sum, as a remedy for contempt and to prevent future competitive injury to Feesers, the court will exercise its equitable power pursuant to Section 16 of the Clayton Act and enjoin Michael Foods from refusing to sell its products to Feesers on the same terms as they are sold to Sodexho, so long as Feesers otherwise meets its standards as a customer.  The court rejects Michael Foods arguments that the court is barred by § 13(a) or case law from issuing such an injunction.

### III.　　　Conclusion

For the reasons set forth above, the court finds Michael Foods in contempt of its April 27, 2009 order.  Michael Foods' motion for leave to file a surreply will be granted.  Feesers' motion to find Michael Foods in contempt of this

court's April 27, 2009 order will be granted, and as a remedy for contempt, the court will enjoin Michael Foods from refusing to sell its products to Feesers on the same terms as they are sold to Sodexho, so long as Feesers otherwise meets its standards as a customer.

s/Sylvia H. Rambo
United States District Judge

Dated:  May 26, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FEESERS, INC.,

           **Plaintiff,**

           **v.**

MICHAEL FOODS, INC. and
SODEXHO, INC.,

           **Defendants.**

: : : : : : : : : : : : :

CIVIL NO. 1:CV-04-0576

JUDGE SYLVIA H. RAMBO

# **O R D E R**

In accordance with the foregoing memorandum of law, **IT IS
HEREBY ORDERED THAT**:

(1) Michael Foods' motion for leave to file a surreply (Doc. 420) is
**GRANTED**;

(2) Feesers' motion to find Michael Foods in contempt of this court's
April 27, 2009 order is **GRANTED**;

(3) Michael Foods is enjoined from refusing to sell its products to
Feesers on the same terms as they are sold to Sodexho, so long as Feesers otherwise
meets its standards as a customer.

(4) Feesers is entitled to costs and reasonable attorneys fees incurred in
bringing this motion. Feesers shall submit a description of the fees and costs
incurred in bringing this motion in its petition for attorneys fees as the prevailing
party in this case.

                              s/Sylvia H. Rambo
                              United States District Judge

Dated: May 26, 2009.