# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA
# HARRISBURG DIVISION

------------------------------------------------ x
                                              :

FEESERS, INC.,
                          Plaintiff,        :           Case No. 1:CV-04-576

            v.                       :             (Judge Rambo)

MICHAEL FOODS, INC. AND
SODEXHO, INC.,                         :

                                                :

                         Defendants.   :

------------------------------------------------    x

# PLAINTIFF FEESERS, INC.'S MEMORANDUM OF
# LAW IN SUPPORT OF MOTION FOR
# REASONABLE ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I. Introduction ............................................................................................................. 1

II. Calculating the Appropriate Award of Fees ........................................................ 3

    A. The Fees Claimed Are Reasonable .............................................................. 3

        1. The Rates Charged by Dewey Were Reasonable ................................. 4

        2. Local Counsel's Hourly Rates and Fees Were Reasonable ............... 11

    B. The Hours Expended by Dewey Were Reasonable ...................................... 12

    C. The Fact That Feesers Did Not Request, and Thus Was Not Awarded,
       Damages Is Irrelevant to the Award of Fees ................................................ 19

III. Feesers Should Also Recover Its Reasonable Costs of Litigation ...................... 20

IV. Conclusion ........................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Alphin v. Henson*, 552 F.2d 1033 (4th Cir. 1977) ............................................................20

*Beane v. Bank of N.Y. Mellon*, No. 07-CV-09444 (RMB), 2009 WL
   874046 (S.D.N.Y. Mar. 31, 2009) ...............................................................................20

*Bowers v. Foto-Wear, Inc.*, No. 3:CV-03-1137, 2007 WL 4086339 (M.D.
   Pa. Nov. 15, 2007) .........................................................................................................20

*Cape Cod Food Products, Inc., v. National Cranberry Association*, 119 F.
   Supp. 242 (D. Mass. 1954) ...........................................................................................10

*Cunningham v. City of McKeesport*, 753 F.2d 262 (3d Cir. 1985) ....................................4

*Enron Corp. Sec. Derivative & "ERISA" Litigation v. Enron Corp.*, 586 F.
   Supp. 2d 732 (S.D. Tex. 2008) .....................................................................................18

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) .........................................................7

*Hanover Shoe, Inc., v. United Shoe Machine Corp.*, 245 F. Supp. 258
   (M.D. Pa. 1965) .......................................................................................................18, 19

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................................4

*Home Placement Serv., Inc., v. Providence Journal Co.*, 819 F.2d 1199
   (1st Cir. 1987) ...............................................................................................................20

*J.F. Feeser, Inc., v. Serv-A-Portion, Inc.*, 909 F.2d 1524 (3d Cir. 1990) ..........................6

*Jama Corp. v. Gupta*, Nos. 3:99-CV-01624, 3:99-CV-1574, 2008 WL
   108671 (M.D. Pa. Jan. 4, 2008) .....................................................................................4

*Kranzdorf v. Green*, No. CV-83-566, 1986 WL 8267 (E.D. Pa. July 25,
   1986) ..............................................................................................................................3

*Lindy Brothers Builders, Inc. of Phila. v. American Radiator & Standard
   Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) ...............................................................4

*Maceira v. Pagan*, 698  F.2d 38 (1st Cir. 1983) .............................................................7, 8

*Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S.
   574 (1986) ......................................................................................................................6

*Miller v. Hedlund*, No. CV-78-259-FR, 1989 WL 131274 (D. Or. Oct. 12, 1989) ................................................................................................19, 20

*Noerr Motor Freight, Inc., v. Eastern R.R. Presidents Conference*, 166 F. Supp. 163 (E.D. Pa. July 22, 1958)..............................................................19

*Planned Parenthood of Central New Jersey v. Attorney General of the State of New Jersey*, 297 F.3d 253 (3d Cir. 2002) ......................................18

*Serio v. Wachovia Sec., LLC*, No. CV-06-4681(MF), 2009 WL 900167 (D.N.J. Mar. 31, 2009) ................................................................................18

*United States v. Sam Ellis Stores, Inc.*, 768 F. Supp. 286 (S.D. Cal. 1991) ......................8

*United States v. Scheingold*, 293 F. Supp. 2d 447 (D.N.J. 2003) ......................................8

*Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983) ....................................................3

*Watcher v. Pottsville Area Emergency Medical Serv., Inc.*, 559 F. Supp. 2d 516 (M.D. Pa. 2008) ........................................................................4, 18

*Wiley v. Nationwide Mutual Insurance Co.*, No. CV-89-1467, 1990 WL 33888 (E.D. Pa. March 22, 1990) ................................................................4

## STATUTES AND RULES

15 U.S.C. § 26 ...............................................................................................................19

Fed. R. Civ. P. 54(d) ........................................................................................................2

# I.   <u>Introduction</u>

After five years of hard fought litigation, Dewey & LeBoeuf LLP, (and its predecessor firm, Dewey Ballantine LLP, together "Dewey"), won a judgment and injunction for Feesers, Inc. ("Feesers") against Michael Foods, Inc. ("Michael Foods") and Sodexo, Inc. ("Sodexho"), in which the Court ordered an end to defendants' "stunning" price discrimination scheme.  The judgment dated April 27, 2009, represents an outstanding result in a complex and heavily litigated case.

The Court's Order provides that, among other things: "No later than 30 days from the date of this order, Plaintiff shall submit a petition for reasonable attorneys' fees and costs, supported by affidavits describing the experience of the attorneys and their standard hourly rates."

For the reasons described herein and the accompanying affidavits of Eamon O'Kelly, George E. Mastoris, and Stephen M. Williams, Feesers now requests an award of the following reasonable attorneys' fees:

(1) Dewey's fees in the total amount of $9,255,624.39.

(2) The fees of Harrisburg local counsel, Cohen, Seglias, Pallas, Greenhall & Furman, P.C. and Wix Wenger & Weidner in the total amount of $33,023.95.[1]

---

[1] Feesers' local counsel, Steven M. Williams, moved from Wix Wenger & Weidner to Cohen, Seglias, Pallas, Greenhall & Furman, P.C. during the course of this litigation.

The total amount of Dewey legal fees claimed herein has been reduced by (i) $318,041.86 (representing approximately 3.5% of the total Dewey fees), which was written off by Dewey in order to avoid any possible inefficiency or duplication of effort; and (ii) a further sum of $23,856.25, which was billed to and paid by Feesers, but which Feesers is not claiming because those fees were not reasonably related to the prosecution of this lawsuit.

Feesers also requests an award of $1,565,218.38 with respect to reasonable costs, including expert fees and costs.[2]

As this Court knows, Feesers obtained the judgment in this lawsuit after years of hotly contested litigation.  During this time, Feesers' counsel spent many thousands of hours of attorney and paralegal time reviewing and analyzing approximately 200,000 pages of documents, taking or defending 25 depositions of fact and expert witnesses, battling with defendants over numerous discovery issues, working with Feesers' expert economist to prepare his expert reports, filing or responding to numerous motions (including several rounds of dispositive motions), appealing to the Third Circuit this Court's award of summary judgment to defendants, and vigorously litigating a ten-day trial to a successful outcome.  More recently,

[2] Feesers is also submitting a separate Bill of Costs today pursuant to Fed. R. Civ. P. 54(d) in the amount of $232,535.67.

Feesers has also incurred the expense of moving successfully for an order of contempt and an injunction arising out of Michael Foods' efforts to evade the Court's April 27 Order and to coerce Feesers into acquiescing to unlawful discriminatory pricing.

In light of the complexity, duration, and hotly contested nature of this litigation, the fees and costs claimed herein were both reasonable and necessary for the positive result achieved on behalf of Feesers.

Feesers anticipates incurring additional legal fees and expenses in connection with the matters currently pending before this Court, including defendants' motions for reconsideration and this fee petition itself, as well as any appeal by defendants of the Court's judgment.  Feesers reserves the right to supplement this fee petition in order to claim additional fees and expenses incurred with respect to these or any other ongoing matters.

## II.   <u>Calculating the Appropriate Award of Fees</u>

### A.   **The Fees Claimed Are Reasonable**

In the Third Circuit, courts evaluating the reasonableness of attorneys' fees conduct "a twin inquiry [into] a reasonable hourly rate *and* a determination as to whether it was reasonable to expend the number of hours in a particular case."  *Kranzdorf v. Green*, No. CV-83-566, 1986 WL 8267, at *1 (E.D. Pa. July 25, 1986) (quoting *Ursic v. Bethlehem Mines*, 719 F.2d

3

670, 676 (3d Cir. 1983) (attached at Tab A); *see also Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-168 (3d Cir. 1973); *Watcher v. Pottsville Area Emergency Med. Serv., Inc.*, 559 F. Supp. 2d 516, 521 (M.D. Pa. 2008); *Jama Corp. v. Gupta*, Nos. 3:99-CV-01624, 3:99-CV-1574, 2008 WL 108671, at *4 (M.D. Pa. Jan. 4, 2008) (attached at Tab B).

### 1. The Rates Charged by Dewey Were Reasonable

With respect to the reasonableness of an hourly rate, the courts have held that an attorney's customary hourly rate generally reflects the reasonable market value of the attorney's services. *Lindy*, 487 F.2d at 167 ("The value of an attorney's time generally is reflected in his normal billing rate."); *Wiley v. Nationwide Mut. Ins. Co.*, No. CV-89-1467, 1990 WL 33888, at *1 (E.D. Pa. March 22, 1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) and *Cunningham v. City of McKeesport*, 753 F.2d 262, 268 (3d Cir. 1985)) (attached at Tab C).  Under this standard, the fees charged by Feesers' attorneys were reasonable and Feesers' claim should be awarded in full.

Feesers was represented throughout this litigation by lawyers from Dewey, an international law firm that is particularly noted for its litigation and antitrust practices.  The Dewey lawyers representing Feesers included

highly experienced antitrust litigators, including two of the most experienced Robinson-Patman Act lawyers in the country.

The hourly rates charged by Dewey lawyers who worked on this lawsuit, which were those lawyers' standard billing rates the time they were billed, are summarized as follows:

| BILLING RATES | | | | | | | |
|---|---|---|---|---|---|---|---|
| Timekeeper | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
| Kessler, J. | $725 | $725 | $750 | $800 | $850 | $925 | $925 |
| Collins, J. | $650 | $675 | $700 | $725 | $750 | $775 | $800 |
| O'Kelly, E. | $420 | $460 | $490 | $550 | $600 | $675 | $700 |
| Associates | $240 | $150-$335 | $240-$435 | $176-$435 | $260-$455 | $325-$495 | $425-$625 |
| Paralegals | N/A | $125 | $130-$185 | $140 | $160 | $175 | $175-$190 |
| Litigation Support | N/A | $85-$175 | $105-$210 | $125-$235 | $125-$235 | $250 | $230-$290 |

*See* O'Kelly Aff. ¶13.[3]

Feesers' lead counsel is Jeffrey L. Kessler, a partner in and the co-chairman of Dewey's Global Litigation Department. Mr. Kessler has had a distinguished career at Columbia University and Columbia Law School, where he is now a Lecturer-at-Law. He was long active in the leadership of the American Bar Association's Antitrust Section, is co-author of a treatise on antitrust law, and has been recognized by numerous publications as one

---

[3] "O'Kelly Aff." refers to the Affidavit of Eamon O'Kelly, dated May 27, 2009, submitted herewith.

of the country's leading antitrust litigators. A more detailed description of Mr. Kessler's background, experience and qualifications may be found in the O'Kelly Aff. ¶14, and in Exhibit D to the Mastoris Aff.[4]

Mr. Kessler has extensive experience in all aspects of antitrust law, having successfully litigated numerous antitrust cases, including several Robinson-Patman Act cases and the landmark United States Supreme Court case *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574 (1986). He was particularly well suited to represent Feesers in this Robinson-Patman Act lawsuit, having successfully represented Feesers previously in *J.F. Feeser, Inc., v. Serv-A-Portion, Inc.,* 909 F.2d 1524 (3d Cir. 1990), another notable Robinson-Patman Act lawsuit. See O'Kelly Aff. ¶14.

John F. Collins is a senior partner at Dewey with more than 35 years of legal experience. Mr. Collins, who earned his law degree from the University of Chicago Law School, has extensive antitrust expertise, is a former Assistant Editor of Antitrust Law Journal and the Annual Review of Antitrust Law Developments and a regular speaker on antitrust issues relating to distribution practices and price discrimination. Mr. Collins has recognized expertise in the Robinson-Patman Act, and he lectures on the Act

---

[4] "Mastoris Aff." refers to the Affidavit of George E. Mastoris, dated May 27, 2009, submitted herewith.

at an annual ALI-ABA course of study on product distribution and marketing. A more detailed description of Mr. Collins's background, qualifications and experience may be found in the O'Kelly Aff. ¶15 and in Exhibit E to the Mastoris Aff.

Eamon O'Kelly is a partner in and the co-chair of Dewey's Antitrust Practice Group. He earned his law degree from New York University School of Law, is active in the leadership of the American Bar Association's Antitrust Section, and is an editor of a forthcoming ABA antitrust treatise. He is an experienced antitrust litigator. A more detailed description of Mr. O'Kelly's background and qualifications may be found in the O'Kelly Aff. ¶16 and in Exhibit F to the Mastoris Aff.

Messrs. Kessler, Collins, and O'Kelly were supported by a team of experienced Dewey associates. *See* O'Kelly Aff. ¶17.

In a case of this magnitude and complexity, it was reasonable that, rather than relying on a local law firm, Feesers would seek out and retain counsel with expertise in antitrust litigation, and in particular the Robinson-Patman Act, even though such counsel's rates might be higher than the rates prevailing in Harrisburg. *See e.g. Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (acknowledging that it is reasonable in a complex case to engage non-local counsel and finding that their higher fees were

reasonable in the light of the complexity of the case); *Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir. 1983) (finding that rates higher than those prevailing in the local legal community were reasonable in light of the complexity of the case); *United States v. Scheingold,* 293 F. Supp. 2d 447, 452 (D.N.J. 2003) (allowing claim for higher fees because of the expertise of counsel); *United States v. Sam Ellis Stores, Inc.*, 768 F. Supp. 286, 289 (S.D. Cal. 1991) (stating that special factors such as expertise are reason for allowing award of higher attorneys' fees).

That it was appropriate for Feesers to retain the services of Dewey is illustrated by the fact that defendants also retained outside lawyers who specialize in antitrust, rather than relying on locally based counsel in Harrisburg.  Michael Foods was represented initially by Leonard, Street and Deinard, a reputable law firm based in Minneapolis, Minnesota, with Robert DeMay, a recognized antitrust specialist, as lead counsel.  Mastoris Aff. Exs. G, H, I.  In 2006, Michael Foods replaced Leonard, Street and Deinard as counsel with Latham & Watkins, a 2,100-lawyer international law firm with an excellent reputation in antitrust litigation.  Mastoris Aff. Exs. J, K. Michael Foods' lead counsel was Margaret M. Zwisler, a leading antitrust litigator with over 30 years of experience.  Mastoris Aff. Ex. L. Michael Foods was also represented by Alfred Pfeiffer, another noted antitrust

litigator.  Mastoris Aff. Ex. M.  Ms. Zwisler and Mr. Pfeiffer were supported by experienced Latham associates.

Sodexho was represented by Cooley Manion Jones LLP, a leading Boston law firm with a strong record of success in complex commercial litigation matters.  Mastoris Aff. Ex. N.  Sodexho's lead counsel was Martin F. Gaynor, a partner with extensive antitrust and trial experience.  Mastoris Aff. Ex. O.  Mr. Gaynor was supported by experienced associates from his law firm.

The reasonableness of Dewey's hourly rates is underscored by a comparison with Latham & Watkins' hourly rates.  For example *The Attorney and Consultant Rate Report (ACR)*, a survey compiled and published by Valeo Partners, LLC shows Latham & Watkins partners charging hourly rates up to $1,065 an hour in 2009.  Mastoris Aff. Ex. P. These rates are higher than the hourly rates charged by any of the Dewey partners in this lawsuit.  *See* O'Kelly Aff. ¶13.  Similarly, a fee petition filed in the Southern District of New York in 2007 shows Latham & Watkins partners billing at rates of up to $975 per hour.  Mastoris Aff. Ex. Q.  In the same year, the hourly rate at which Jeffrey Kessler, Dewey's lead counsel, billed Feesers was $850 per hour.  O'Kelly Aff. ¶13.  In that same year, Dewey's billing rate for Susannah Torpey, an attorney admitted in 2004, was

9

$430 per hour; by comparison, a more junior Latham & Watkins associate (admitted in 2005), was billed at the same rate.  O'Kelly Aff. ¶271, Mastoris Aff. Ex. P.  Similarly, in 2007 Dewey's billing rate for Elizabeth Haley, an attorney admitted in 2002, was $485, whereas Latham & Watkins' billing rate for a 2002 associate was between $500 and $600 per hour.  O'Kelly Aff. ¶271, Mastoris Aff. Ex. P.

Finally the reasonableness of Dewey's hourly rates is demonstrated by the fact that Feesers agreed to pay, and did pay, those rates without any assurance that it would one day be able to recover its fees.  As Judge Wyzanski put it over a half-century ago:

> [A] losing defendant must pay what it would be reasonable for counsel to charge a victorious plaintiff.  The rate is the free market price, the figure which a willing, successful client would pay a willing, successful lawyer.  Sometimes the figure may seem high.  But so far as price is determined by unique excellence and by social usefulness, the advocate is especially worthy of large recompense.

*Cape Cod Food Prods., Inc., v. Nat'l Cranberry Ass'n*, 119 F. Supp. 242, 244 (D. Mass. 1954).  That principle is no less valid today.

## 2.    Local Counsel's Hourly Rates and Fees Were Reasonable

Feesers was also represented by Harrisburg attorney, Steven Williams, as local counsel.  The hourly rates and the fees charged by Mr. Williams and his firms were as follows:

| Year | Timekeeper | Rate | Total Hours | Total Billed |
|------|-----------|------|-------------|--------------|
| 2004 | Williams, Steven M. | $185 | 23.7 | $4,421.50 |
|      | Dzuranin, Stephen J. | $185 | 0.20 | $37.00 |
|      | Zortman, Alison A. | $45 | 1.00 | $45.00 |
|      |  |  |  |  |
| 2005 | Williams, Steven M. | $185 - $200 | 43.30 | $8,262.50 |
|      | Getz, David R. | $205 | 0.40 | $82.00 |
|      | Schreiber, Rochelle C. | $45 | 6.10 | $274.50 |
|      | Dzuranin, Stephen J. | $185-$200 | 0.30 | $57.00 |
|      | Smith, Stephen P. | $125 | 0.50 | $62.50 |
|      |  |  |  |  |
| 2006 | Williams, Steven M. | $200-$210 | 18.30 | $3,809.00 |
|      |  |  |  |  |
| 2007 | Williams, Steven M. | $250 | 24.20 | $6,050.00 |
|      | Administrative Support | $100 | 0.10 | $10.00 |
|      |  |  |  |  |
| 2008 | Williams, Steven M. | $270 | 32.10 | $8,667.00 |
|      | Administrative Support | $100 | 0.20 | $20.00 |
|      |  |  |  |  |
| 2009 (to 5/21/09) | Williams, Steven M. | $285 | 3.10 | $883.50 |
|      | Cass, Jonathan A. | $285 | 1.20 | $342.00 |
|      |  |  |  |  |
|      | **TOTAL** |  |  | **$32,023.50** |

Williams Aff. ¶¶10, 11.[5]  Those rates and fees were reasonable.

---

[5] "Williams Aff." refers to the Affidavit of Stephen M. Williams, dated May 26, 2009, submitted herewith.

### B.    The Hours Expended by Dewey Were Reasonable

As described in more detail in the Affidavit of Eamon O'Kelly, submitted herewith, this litigation was both large scale and very complex. As this Court is aware, the lawsuit involved complex legal issues that were aggressively litigated, including the meaning of key elements of the Robinson-Patman Act in the context of the institutional food distribution industry.  The lawsuit also involved complex economic issues, including an analysis of multi-layered price discrimination in favor of Sodexho that included deviated pricing that Michael Foods made available to Sodexho through Sodexho's contract distributor, Sysco, and various other discounts, rebates and allowances that were paid directly by Michael Foods to Sodexho.  Dewey spent thousands of hours shepherding this complex lawsuit from an initial investigation in 2003 concerning Michael Foods' and Sodexho's discriminatory pricing scheme, to the successful result for Feesers embodied in this Court's judgment of April 27, 2009.

Neither Feesers nor Dewey plunged hastily into this lawsuit.  On the contrary, in the months before the complaint was filed, Dewey devoted significant time to attempting to reach an amicable resolution of the issues with Michael Foods.  O'Kelly Aff. ¶¶23-31.  It was only in March 2004,

when Michael Foods had made it clear that no such amicable resolution could be reached, that Feesers filed its complaint.  O'Kelly Aff. ¶¶7(a), 43.

Defendants made it clear from the outset that they would defend the lawsuit aggressively.  Although Michael Foods filed an answer, Sodexho moved to dismiss the complaint.  O'Kelly Aff. ¶¶7(b), 54.  While the motion to dismiss was pending, Sodexho dragged its feet in discovery.  Feesers eventually had to request the Court to intervene in order for Sodexho to produce documents requested by Feesers.  O'Kelly Aff. ¶¶7(i), 62.

Defendants' aggressive approach to discovery did not end there. Sodexho (and also Michael Foods) continued to resist Feesers' attempts to take discovery, causing Feesers to have to write to the Court on a number of occasions asking it to intervene.  O'Kelly Aff. ¶¶68, 80, 90.  As a result of defendants' hardball approach to discovery, the hours expended by Dewey lawyers (and thus the costs of discovery) were higher than they might otherwise have been.

The discovery that was undertaken in this lawsuit was extensive. Defendants eventually produced over 170,000 pages of documents, all of which had to be reviewed by Feesers' counsel, involving a considerable expenditure of time.  O'Kelly Aff. ¶¶7(d), 76, 87, 90, 95, 100, 106, 113, 119, 120, 122, 134.  Indeed, at one point, the number of documents that Sodexho

identified as being responsive to the document request was so great that Feesers agreed to send lawyers to Sodexho's headquarters in Gaithersburg, Maryland in order to review documents on site and to select a representative subset for further production.  O'Kelly Aff. ¶113.

Feesers in turn produced many thousands of pages of documents in response to defendants' documents requests, and had to review many thousands of pages more to determine if they were responsive to defendants' requests.  O'Kelly Aff. ¶¶67, 75, 87, 90, 95, 100, 113, 129.  Feesers counsel also had to review documents for privilege and to generate privilege logs. O'Kelly Aff. ¶¶67, 87, 90, 95, 100, 113, 129.  In addition to the lawyers' time in reviewing all of these documents, Feesers also had to expend considerable time on paralegals and litigation support staff to process these documents, including copying and indexing documents and converting hard-copy documents to electronic formats.  O'Kelly Aff. ¶¶72, 82, 88, 97, 104, 111, 116, 129, 131.

Both Feesers and the defendants also took extensive discovery of non-parties.  Feesers  issued subpoenas seeking documents from Michael Foods' broker, iMark of Pennsylvania; Sodexho's contract distributor, Sysco Corporation; and three suppliers of food and food-related products, Schwan's, McCain and Ecolab (all of which provided Sodexho with more

favorable prices than the prices made available to Feesers). O'Kelly Aff. ¶¶7(e), 121. Defendants sought production of documents by UniPro, a distributor buying group of which Feesers is a member. O'Kelly Aff. ¶¶7(e).

Feesers and defendants also took a total of twenty-three depositions of fact witnesses, including three non-party depositions taken pursuant to subpoenas. O'Kelly Aff. ¶7(f). Again, Feesers' counsel devoted considerable time to preparing to take the depositions of Michael Foods, Sodexho, and non-party witnesses and to defend the depositions of Feesers' employees.

Expert discovery was also expensive and time consuming. Feesers' economic expert, Dr. Robert Larner, submitted an initial expert report on June 13, 2005, a supplemental and rebuttal report on September 30, 2005, and a supplemental declaration on December 8, 2005. O'Kelly Aff. ¶¶7(g), 181. Dewey lawyers spent large numbers of hours supporting Dr. Larner in these tasks. O'Kelly Aff. ¶¶7(g), 70, 91, 96, 101, 108, 114, 122, 128, 136, 145, 169, 181, 193. Defendants' economist Dr. David Scheffman submitted an expert report on September 8, 2005. O'Kelly Aff. ¶¶7(h), 164. Feesers and defendants both moved to exclude the opposing experts' testimony, and there was a full briefing of those *Daubert* motions. O'Kelly Aff. ¶¶7(h),

174, 180, 185.  In addition, Dr. Larner was called to testify at a hearing held before this court on March 29, 2006.  O'Kelly Aff. ¶¶7(g), 193.  Again, all of these tasks required a considerable investment of time by Dewey lawyers.

On May 19, 2005, before discovery was complete, Michael Foods moved for summary judgment, apparently for tactical reasons.  In addition to the time spent in opposing this motion, Dewey lawyers also moved to stay Michael Foods' motion pursuant to Rule 56(f).  O'Kelly Aff. ¶¶7(k)(ii), 137, 141.

On November 17, 2005, after all discovery had closed, the parties cross-moved for summary judgment.  This involved the expenditure of very large numbers of hours by Dewey lawyers who drafted briefs, accompanied by thousands of pages of exhibits, in support of Feesers' summary judgment motion and in opposition to defendants' motions.  O'Kelly Aff. ¶¶7(l), 7(m), 168, 174, 180.  At the same time, both sides also briefed the *Daubert* motions described above.  O'Kelly Aff. ¶¶7(n), 174, 180, 185.

On May 4, 2006, the court ruled in favor of defendants on summary judgment.  Dewey lawyers devoted a large number of hours to appealing the Court's ruling to the Third Circuit, including submitting opening and reply briefs and an 18-volume appendix, and preparing for and participating in

oral argument.  O'Kelly Aff. ¶¶7(o), 202, 206-07, 210, 213, 216-18, 221-22, 224, 227, 231, 235, 238, 241-42.

Very large numbers of hours were also spent by Dewey lawyers in the lead-up to trial, including submitting briefs regarding the scope of trial at the Court's request; attending a pre-trial conference in Harrisburg; extensive pre-trial planning and preparation (including multi-day "meet-and-confers" with defendants' counsel, and preparation of hundreds of trial exhibits, deposition designations and counter-designations, etc); preparing fact and expert witnesses to testify; drafting and submitting Feesers' trial brief; submitting several motions in limine to exclude evidence and responding to defendants' motions in limine.  O'Kelly Aff. ¶¶248-272.

As the Court is well aware, counsel also devoted extensive time to the trial itself, including preparing and presenting an opening statement; preparing and examining several Feesers' witnesses; preparing for and conducting the cross-examination of defendants' witnesses (including several witnesses whose identities were known only shortly before trial); and preparing memoranda on evidentiary issues that arose during trial.  O'Kelly Aff. ¶¶7(q), 273.

The trial was followed by extensive trial briefing, with both sides filing post-trial briefs on March 12, 2008 and post-trial rebuttal briefs on

April 11, 2008.  O'Kelly Aff. ¶¶7(r), 274, 278, 281, 286.  At the Court's request, the parties also briefed several evidentiary motions following the trial.  7(r), 278, 281, 286. Again, Dewey lawyers spent large numbers of hours in connection with this activity.

It hardly needs to be stated that in a case of this magnitude, complexity and duration, the hours expended by Dewey were reasonable. *See e.g., Enron Corp. Sec. Derivative & "ERISA" Litig. v. Enron Corp.,* 586 F. Supp. 2d 732, 788 (S.D. Tex. 2008) (finding that a hard fought, legally complicated, and motion-intensive litigation necessarily required a great deal of attorney time for a successful outcome); *see also Serio v. Wachovia Sec., LLC,* No. CV-06-4681(MF), 2009 WL 900167, at *11 (D.N.J. Mar. 31, 2009) (finding that legal and factual complexity results in higher hours and this should be taken into account when determining reasonable attorneys' fees) (attached at Tab D); *Hanover Shoe, Inc., v. United Shoe Mach. Corp.*, 245 F. Supp. 258, 303 (M.D. Pa. 1965) (subsequent history omitted) (finding high hours reasonable in light of the complexity of the case).[6]

---

[6] Reasonable attorneys' fees expended on a fee petition are recoverable. *Watcher*, 559 F. Supp. 2d at 526 (citing *Planned Parenthood of Cent. N.J. v. Attorney Gen. of State of N.J.,* 297 F.3d 253, 268 (3d Cir. 2002)).

**C.     The Fact That Feesers Did Not Request, and Thus Was Not Awarded, Damages Is Irrelevant to the Award of Fees**

In some cases, Courts in the Third Circuit will look also to the total damages recovered by plaintiff's counsel when evaluating the reasonableness of a fee petition.   *See e.g., Noerr Motor Freight, Inc., v. Eastern R.R. Presidents Conference,* 166 F. Supp. 163, 169 (E.D. Pa. July 22, 1958) (subsequent history omitted) (listing damages awarded as a factor to be considered in determining reasonableness of attorney fees); *Hanover Shoe Inc.,* 245 F. Supp. at 303 (comparing fee to be awarded to damages awarded to determine reasonableness of award).  This factor is not relevant here, where Feesers sought (and won) injunctive relief under Section 16 of the Clayton Act, which permits a private litigant such as Feesers to sue for injunctions "against threatened loss or damage by a violation of the antitrust laws."  Section 16 expressly provides that:  "In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fees, to such plaintiff."  15 U.S.C. § 26.

As one court put it:

[T]he need for the awarding of attorneys' fees in §16 injunction cases is greater than the need in §4 damage cases. . . . In injunction cases . . . without the shifting of attorney's fees, a plaintiff with a deserving case would personally have to pay the

> very high price of obtaining judicial enforcement of the law and
> of the important national policies the antitrust laws reflect.

*Miller v. Hedlund*, No. CV-78-259-FR, 1989 WL 131274, at *1 (D. Or.

Oct. 12, 1989) (attached at Tab E); *see also Home Placement Serv., Inc., v.

Providence Journal Co.*, 819 F.2d 1199, 1210 (1st Cir. 1987); *Alphin v.

Henson,* 552 F.2d 1033, 1034 (4th Cir. 1977).   What is relevant is that

Dewey took on a challenging lawsuit on behalf of Feesers, battled

determined opposing counsel over a five-year period, and achieved a

stunning result for its client.  Feesers' fee petition should be granted in full.

## III.   <u>Feesers Should Also Recover Its Reasonable Costs of Litigation</u>

Feesers incurred reasonable expenses and disbursements in

successfully litigating this case in addition to those items listed in its

Rule 54(d) Bill of Costs.  Feesers requests that, in addition to awarding it

reasonable attorneys' fees, the Court grant its petition for reimbursement of

$667,287.50 with respect to those reasonable costs and expenses.  *See e.g.*

*Beane v. Bank of N.Y. Mellon*, No. 07-CV-09444 (RMB), 2009 WL 874046,

at *9 (S.D.N.Y. Mar. 31, 2009) (awarding reasonable supplemental costs for

expenses incurred during the litigation) (attached at Tab F); *Bowers v. Foto-*

*Wear, Inc.,* No. 3:CV-03-1137, 2007 WL 4086339, at *5 (M.D. Pa. Nov. 15,

2007) (awarding reasonable non-taxable expenses such as attorney travel

and hotel costs) (attached at Tab G).

A summary of other reasonable costs incurred by Dewey is as follows:

| Expense Type | Total Incurred |
|---|---|
| Telephone & Fax | $4,770.89 |
| Postage & Delivery | $23,766.06 |
| Computerized Legal Research | $196,604.47 |
| Reproduction | $226,981.72 |
| Word Processing | $34,014.70 |
| Meals/Travel | $111,533.67 |
| Trial | $63,450.19 |
| Miscellaneous | $6,165.80 |
| **TOTAL** | **$667,287.50** |

*See* O'Kelly Aff. ¶306.

Feesers believes that the reasonableness of these costs is self-evident. For example, the reproduction charges in this case were substantial due to the number of documents produced and the number of exhibits used at depositions, summary judgment and trial.  Computerized legal research is the charge of accessing on-line computer databases for motion practice and trial and post-trial briefs.  Travel charges include travel and lodging costs incurred by Dewey lawyers and legal assistants to attend court hearings, depositions and trial.  Trial costs are the costs associated with establishing temporary office space in Harrisburg, such as: renting temporary office

space, office furniture, and computer equipment; hiring temporary paralegals; and purchasing office supplies.   The miscellaneous category includes charges such as renting rooms for depositions, document storage, and conference center expenses.  O'Kelly Aff. ¶307.[7]

A summary of the reasonable costs incurred by local counsel Stephen M. Williams and his firms is as follows:

| Expense Type | Total Billed |
|---|---|
| Telephone & Fax | $59.44 |
| Postage & Delivery | $589.87 |
| Computerized Legal Research | $23.58 |
| Reproduction | $952.98 |
| Trial | $1407.23 |
| Miscellaneous | $619.35 |
| **TOTAL** | **$3,652.45** |

Feesers also requests that it be awarded the sum of $894,278.43 with respect to the fees of its expert, Dr. Robert Larner, and related costs.  A true

---

[7] These sums are reflected in Dewey's and local counsel's monthly billing statements and were billed to and paid by Feeesers.  Feesers would be happy to submit its monthly billing statements for review by the Court *in camera*, or if the Court preferred, to provide copies of the portions of those billing statements that relate to costs and disbursements with any privileged information therein redacted.

and correct copy of Dr. Larner's invoices are attached to the O'Kelly Aff. as Exhibit A.

In summary, the total reasonable legal fees and costs for which Feesers seeks an award (excluding those costs separately billed under Rule 54(d)) are as follows:

| Expense Type | Total Incurred |
|---|---|
| Costs incurred by Dewey | $667,287.50 |
| Costs incurred by local counsel | $3,652.45 |
| Expert Fees and Costs for Dr. Larner | $894,278.43 |
|  |  |
| **TOTAL** | **$1,565,218.38** |

**IV.**  <u>**Conclusion**</u>

For the foregoing reasons, Feesers respectfully requests that this Court award it its reasonable legal fees in the amount of $9,288,648.34 and its reasonable costs in the amount of $1,565,218.38, as described herein.

Dated: May 28, 2009

<div style="margin-left:40%">

Respectfully Submitted,
DEWEY & LEBOEUF LLP

By: <u>s/ Jeffrey L. Kessler</u>
    Jeffrey L. Kessler
Jeffrey L. Kessler, NY I.D. #1539865
  jkessler@dl.com
John F. Collins, NY I.D. #1265669
  jcollins@dl.com
Eamon O'Kelly, NY I.D. #2908515
  eokelly@dl.com
1301 Avenue of the Americas
New York, New York  10019-6092
(212) 259-8000, (212) 259-6333 (fax)

Steven M. Williams
COHEN, SEGLIAS, PALLAS
GREENHALL & FURMAN PC
240 North Third Street, 8th Floor
Harrisburg, PA  17101
(717) 234-5530, (717) 213-0731 (fax)
*Counsel for Plaintiff Feesers, Inc.*

</div>

## <u>LOCAL RULE 7.8 CERTIFICATION</u>

I hereby certify that this brief complies with Local Rule 7.8(b)(2) in that this brief, including headnotes, footnotes, and quotations, but excluding this certification, contains 4,443 words as calculated using the word count function on Microsoft Word software.

<div align="right">

_____/s/Jeffrey L. Kessler_____
Jeffrey L. Kessler

</div>

**TAB A**

Not Reported in F.Supp.                                                              Page 1
Not Reported in F.Supp., 1986 WL 8267 (E.D.Pa.)
**(Cite as: 1986 WL 8267 (E.D.Pa.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Norman M. KRANZDORF, Trustee

v.

Howard I. GREEN, et al.
**Civ. A. No. 83-566.**

July 25, 1986.

*MEMORANDUM OPINION AND ORDER*

VanARTSDALEN, Senior Judge.

**\*1** On March 31, 1986, I held a hearing on the issue of the reasonableness of plaintiff, Norman M. Kranzdorf, Trustee's (Kranzdorf), consolidated request for expenses, including attorney's fees. Kranzdorf had been awarded expenses, to be paid by defendant, Franklin M. Cohen (Cohen), pursuant to Federal Rule of Civil Procedure 37(a)(4) in connection with three discovery motions which I had earlier ruled on in Kranzdorf's favor. Kranzdorf submitted certification from his counsel supporting the hours spent on the discovery motions as well as the rates charged for those hours and the associated costs. Kranzdorf also presented the testimony of Richard G. Placey, Esq., who was primarily responsible for preparing the motions. Kranzdorf had requested $533.40 in expenses for bringing Plaintiff's Motion For an Order Compelling Defendant Franklin M. Cohen to Produce Documents (First Motion to Compel); $907.08 in expenses for bringing Plaintiff's Motion for a Second Order Compelling Defendant Franklin M. Cohen to Make Discovery (Second Motion to Compel); and $3,298.88 in expenses for opposing the Motion to Compel the Plaintiff to More Fully Answer Defendant's Franklin M. Cohen's Interrogatories (Cohen's Motion to Compel). Cohen has challenged the requested amounts as unreasonable. For the reasons stated below, Kranzdorf's request for expenses will be granted in part.

Under Federal Rule of Civil Procedure 37(a)(4), a party who prevails in obtaining or defending against a discovery motion is entitled to have his reasonable expenses, including attorney's fees, paid by the opposing party, unless the opposing party's position was substantially justified. In calculating what constitutes a reasonable attorney's fee, I am guided by the Third Circuit Court of Appeals' "lodestar" method set out in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167-68 (3d Cir. 1973)(*Lindy I*).[FN1] Calculation of the lodestar amount involves a "twin inquiry into reasonableness: a reasonable hourly rate *and* a determination of whether it was reasonable to expend the number of hours in a particular case." *Ursic v. Bethlehem Mines,* 719 F.2d 670, 676 (3d Cir. 1983) (emphasis in original). As the Supreme Court admonished, "[t]he district court shall also exclude from [the lodestar amount] hours that were not 'reasonably expended.' " *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983). The determination of whether the hours expended by the party seeking attorney's fees were reasonable is a factual determination and, thus, must be based on the evidence presented by the parties. *Cunningham v. City of McKeesport,* 753 F.2d 262, 266-67 (3d Cir. 1985). A court may not disregard the unchallenged expenses of a party as to its fees. *Id.* at 267. However, where the opposing party puts the factual issue of the reasonableness of the fee in dispute, the court may, as the trier of fact, reject the proffered evidence as to the reasonableness of the fee. *Ranco Industrial Products Corp. v. Dunlap,* 776 F.2d 1135, 1141 (3d Cir. 1985). Expert testimony is not needed to establish, or challenge, the reasonableness of a fee request. *Id.* at 1140.

**\*2** In the present case, Kranzdorf's fee request was supported by certification of counsel and the testimony of Mr. Placey at the hearing. Cohen challenged the reasonableness of the requested fee both in his brief and by his cross-examination of Mr. Placey. Cohen's challenge was directed at the reas-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1986 WL 8267 (E.D.Pa.)
**(Cite as: 1986 WL 8267 (E.D.Pa.))**

onableness of the hours spent on the motions by Kranzdorf's counsel rather than on the reasonableness of the hourly rate claimed or on the issue of whether the hours claimed were actually worked. My opinion as to the reasonableness of the fees requested by Kranzdorf is also based on my personal knowledge of the underlying motions, derived from having read the briefs and decided the motions. *See Cunningham,* 753 F.2d at 267 (personal knowledge of a judge is a permissible factor to take into account in evaluating reasonableness of a fee request).

Kranzdorf seeks compensation for 5.7 hours of attorney time, at rates ranging from $55 to $120 per hour, and one hour of paralegal time, at a rate of $35 per hour, for preparation of his First Motion to Compel. Kranzdorf filed that motion after Cohen failed to object or respond to his first request for documents. Pursuant to Local Rule 24(g), a motion to compel discovery where the opposing party has not objected or responded to a discovery request under Federal Rule of Civil Procedure 34 need have no accompanying brief and may be summarily granted by the court without waiting for a response from the opposing party. It is clear from the certification of John W. Frazier, Esq., filed with the motion, that the motion came under Local Rule 24(g) and, in fact, I summarily granted the motion on the day it was filed. In spite of the routine nature of this motion, Mr. Frazier spent 1.7 hours, at a rate of $120 per hour, preparing the motion and Patrick T. Ryan, Esq., spent 3.6 hours, at a rate of $55 per hour, revising that same motion. Although I could accept the necessity of experienced counsel, billing at a higher rate, spending 1.7 hours on this motion, or of less experienced counsel, billing at a lower rate, spending over twice as long on the same motion, I find it unreasonable that their combined efforts were required in this routine matter. *See Ursic,* 719 F.2d at 677 ("Double dipping, in any form, cannot be condoned."). I also note Kranzdorf's unnecessary inclusion of a brief along with his motion. Since Mr. Frazier prepared the certification which accompanied the motion, I will not allow

Kranzdorf to recover for the 3.6 hours spent on the motion by Mr. Ryan. This reduces Kranzdorf's award for attorney's fees on this motion from $459.00 to $261.00. Since there has been no challenge to Kranzdorf's asserted costs, for photocopying and postage, of $74.40, I will award Kranzdorf $335.40 for the First Motion to Compel.FN2

Kranzdorf seeks compensation for twelve hours of attorney time, at rates of $60 and $75 per hour, and one hour of paralegal time, at a rate of $40 per hour, for preparation of his Second Motion to Compel. This motion was necessitated by Cohen's failure to object or respond to Kranzdorf's request for production of documents. The motion was filed pursuant to Local Rule 24(g) and consisted primarily of Mr. Placey's four-page certification detailing his efforts to obtain the requested discovery. No brief was filed with the motion. As with the first motion, this motion was summarily granted. Mr. Placey spent 3.8 hours, at a rate of $75 per hour preparing this motion. I view this amount of time as falling at the extreme upper end of what would be reasonable given the simple nature of the motion. However, I find it absolutely incredible that Patrick K. McCoyd, Esq. spent an additional 8.2 hours at a rate of $60 per hour preparing this very same motion. There is no excuse, and clearly no necessity, in having so much legal effort expended on such a routine motion. *See Hensley,* 424 U.S. at 434 ("Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."). Accordingly, I will disallow the 8.2 hours spent by Mr. McCoyd on the Second Motion to Compel. This reduces Kranzdorf's attorney's fee award on the motion from $817 to $325 and, thus, his overall award for expenses on the second motion, including $90.08 in unchallenged costs, will be $415.08.

**\*3** Kranzdorf seeks compensation for 33.7 hours of attorney time, at rates ranging from $60 to $135 per

Not Reported in F.Supp.
Not Reported in F.Supp., 1986 WL 8267 (E.D.Pa.)
**(Cite as: 1986 WL 8267 (E.D.Pa.))**

Page 3

hour, and four hours of paralegal time, at a rate of $40 per hour, for defending against Cohen's Motion to Compel. Cohen filed the motion to obtain more complete answers to his interrogatories. Kranzdorf filed a twenty-five page memorandum in response to the motion which refuted in detail Cohen's claims that Kranzdorf had provided incomplete answers. Preparation of the response required an extensive review of Kranzdorf's lengthy answers to the interrogatories in order to establish that the answers provided were, in fact, complete. Although this was a time-consuming process, had Kranzdorf not engaged in it, it would have fallen to the court to wade through the relevant documents in order properly to decide the motion. Clearly, it was more efficient for Kranzdorf's counsel to conduct the necessary review of the documents since they were more familiar with the documents. Since the original responsibility was upon Cohen to determine that the interrogatories had been properly responded to prior to filing his motion, I think it only right that he should be liable for the cost of conducting the extensive review necessitated by his unwarranted motion. However, while the review of the documents was doubtlessly time-consuming, it did not require a great deal of legal expertise. In fact, Kranzdorf's entire brief cites only two cases. Once the necessary information had been obtained from the review of the documents, the actual preparation of the motion should have been relatively straightforward.

Kranzdorf's counsel's time sheets indicate that Mr. Placey spent 24.8 hours, at a rate of $75 per hour, working on the response to Cohen's motion. Although the majority of this time was evidently spent reviewing the documents, Mr. Placey indicated on his time sheet that he spent 5.6 hours actually drafting the brief. This is an unreasonable amount of time given the simplicity of the issues once the review of the documents had been completed. Mr. Placey then spent an additional 11.9 hours revising the brief and rechecking the documents. Since I cannot fault Mr. Placey's thorough review of the documents, I do not find these hours to have been

unreasonably spent. However, since this additional effort occurred after the 5.6 hours spent drafting the brief, I have further reason to find those 5.6 hours to have been unreasonably spent. Since the time spent revising the brief was more than that which should have been adequate to actually write the brief, I will disallow 5.6 hours from Mr. Placey's recorded time.

Mr. Frazier's time sheet indicates that he spent 6.4 hours, at a rate of $135 per hour, revising the brief and 1.2 hours, at the same rate, conferring with Mr. Placey. Although I do not question the time Mr. Frazier spent conferring with Mr. Placey, I find it unreasonable that Mr. Frazier had to spend 6.4 hours revising a brief that was based almost entirely on Mr. Placey's factual review of the documents. This amount of time clearly goes beyond what would be necessary to review Mr. Placey's work. Thus, I will eliminate all but one hour of the time Mr. Frazier spent revising the brief, leaving him with a total time of 2.2 hours for the response.

**\*4** Mr. McCoyd's time sheet indicates that he also spent time working on Kranzdorf's response to Cohen's motion. He spent 1.3 hours, at a rate of $60 per hour, reviewing and revising the response. Since Mr. Placey's effort was sufficient to prepare the response, I do not see why it was necessary for an another lawyer, who had not reviewed the relevant documents, to devote additional time to preparing a response which depended almost exclusively on a careful review of the documents. Therefore, I will disallow the 1.3 hours attributed to Mr. Mc-Coyd.

I will not reduce the four hours spent by Cathy M. Nassau, a legal assistant, at a rate of $40 per hour. The time she spent preparing the response for filing and service on the other parties was reasonable. I note that she spent two hours researching the case law underlying the response. Given the minimal nature of the legal issues involved in the response, her research should have eliminated the need for much of the time that was spent on the response by higher paid lawyers.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:04-cv-00576-SHR   Document 441   Filed 05/27/09   Page 34 of 86

Not Reported in F.Supp., 1986 WL 8267 (E.D.Pa.)
**(Cite as: 1986 WL 8267 (E.D.Pa.))**

The reductions I have set out above, 5.4 hours off Mr. Placey's time, 5.4 hours off Mr. Frazier's time and 1.3 hours off Mr. McCoyd's time, reduce Kranzdorf's award of attorney's fees on the response to Cohen's Motion to Compel to $1,897.00. Adding this amount to the costs of $174.88, the total award of expenses for the response to Cohen's motion is $2,071.88. The total award for all three motions is therefore $2,821.96. Although this is less than the amount requested by Kranzdorf, it adequately compensates him for the expenses that were reasonable given the simple nature of the motions involved.

Kranzdorf and Cohen also have a dispute over the reasonableness of a fee requst presented by Kranzdorf as the result of a discovery order which I entered on February 26, 1986. In that order, I required that Cohen appear at a deposition and I awarded Kranzdorf his reasonable expenses in obtaining the order, pursuant to Rule 37(d). Both parties have fully briefed the issue of the reasonableness of the fee request. However, under my reading of *Cunningham* and *Ranco,* I cannot rule on a factual challenge to the reasonableness of a fee request without first holding an evidentiary hearing on the matter. Although I believe that this requirement adds needless expense and delay to the resolution of a matter tangential to the main litigating, I am bound by Third Circuit Court of Appeals' precedent to hold an evidentiary hearing unless the parties can reach an agreement on the amount of fees to be paid pursuant to my earlier order.

*ORDER*

Upon consideration of the evidence and arguments presented by the parties at the hearing on March 31, 1986, and in their briefs on Franklin M. Cohen's petition for reconsideration and Norman M. Kranzdorf, Trustee's cross motion for reimbursement,

It is Ordered that Franklin M. Cohen shall remit the sum of Two Thousand Eight Hundred Twenty-One Dollars and Ninety-Six Cents ($2,821.96) to the Trustee within fifteen (15) days of the date of this Order.

**\*5** It is further Ordered that a full evidentiary hearing is set for Monday, August 18, 1986, to commence at 8:30 A.M. in Courtroom 14A, United States Courthouse, 6th and Market Streets, Philadelphia, Pennsylvania, for the purpose of presentation of proof as to the amount and reasonableness of the claimed expenses and attorney's fees due plaintiff by the defendant, Franklin M. Cohen, with respect to the discovery order entered on February 26, 1986.

FN1. The lodestar method of calculating attorney's fees was developed in the context of a fee award in an antitrust class action settlement pursuant to the equitable fund doctrine. *See Lindy I,* 487 F.2d at 165. However, the same methodology has been applied to calculating attorney's fees in other contexts, such as statutory fee cases, as well. *See, e.g., Ranco Industrial Products Corp. v. Dunlap,* 776 F.2d 1135 (3d Cir. 1985) (attorney's fees calculated using *Lindy I* standard in civil contempt proceeding); *Cunningham v. City of McKeesport,* 753 F.2d 262 (3d Cir. 1985) (fee award under § 1988 calculated according to *Lindy I* standard); *Ursic v. Bethlehem Mines,* 719 F.2d 670 (3d Cir. 1983) (attorney's fees calculated using *Lindy I* standard in ERISA case). Kranzdorf has made no request that a multiplier be applied to his lodestar amount and I question whether a multiplier would even be applicable to a fee award under Rule 37.

FN2. The high costs for photocopying and postage for each of the three motions is a result of the large number of parties who had to be served with copies of each pleading.

E.D.Pa.,1986.
Kranzdorf v. Green
Not Reported in F.Supp., 1986 WL 8267 (E.D.Pa.)

Not Reported in F.Supp.
Not Reported in F.Supp., 1986 WL 8267 (E.D.Pa.)
**(Cite as: 1986 WL 8267 (E.D.Pa.))**

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**TAB B**

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2008 WL 108671 (M.D.Pa.)
**(Cite as: 2008 WL 108671 (M.D.Pa.))**

H

Only the Westlaw citation is currently available.

United States District Court,
M.D. Pennsylvania.
JAMA CORPORATION et al., Plaintiffs,
v.
Dr. Giriwarlal GUPTA, et al., Defendants.
**Nos. 3:99-CV-01624, 3:99-CV-1574.**

Jan. 4, 2008.

D. Bruce Hanes, Philadelphia, PA, Sal Cognetti, Jr.,
Foley, Cognetti & Comerford, Vincent S. Cimini,
Foley, Cognetti, Comerford & Cimini, Scranton,
PA, for Plaintiffs.

Daniel T. Brier, Donna A. Walsh, Myers Brier &
Kelly, LLP, Scranton, PA, Daniel P. McDyer, An-
standig, McDyer, Yurcon, P.C., Pittsburgh, PA,
Steven B. Molder, Easton, PA, for Defendants.

### MEMORANDUM

A. RICHARD CAPUTO, District Judge.

**\*1** Presently before the Court is Plaintiff's post-trial
motion for attorneys' fees and costs pursuant to
Section 35 of the Lanham Act. (Doc. 224.) For the
reasons set forth below, the Court will grant in part
and deny in part Plaintiff's motion for attorneys'
fees and costs. The Plaintiff is entitled to attorneys'
fees pursuant to the Lanham Act, but the Court will
apportion the fees for failed claims, as the claims
are not so intertwined that the factual and legal
bases of the claims are the same. The Court will
grant in part and deny in part the Plaintiff's requests
for costs, as some of the costs are not permitted by
28 U.S.C. § 1920, and other costs are not properly
documented.

### BACKGROUND

The present motion requests attorneys' fees and
costs for Jama Corporation in civil actions
3:99-CV-1574 and 3:99-CV-1624. Three issues
were initially brought to trial in action
3:99-CV-1624. On a Rule 50 motion, the Court dis-
posed of the first claim for tortious interference
with contractual relations. On March 13, 2003, after
trial, the jury entered a verdict in favor of the
Plaintiff Jama Corporation in action 3:99-CV-1624
for breach of contract and trademark infringement.
(Doc. 205.) On June 19, 2003, the Court entered
judgment for the Defendants in civil action
3:99-CV-1574. (Doc. 235.) Plaintiff requests an
award of attorneys' fees and costs in the amount of
$652,272.93. This motion is fully briefed and ripe
for disposition.

### DISCUSSION

**I. Attorneys' Fees**

*A. Appropriateness of Attorneys' Fees*

Section 35(a) of the Lanham Act provides that
"[t]he court in exceptional cases may award reason-
able attorney fees to the prevailing party." 15 U.S.C.
§ 1117(a). However, Section 35(a) does not expli-
citly define the meaning of an "exceptional case[
]."

The Third Circuit Court of Appeals has recently de-
termined that finding exceptional conduct requires
a two-step inquiry. *Green v. Fornario,* 486 F.3d
100, 103 (3d Cir.2007). First, the district court must
determine if there was any culpable conduct, such
as "bad faith, malice or knowing infringement" on
the part of the losing party. *Id.* (citing *Ferrero
U.S.A., Inc. v. Ozak Trading, Inc.,* 952 F.2d 44, 47
(3d Cir.1991); *SecuraComm Consulting, Inc. v. Se-
curacom, Inc.,* 224 F.3d 273, 280 (3d Cir.2000)).
Second, the court must determine if the circum-
stances are "exceptional" enough to warrant an

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 108671 (M.D.Pa.)
**(Cite as: 2008 WL 108671 (M.D.Pa.))**

award. *Id.* A court may not award fees without finding culpable conduct, but it may decline to award them despite such conduct based upon the totality of the circumstances. *Id.*

A finding of culpable conduct for the awarding of attorney fees is reliant upon the specific facts of the case. *SecuraComm,* 224 F.3d at 280. In this case, the Plaintiff has demonstrated culpable conduct. The jury reached a verdict finding that the Defendants actions were "willful," which is conduct capable of supporting an award for attorneys' fees.

If culpable conduct exists, the court must then determine if the case is "exceptional." When determining if a case is exceptional, the court may consider factors such as "the closeness of the liability question and whether the plaintiff suffered damages." *Green,* 486 F.3d at 103-04 (citing *Ferrero,* 952 F.2d at 49). The Plaintiff has demonstrated that the case is exceptional for purposes of recovering attorneys' fees, as the jury awarded damages for the willful infringement by the Defendants. Therefore, the Court will award the Plaintiff attorneys' fees pursuant to the Lanham Act.

*B. Apportionment*

**\*2** Defendants argue that apportionment of the attorneys' fees is appropriate in this case. First, Defendants argue that Plaintiff should not recover for attorneys' fees in civil action 3:99-CV-1574, as Jama Corporation was not a prevailing party in that action. Plaintiff counters that the action 3:99-CV-1574 was substantially identical to the action in 3:99-CV-1624, and therefore apportionment is not required. Plaintiff cites *Aamco Transmissions v. Graham,* Civ. A. Nos. 89-497, 89-6379, 1990 WL 118050, at \*3 (E.D.Pa. Aug.9, 1990) for the proposition that if the claims are so intermingled that the factual basis and legal theories are the same, the court need not apportion the Lanham Act and non-Lanham Act claims.

Plaintiff Jama Corporation was not a "prevailing party" in action 3:99-CV-1574. The term "prevailing party" is a legal term of art, and requires a party to "succeed on 'any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit.'" *Wheeler by Wheeler v. Towanda Area Sch. Dist.,* 950 F.2d 128, 131 (3d Cir.1991) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The *Wheeler* court then applied a two part test consistent with *Hensley:* (1) whether the plaintiffs achieved relief, and (2) whether there was a causal connection between the litigation and the relief from the defendant. *Id.* In this case, Plaintiff Jama Corporation was not a plaintiff that achieved relief. The listed plaintiffs in action 3:99-CV-1574 were Rajiv Jalan, Rishi Jalan, and Pushpa Jalan. Furthermore, judgment in that case was in favor of the defendants. (Doc. 235.) Although many of the same attorneys worked on both cases, the two cases involved different clients and different claims. Furthermore, the factual and legal bases of action 3:99-CV-1574 focused on the ownership of the Old West Cowboy Boots Corporation stock, and the potential imposition of a constructive trust, whereas the action 3:99-CV-1624 was based upon trademark infringement and breach of contract. These claims are not so intermingled that apportionment is impossible. Therefore, Plaintiff Jama Corporation is not entitled to the attorneys' fees for work on the action 3:99-CV-1574, and the Court will apportion the fees and costs between the two actions.

Defendants also request apportionment of the attorneys' fees between the successful Lanham Act claim and the other claims in 3:99-CV-1624, namely, the breach of contract and tortious interference claims. Although the Third Circuit Court of Appeals has not ruled as to the requirement of apportionment between Lanham Act and non-Lanham Act claims, numerous courts have held that apportionment is required. *See Gracie v. Gracie,* 217 F.3d 1060, 1069 (9th Cir.2000) ("[A]s a general matter, a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for work related to the Lanham

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Act claims."); *U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1193 (6th Cir.1997) ("[U]nder 15 U.S.C. § 1117(a), attorneys' fees are recoverable only for work performed with claims filed under the Lanham Act."); *Procter & Gamble Co. v. Amway Corp.,* 280 F.3d 519, 531 (5th Cir.2002); *Microsoft Corp. v. Software Wholesale Club, Inc.,* 129 F.Supp.2d 995, 1011 (S.D.Tex.2000) ("In [trademark] cases in which attorneys fees are awarded as to some claims and denied as to others, an apportionment of attorneys fees is proper.").

**\*3** However, the Third Circuit Court of Appeals has discussed apportionment generally. Citing Supreme Court precedent, the Third Circuit Court of Appeals has held that "where a plaintiff presents 'distinctly different claims for relief that are based on different facts and legal theories ... work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved.'" *Eichenlaub v. Twp. of Indiana,* 213 Fed. App'x 218, 222 (3d Cir.2007) (non-precede ntial) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434-35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The Third Circuit Court of Appeals has further held that attorneys' fees may be reduced for time "spent litigating claims on which the party did not succeed and that were distinct in all respects from claims on which the party did succeed." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990).

Therefore, the Third Circuit Court of Appeals requires apportionment of distinct claims when a claim is unsuccessful. Plaintiff's claim for tortious interference of business for contractual relations was unsuccessful, and the Court disposed of the count in the Rule 50 motion after the close of Plaintiff's case-in-chief. (Trial Tr. vol. 4, 5, Mar. 7, 2003.) A claim for tortious interference with contractual relations is a distinct claim from one of trademark infringement. The wrongful encouragement of one to enter or not to enter into a contract or business relationship is an actionable tort. *See Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198,

412 A.2d 466, 470 (Pa.1979). The elements to prove such interference are: (1) a prospective contractual relation; (2) purpose of intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege of justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct. *Id.* at 471.These elements are distinct from a trademark infringement claim, as they require the interference with some contractual relation. A trademark infringement claim is distinct from such a contractual claim, and therefore, the Court will apportion the attorneys' fees and costs for this failed claim.

Plaintiff was successful on the breach of contract claim, which alleged breach of contract based upon the failure of Old West Cowboy Boots Corporation to pay five (5) Bills of Exchange to Jama Corporation. However, Plaintiff is not entitled to these fees based upon the intermingling of this claim with the trademark infringement claim. Breach of contract is distinct from the trademark infringement claim, as this claim specifically dealt with whether the Defendant breached its contract with the Plaintiff regarding the Bills of Exchange. Furthermore, Plaintiff is not entitled to recover attorneys' fees for the breach of contract claim, even though the Plaintiff was successful on the claim. Pennsylvania has adopted the American Rule, whereby attorneys' fees are generally not a taxable item of costs except as permitted by statute. *See Krassnoski v. Rosey,* 454 Pa.Super. 78, 684 A.2d 635, 637 n. 2 (Pa.Super.Ct.1996) (citing 42 PA. CONS.STAT. ANN. § 1726(a)(1)). Plaintiffs have not identified a statutory basis for their request for attorneys' fees for the breach of contract claim. In *Yellow Transp., Inc. v. DM Transp. Mgmt. Servs., Inc.,* 2006 WL 2871745, at \*4 (E.D.Pa. July 14, 2006), the court did not permit attorneys' fees for breach of contract, noting that there was no provision in the contract for such fees, and there was no statutory authority permitting them. The court held that "[t]his Court has consistently followed the general, American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory

authorization, a clear agreement by the parties or some other established exception."*Id.* (quoting *Merlino v. Delaware County,* 556 Pa. 422, 728 A.2d 949, 951 (Pa.1999)). Therefore, Plaintiff may not recover attorneys' fees on the basis of its breach of contract claim, as there is no provision for such fees in statutory authority or other agreement. The Court will therefore apportion the fees and costs accordingly.

### C Multiple Counsel

**\*4** Plaintiff makes a claim for attorneys' fees for multiple sets of counsel. The counsel includes Ullman, Shapiro & Ullman, LLP; D. Bruce Hanes & Associates, P.C., Foley, Cognetti, Comerford & Cimini; and Khaitan & Company. Other trademark infringement cases have awarded attorneys' fees for more than one law firm, including lead counsel, local counsel, and in-house counsel. *See Tamko Roofing Prod., Inc. v. Ideal Roofing Co., Ltd.,* 282 F.3d 23, 34 (1st Cir.2002); *Louis Vuitton, S.A. v. Ummat's,* Civ. A. Nos. 1:87-CV2660HTW, 1:88CV2745HTW, 1992 WL 317523, at \*5 (N.D.Ga. Feb.10, 1992) (awarding fees to lead and local counsel). Therefore, Plaintiff may make a claim for attorneys' fees for lead and local counsel.

However, Plaintiff may not recover attorneys' fees for the Indian law firm of Khaitan & Company. One of the firm's attorneys, M.P. Rao, testified at trial and acted as an expert witness on the subject of Indian law. Khaitan & Company is not a law firm for the purposes of attorneys' fees. Rather, they served as experts in the field of Indian law. In Plaintiff's pre-trial brief on a motion in limine, the Plaintiff argued for the inclusion of M.P. Rao's testimony at trial. (Doc. 181.) Specifically, the Plaintiff argues in favor of permitting a "foreign law expert" to testify. (Doc. 181.) Thus, even the Plaintiff has characterized M.P. Rao as an expert. Furthermore, neither M.P. Rao, Tushna Thapliyal, nor any other attorney from the law firm of Khaitan & Company ever made an appearance in the case as an attorney for the plaintiffs. Such actions demon-strate that Khaitan & Company acted in the capacity of experts in the field of Indian law, and not as attorneys. Plaintiff may not reap the benefit of attorneys' fees for an expert witness, even if the expert witness is an attorney. Therefore, recovery for Khaitan & Company will be considered a cost.

### D. Computation and Reasonableness

The United States Supreme Court has held that the "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate." *Blum v. Stetson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). This amount is known as the "lodestar" figure, which is presumed to be the reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Counsel,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Pennsylvania v. Delaware Valley Citizens' Counsel,* 483 U.S. 711, 730-31, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

In calculating the reasonable rate, the Court looks to the prevailing market rates in the relevant community. *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir.2001). The Court should considered the experience and skill of the prevailing party's attorney, and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Maldonado v. Houstoun,* 256 F.3d 181, 184 (3d Cir.2001). The prevailing party bears the burden of demonstrating that the requested hourly rates are reasonable. *Id.*

**\*5** The Court must also determine whether the number of hours spent on the litigation was a reasonable number of hours. The Court "should review the time charged, decide whether the hours claimed were reasonably expended for each for the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.' " *Public Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1188 (3d Cir.1995)

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(citations omitted). Thus, a trial court will "exclude from this initial fee calculation hours that were not reasonably expended on the litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Thus, using the lodestar methodology, the Court can calculate a reasonable attorneys' fee.

*1. Ullman, Shapiro & Ullman, LLP*

Plaintiff first claims attorneys' fees of $423,907.85 from the firm of Ullman, Shapiro & Ullman, LLP. (Cavanaugh Aff. ¶ 4, Apr. 11, 2003, Doc. 225.) The records submitted by Ullman, Shapiro & Ullman do not distinguish between work done on action 3:99-CV-1574 and work done on action 3:99-CV-1624. Included in the invoices for Ullman, Shapiro & Ullman are records of disbursements for investigative fees; filing fees; LEXIS research; courier, messenger and postage; local and out-of-town travel; photocopying; long distance telephone and facsimile; deposition transcripts; and out-of-town lodging expenses. (Cavanaugh Aff. ¶ 6, Apr. 11, 2003, Doc. 225.)

Numerous attorneys billed hours for Ullman, Shapiro & Ullman. These attorneys were Dennis Cavanaugh, Elizabeth S. Gioiosa Dillabough, Steven Shapiro, Marc S. Ullman, Vanessa Riviera, and an unnamed law clerk. Plaintiff has submitted a firm-by-firm sampling of billing rates nationwide. (Ex. 225 Doc. H.) This sampling of billing rates included the 2002 rates for other New York City law firms, including Kelley Drye & Warren and Kramer Levin Naftalis & Franke. Rates for these firms ranged from one-hundred and eighty dollars ($180.00) to five-hundred and ninety dollars ($590.00) in the year 2002. Upon review of the billing rates of these firms, the Court finds that the billing rates for their attorneys and law clerk are also within this range, and therefore are reasonable, considering the experience and skill of the attorneys, and comparing the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

Dennis Cavanaugh billed twenty-four (24) hours in the year 1999, at a rate of two-hundred dollars ($200.00) per hour. His total bill for 1999 was four-thousand, eight-hundred dollars ($4,800.00). In 2000, Mr. Cavanaugh's rate increased to two-hundred and fifteen dollars ($215.00) per hour. He billed two-hundred and twenty-five and three-quarters hours (225.75), for a total bill of forty-eight thousand, five-hundred and thirty-six dollars and twenty-five cents ($48,536.25). In 2001, Mr. Cavanaugh's rate increased to two-hundred and forty dollars ($240.00) per hour. He billed five-hundred and twenty-three and three-tenths hours (523.30) in 2001, for a total charge of one-hundred twenty-five thousand, five-hundred and ninety-two dollars ($125,592.00). In 2002, Mr. Cavanaugh's rate increased to two-hundred and sixty dollars ($260.00) per hour. That year, Mr. Cavanaugh billed two-hundred and seventy-seven and one-tenth (277.10) hours, for a total bill of seventy-two thousand and forty-six dollars ($72,046.00). Finally, in 2003, Mr. Cavanaugh's rate was two-hundred and seventy-five dollars ($275.00) per hour, and he billed three-hundred seventy-seven and three-tenths (377.30) hours. His total bill for 2003 was one-hundred and three-thousand, seven-hundred and fifty-seven dollars and fifty cents ($103,757.50). Mr. Cavanaugh's total bill for the years 1999 through 2003 was three-hundred fifty-four thousand, seven-hundred thirty-one dollars and seventy-five cents ($354,731.75). Although the Court has found his rates to be reasonable, the number of hours submitted must be apportioned. The records submitted to the Court do not differentiate between billing between matters 3:99-CV-1574 and 3:99-CV-1624. Thus, the number of hours submitted by the Plaintiff is unreasonable, as all work was not directed towards the Lanham Act claim. Furthermore, some of the entries included in his records were vague, such as "Draft documents" on September 9, 2001. Therefore, the Court will apportion the fees by fifty percent (50%), and award one-hundred seven-hundred seventy thousand,

three-hundred and sixty-five dollars and eighty-seven cents ($177,365.87).

**\*6** Elizabeth S. Gioiosa Dillabough billed hours in the years 2000, 2001, and 2002. In 2000, her rate was one-hundred and sixty-five dollars ($165.00), and she worked seventy and six-tenths (70.60) hours, for a charge of eleven-thousand, six-hundred and forty-nine dollars ($11,649.00). In 2001, her rate was one-hundred and seventy-five dollars ($175.00), and she worked seventy-one and six-tenths (71.60) hours, for a charge of twelve-thousand, five-hundred and thirty dollars ($12,530.00). Finally, in 2002, Ms. Dillabough's rate was one-hundred and eighty dollars ($180.00), and she worked three-tenths (.30) of one hour, and charged fifty-four dollars ($54.00). Ms. Dillabough's total charge was twenty-four thousand, two-hundred and thirty-three dollars ($24,233.00). Again, although Ms. Dillabough's rate was reasonable, her hours are unreasonable based upon the fact that these hours do not distinguish between work on action 3:99-CV-1574 and action 3:99-CV-1624. Therefore, the Court will apportion her hours by fifty percent (50%), and award twelve-thousand, one-hundred and sixteen dollars and fifty cents ($12,116.50).

Steven Shapiro had minor involvement in this case. In 2000, he billed one-tenth of an hour, at a rate of two-hundred and thirty-five dollars ($235.00), for a charge of twenty-three dollars and fifty cents ($23.50). In 2001, he billed four and one-tenth (4.10) hours at a rate of two-hundred and sixty dollars ($260.00) per hour, for a charge of one-thousand and sixty-six dollars ($1,066 .00). In 2002, he billed four-tenths (.40) of one hour at a rate of two-hundred and seventy-five dollars ($275.00), for a charge of one-hundred and ten dollars ($110.00). Finally, in 2003, he charged seven-tenths (.70) of an hour at a rate of two-hundred and ninety-five dollars ($295.00) per hour, for a charge of two-hundred and six dollars and fifty cents ($206.50). His total bill for the case was one-thousand, four-hundred and six dollars ($1,406.00).

Although Mr. Shapiro's rate was reasonable, his hours are unreasonable based upon the fact that these hours do not distinguish between work on action 3:99-CV-1574 and action 3:99-CV-1624. Therefore, the Court will apportion his hours by fifty percent (50%), and award seven-hundred and three dollars ($703.00).

Marc S. Ullman also had minor involvement in this case. In 2000, he charged one (1.00) hour of time, at a rate of two-hundred and thirty-five dollars ($235.00) per hour, for a total charge of two-hundred and thirty-five dollars ($235.00). In 2001, he billed three-tenths (.30) of one hour, at a rate of two-hundred and sixty dollars ($260.00) per hour, for a total charge of seventy-eight dollars ($78.00). Mr. Ullman's total bill for this case was three-hundred and thirteen dollars ($313.00). As his records do not distinguish between matters 3:99-CV-1574 and 3:99-CV-1624, his fee will be apportioned by fifty percent (50%), and he will be awarded one-hundred and fifty-six dollars and fifty cents ($156.50).

**\*7** In 2003, Vanessa Riviera billed fifteen and one-half (15.50) hours at a rate of one-hundred and fifty dollars ($150.00) per hour, for a total bill of $2,325.00. She did not bill any time earlier than 2003. The hours billed by Ms. Riviera are generally duplicative and unnecessary. Her entries include broad statements such as "Review litigation documents," "Review documents for Exhibit list," "Review pleadings," "Review trial exhibits," and "Review trial exhibits & documents." (Doc. 225 Ex. D.) Such entries will be disregarded, and her total number of hours will be reduced to eight (8) hours for various research assignments on trademark law. Her rate of one-hundred and fifty dollars ($150.00) per hour is reasonable, and therefore her total will be one-thousand, two-hundred dollars ($1,200.00).

Finally, Ullman, Shapiro & Ullman had an unnamed law clerk who billed time to this matter in 2000, 2001, and 2002. In *Missouri v. Jenkins,* 491 U.S. 274, 284-85, 109 S.Ct. 2463, 105 L.Ed.2d 229

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:04-cv-00576-SHR    Document 441    Filed 05/27/09    Page 43 of 86

(1989), the Supreme Court permitted the services of non-lawyers, such as law clerks, secretaries, and messengers who contribute to attorney work-product to be included in the awarding of attorneys' fees. *Id.* Therefore, these charges will be permitted. In 2000, the law clerk billed twenty-three and one-half (23.50) hours at a rate of fifty dollars ($50.00) per hour. The total charge for 2000 was one-thousand, one-hundred and seventy-five dollars ($1,175.00). In 2001, the law clerk billed one-hundred, fifty-eight and seven-tenths (158.70) hours at a rate of fifty-five dollars ($55.00) per hour. The total charge for 2001 for the law clerk was eight-thousand, seven-hundred and twenty-eight dollars and fifty cents ($8,728.50). Finally, in 2002, the law clerk billed thirty and eight-tenths (30.80) hours at a rate of sixty dollars ($60.00) per hour. The total charge for the law clerk for 2002 was one-thousand, eight-hundred and forty-eight dollars ($1,848.00). The total charge for the law clerk for the three (3) years is eleven-thousand, seven-en-hundred and fifty-one dollars and fifty cents ($11,751.50). The invoice did not distinguish between work done for action 3:99-CV-1574 and action 3:99-CV-1624. Therefore, although the rate for the law clerk was reasonable, the hours are not. The Court will apportion these fees by fifty percent (50%), and award five-thousand, eight-hundred and seventy-five dollars and seventy-five cents ($5,875.75).

### 2. D. Bruce Hanes and Associates, P.C.

Plaintiff claims fees of $20,625.00 for the services of D. Bruce Hanes and Associates, P.C. This law firm originally represented the Plaintiffs and filed the original complaints in this action. (Cavanaugh Aff. ¶ 7, Apr. 11, 2003, Doc. 225.) The party petitioning for attorneys' fees has the burden of demonstrating that the rates and number of hours are reasonable. *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 554, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1993). Defendant objected to the requested attorneys' fees and costs, in part based upon the description of tasks submitted by the Plaintiff.

In the case of the fees claimed by D. Bruce Hanes and Associates, the Plaintiff has failed to show that he charged a reasonable rate or spent a reasonable number of hours on the litigation. In fact, Plaintiff failed to give any rate or number of hours spent by D. Bruce Hanes and Associates on this litigation. (Doc. 225 Ex. C.) Furthermore, the letter submitted gives no detail as to the type of activity billed for. (Doc. 225 Ex. C.) Therefore, the Court will deny the Plaintiff's request for attorneys' fees by D. Bruce Hanes and Associates.

### 3. Foley, Cognetti, Comerford & Cimini

**\*8** Plaintiff also claims fees for the law firm of Foley, Cognetti, Comerford & Cimini in the amount of $74,894.95. (Cavanaugh Aff. ¶ 8, Apr. 11, 2003, Doc. 225.) Included in this amount is a list of costs for photocopies, postage, telephone calls, UPS, facsimiles, service attempts, and fees for appearances at depositions in the amount of $1,024.95. (Doc. 225 Ex. D.) Counsel for Plaintiff also notes that Plaintiff's request includes an adjustment to deduct amounts for post-trial services. In Plaintiff's affidavit, Plaintiff notes that the fee should be decreased by one-thousand and seven-hundred dollars ($1,700.00) for eight and one-half (8.5) hours of post-trial work. Therefore, the total amount of fees excluding costs claimed amounts to seventy-three thousand, eight-hundred and seventy dollars ($73,870.00) for a total of approximately three-hundred and sixty-nine and one-third (369.35) hours. The services are listed at a rate of two-hundred dollars ($200.00) per hour.

However, there are several problems with the submitted invoices by Foley, Cognetti, Comerford & Cimini. The records submitted by Foley, Cognetti, Comerford & Cimini do not distinguish between work done on action 3:99-CV-1574 and work done on action 3:99-CV-1624. Nor do the records specify the attorney performing the work on each entry.

The Third Circuit Court of Appeals has noted that to satisfy its burden, the fee petitioner "must

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 108671 (M.D.Pa.)
(Cite as: 2008 WL 108671 (M.D.Pa.))

'submit evidence supporting the hours worked and the rates claimed.'" *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 426 F.3d 694, 703 n. 5 (3d Cir.2005) (quoting *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Furthermore, the Supreme Court has held that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433. The failure of the fee petitioner to distinguish which attorney performed what services makes it difficult for the Court to determine whether the hours spent were reasonably expended. The Supreme Court requires that a district court exclude from the fee calculation hours that are "excessive, redundant, or otherwise unnecessary." *Id. at 434.*As stated previously, it is difficult for the Court to determine whether the hours are reasonable, based upon the fact that the fee petitioner did not distinguish hours spent on action 3:99-CV-1574 from hours spent on action 3:99-CV-1624. Furthermore, it is difficult to determine whether the rate was reasonable, as the Court has no information as to which attorneys performed the various services.

However, the fee petitioner has provided a breakdown of the services, including the amount of time expended on each task, and a description of the work performed. As some, but not all, of the relevant documentation has been provided, the Court will reduce the award in accordance with the *Hensley* ruling. Defendants make no objection to the rate provided by the Plaintiff. Two-hundred dollars ($200.00) per hour is a reasonable rate considering the experience and skill of the attorneys, and comparing the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. The Court takes judicial notice of the rates of other attorneys in the Middle District of Pennsylvania, and finds that this rate is reasonable for local counsel. The However, the number of hours is unreasonable, given that the fee petitioner has failed to distinguish the attorney performing the work and the

action the work is related to. Therefore, the Court will apportion the fees of Foley, Cognetti, Comerford & Cimini, and reduce the fees by sixty percent (60%). The Court will award fees in the amount of twenty-thousand, five-hundred and forty-eight dollars ($29,548.00).

**II. Costs**

**\*9** To recover costs pursuant to the Lanham Act, a plaintiff need not establish any exceptional circumstances. *See*MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:107. Rather, the recovery of costs is "subject to the principles of equity."15 U.S.C. § 1117(a). Thus, the trial court has equitable discretion to award costs. MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:107.

Taxable costs are set forth in 28 U.S.C. § 1920, which provides that

[a] judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

Federal statutory law further provides for the reimbursement of expert witness fees in 28 U.S.C. § 1821. Section 1821(b) provides for a $40 attendance fee for expert witnesses, and Section 1821(c) and (d) provides for travel and subsistence allowances in conjunction with depositions and court appearances. The Supreme Court has held that "a fed-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

eral court is bound by the limit of § 1821(b), absent contract or explicit statutory language to the contrary." *Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 439, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).* There has been no contract regarding expert witness fees, and the Lanham Act has no specific provision regarding the award of expert witness fees.

Plaintiff cites *West Virginia Univ. Hosp. v. Casey,* 885 F.2d 11, 33 (3d Cir.1989), a Third Circuit Court of Appeals case, for the proposition that "a district court has the equitable discretion to award expert witness fees above the amount provided in § 1821 if 'the expert's testimony is indispensable to determination of the case.'" *Id.* (quoting *Roberts v. S.S. Kyriakoula D. Lemos,* 651 F.2d 201, 206 (3d Cir.1981)). However, Plaintiff failed to consider the final holding of the case, which stated "we believe that we are constrained by the language of *Crawford* to abandon our previous rule and to limit expert witness fees to thirty dollars a day. Congress has chosen to legislate in this area and unless the statute under which expert witness fees are awarded expressly repeals the limits of sections 1920 and 1821(b), we must defer to legislative fiat." *Id.* at 34. Although the former rule of the Third Circuit Court of Appeals permitted fees beyond Section 1821, that rule has since been abrogated, and the Court is limited to the forty dollars ($40) per day as provided by Section 1821.

**\*10** First, Plaintiff requests expert witness fees for ParenteRandolph, LLC. Stephen Scherf of ParenteRandolph acted as the Plaintiff's damages expert. Plaintiff requests $45,243.62 for the services of ParenteRandolph. (Doc. 225 Ex. A.) However, the total amount of fees claimed by the Plaintiff cannot be granted, as the Court is constrained by statute and the Supreme Court's holding in *Crawford.* "Clearly, the statute under which plaintiff claims a right to costs-the Lanham Act-does not provide explicit authority to award expert witness fees as costs." *Nugget Distrib. Co-op. Of America, Inc. v. Mr. Nugget, Inc.,* 145 F.R.D. 54, 58

(E.D.Pa.1992) (discussing *Crawford* and refusing to permit expert fees above the statutory amount permitted by 28 U.S.C. § 1920). Upon review of the invoices, many of the hours billed were not accredited to Mr. Scherf, the expert witness. (Doc. 225 Ex. F.) Numerous hours are accredited to other employees of ParenteRandolph, including A. Bennett, A. Sonstein, E. Morris, R. Russo, A. Koppelman, and M. Bradford. (Doc. 225 Ex. F.) These fees may not be recovered because there is no documentation showing that these persons attended court, and therefore they do not qualify as witnesses *See* Local Rule 54.4(4). However, Mr. Scherf is entitled to forty dollars ($40.00) for his attendance at trial. According to his invoice, Mr. Scherf's attendance occurred on March 3, 2003 and March 6, 2003, and therefore Plaintiff is entitled to eighty dollars ($80.00) for his attendance. Mr. Scherf's invoice of March 10, 2003 contains business expenses including expense for tolls, mileage, and parking. However, according to Section 1821(c)(3), such charges require a receipt. Furthermore, Mr. Scherf's invoice does not contain a mileage amount, rather, it contains a dollar amount. As the Court cannot compute the mileage in accordance with 28 U.S.C. § 1821(c)(2), the Plaintiff's requests for travel expenses for ParenteRandolph will be denied.

Plaintiff also requests expert witness fees for Khaitan & Company, as M.P. Rao acted as an expert witness on Indian law. According to the invoice for Mr. Rao, he was in attendance in the District Court on March 3, 4, 5, 6, 7, 10, 11, 12, and 13, 2003. (Doc. 225 Ex. E.) Therefore, he is entitled to forty dollars ($40.00) per day, or three-hundred and sixty dollars ($360.00) total for his attendance. Although in his affidavit, Mr. Cavanaugh states that Ms. Tushna Thapliyal also assisted in the case, there is no record of her attendance at trial, and therefore the Plaintiff may not recover her fees. *See* Local Rule 54.4(4). In a table submitted by the Plaintiff, Plaintiff asserts that Ms. Tushna and Mr. Rao spent 1,97,356.00 rupees in airfare from India for purposes of trial. However, Plaintiff has submitted no receipt or other evidence of actual cost as required

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

by 28 U.S.C. § 1821(c)(1). Therefore, travel reimbursements for airfare will not be granted. Pursuant to 28 U.S.C. § 1821(d), a subsistence allowance is permitted when an overnight stay is required by the witness. As Mr. Rao was in attendance from India, such an allowance is awardable. The receipt from the Radisson in Lackawanna Station in Scranton lists Mr. Rao for a room charge of $139.00, and taxes of $8.34 and $5.56. However, for the fiscal year 2003, the General Services Administration's maximum per diem rate was $94.00 for lodging, meals, and incidental expenses. Therefore, Plaintiff will be awarded $94.00 for one day's subsistence.

**\*11** Plaintiff further requests direct expenses incurred by the Plaintiff in connection with the prosecution of this action. These expenses include travel and subsistence costs of all of its witnesses, including M.K., Rajiv, and Rishi Jalan, as well as costs for the accountant deposition appearance, and Federal Express charges.

Witnesses called by the Plaintiff are further entitled to an attendance fee of forty dollars ($40.00) for each day they testify, or if they do not testify, may receive fees if the witness necessarily attends court. Local Rule 54.4.(4). Witnesses called by the Plaintiff were M.K. Jalan, Rajiv Jalan, Rishi Jalan, Darel Kesner and Dan Stoker. M.K. Jalan testified on four days, March 4, 5, 11, and 12, 2003, and therefore will receive $160.00 for his attendance. Rajiv Jalan also testified on three days, March 5, 6, and 10, 2003, and therefore will also receive $120.00 for his attendance. Darel Kesner, Dan Stoker, and Rishi Jalan each testified one (1) day, on March 5 and 6, respectively, and therefore will receive forty dollars ($40.00) each. Plaintiff has not demonstrated that the witnesses attended Court on any other day besides the days they testified, and therefore, the witnesses will not receive any further witness fees.

The Federal Express charges will be disallowed, as witnesses are not permitted such costs under Section 1920. The costs for the accountant deposition appearance is limited by Section 1821, and there-

fore the cost will be limited to forty dollars ($40.00) for one day's appearance. Lastly, there are a number of expenses including airfare, car rental, gasoline, hotel, and meals. Generally, parties may not collect witness fees. See Greene v. Fraternal Order of Police, 183 F.R.D. 445, 450 (E.D.Pa.1990). However, other circuits have permitted the expenses of officers of a corporation when acting as witnesses, and the officers are not a party to the suit. See W.H. Smith Hotel Serv., Inc. v. Wendy's Intl., Inc., 25 F.3d 422, 429-30 (7th Cir.1994). In action 3:99-CV-1624, Jama Corporation was the plaintiff. Therefore, the Jalans may properly be characterized as witnesses, testifying on behalf of the corporation. Therefore, the Jalans are entitled to travel and subsistence fees. Plaintiff has submitted a chart of airline tickets, which include the airfare for Rajiv, Rishi, and M.K. Jalan. However, the dates of the airfare are unexplained. Plaintiff has failed to state whether these flights were for the purpose of depositions, meetings with counsel, or other reasons. These unexplained flights, varying in dates from August 1999 to January 2003, will not be reimbursed as witness fees. Plaintiff has failed in its burden of proof in showing that these costs were associated with depositions. The Court notices that Plaintiff claims airfare on February 28, 2003 for M.K. and Rajiv Jalan, in the amounts of 2,10,949.00, 2,01,992.00, and 24,336.00 rupees, several days prior to trial. However, Plaintiff failed to submit receipts for these flights in accordance with Section 1821(d). Therefore, the Court will decline to reimburse the airfare on these dates as well.

**\*12** Plaintiff has also submitted receipts for hotel and meal reimbursement. For example, Plaintiff has submitted a receipt for the Radisson at Lackawanna Station in Scranton for January 23rd and 24th, 2003. However, Plaintiff has failed to specify the reason for this receipt. As Plaintiff has failed to establish its burden of proof, this expense will be declined. Similarly, Plaintiff submits receipts from the Radisson at Lackawanna Station in Scranton from April 2001. Again, Plaintiff has failed to specify if

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 108671 (M.D.Pa.)
**(Cite as: 2008 WL 108671 (M.D.Pa.))**

such an expense is subject to reimbursement for witness subsistence costs. Plaintiff also submitted a receipt for a car rental from April 2001 in the amount of four-hundred and twenty-one dollars and ninety-six cents ($421.96). Plaintiff has failed to specify the purpose of this receipt, and whether the cost was in connection with witness subsistence. Therefore, this cost will also be declined.

Plaintiff has also submitted an invoice from the Radisson at Lackawanna Station in Scranton for the dates February 28, 2003 through March 13, 2003. This invoice includes room charges, meal charges, photocopy charges, facsimile charges, dry cleaning charges, and charges for long distance phone calls. The witnesses are entitled to subsistence reimbursement, but they are not permitted charges such as photocopy charges, facsimile charges, dry cleaning charges, and charges for long distance phone calls. Therefore, those costs will be declined. The number of hotel rooms on the invoice varied from three (3) to seven (7) rooms during the span of almost two (2) weeks. However, on the invoice, the name next to each hotel room simply states "Jalan." Similarly, the affidavit submitted by the Plaintiff does not specify the witnesses for which the rooms and meals were charged. Therefore, the Court will only provide for subsistence for the three members of the Jalan family, as "Jalan" is the only name specified on the receipt. Charges begin on February 28, 2003, although the trial began on March 4, 2003. Therefore, the Court will disregard the charges for February 28, 2003, March 1, 2003, and March 2, 2003. Rajiv, Rishi, and M.K. Jalan will be entitled to $94.00 per day subsistence as permitted by the General Services Administration's maximum per diem rate for Scranton, Pennsylvania. M.K. Jalan will each receive a per diem for eleven (11) days, from March 3, 2003 through March 13, 2003. He will each receive a per diem of one-thousand and thirty-four dollars ($1,034.00) for their subsistence for those dates. Rajiv Jalan only testified on the dates March 5, 6, and 10, 2003. Therefore, he will receive subsistence for eight days, from March 4, 2003 through March 11, 2003, in the amount of

$752.00. Finally, Rishi Jalan only testified on one (1) day, March 6, 2003. Therefore, he will receive subsistence for three (3) days in the amount of $282.00. The Plaintiff has failed to demonstrate that these particular witnesses have incurred any further costs.

**\*13** Plaintiff has also submitted receipts for a rental car and gas. The receipts show that one-thousand and twenty-seven dollars and fifty-five cents ($1,027.55) was paid for a rental car, and seventy-one dollars and fifty-two cents ($71.52) was paid for gas. Witnesses are permitted reimbursements for travel to the courthouse. See 28 U.S.C. § 1821(c). However, the car rental fee is excessive. Furthermore, the Plaintiff submitted gasoline receipts, but did not submit any documentation of the mileage. Therefore, these costs will be disallowed.

The invoice from Ullman, Shapiro & Ullman included a number of out-of-pocket disbursements. The total amount of costs from the firm of Ullman, Shapiro & Ullman claimed is twenty-eight thousand, three-hundred and twenty-five dollars and twenty-five cents ($28,325 .25). The invoice included three-hundred and eighty-three dollars and thirty cents ($383.30) for phone charges. It also included a bill for six-thousand, four-hundred and thirty-five dollars and ninety-six cents ($6,435.96) in photocopy charges. Another charge is for three-thousand, five-hundred and twenty-nine dollars and thirteen cents ($3,529.13) in fax charges. A Lexis bill is included in the amount of five-thousand, eight-hundred and seventeen dollars and seventy-eight cents ($5,817.78). Postage, federal express, and messenger fees were included in the amount of two-thousand, three-hundred thirty-four dollars and twenty-two cents ($2,334.22). Office supplies were listed at one-hundred and sixty-two dollars and sixty cents ($162.60). Typing and word processing fees were listed at seven-hundred and twenty-four dollars ($724.00). Witness fees were included for a charge of two-hundred and ninety-five dollars ($295.00). Investigative fees were listed as five-hundred and eighteen dollars and seventy-five cents

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 108671 (M.D.Pa.)
**(Cite as: 2008 WL 108671 (M.D.Pa.))**

($518.75). Travel and hotel expenses for the firm were listed at three-thousand, five-hundred and thirty dollars and fourteen cents ($3,530.14). Other miscellaneous fees included two-hundred and two dollars and sixty cents ($202.60) for a deposition video, thirty-eight dollars ($38.00) for a working lunch and car ride home, fifteen dollars ($15 .00) for a certificate of good standing, and three-hundred dollars ($300.00) to the U.S. Patent Office. A fee of two-hundred and forty-five dollars ($245.00) was listed as filing fees, and one-hundred and four dollars and ninety-five cents ($104.95) was listed for service of process. Court reporter services for the deposition was listed as three-thousand, six-hundred and eighty-eight dollars and eighty-two cents ($3,688.82). However, services for Giriwirlal and Kiran Gupta were listed twice, and therefore the court reporter services will be reduced to two-thousand, five-hundred and ninety-nine dollars and eighty-two cents ($2,599.82).

The Third Circuit Court of Appeals has awarded out-of-pocket expenses as part of attorneys' fees in the civil rights context, and has held that out-of-pocket expenses may be included in attorneys' fees as " 'incidental and necessary expenses incurred in furnishing effective and competent representation.'" *Planned Parenthood of Cent. New Jersey v. Attorney Gen. of the State of New Jersey,* 297 F.3d 253 (3d Cir.2002) (quoting Remarks of Congressman Drinan, 122 CONG. REC. H12160 (daily ed. 1 Oct. 1976) (permitting out-of-pocket expenses in a Section 1988 case). However, the court has yet to rule on whether out-of-pocket expenses are permitted in the context of the Lanham Act. In *Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 726 F.Supp. 928 (S.D.N.Y.1989), the Southern District fo New York noted that "[w]hile out-of-pocket costs are an appropriate element of the punitive damages award [for the tortious interference claim], there is less basis, and no authority cited, for including out-of-pocket costs under § 1117 which refers only to attorney's fees." *Id.* at 928.This Court therefore finds that the request for out-of-pocket expenses is unreasonable, and only taxable costs

pursuant to Section 1920 will be permitted. Therefore, the Court will permit an award for court reporting services, the filing fee, and photocopy fees. The Court will apportion the award by fifty percent (50%), as the firm has not distinguished between costs for civil action number 3:99-CV-1574 and 3:99-CV-1624. Therefore the Court will award one-thousand, two-hundred and ninety-nine dollars and ninety-one cents ($1,299.91) for court reporting services, one-hundred and twenty-two dollars and fifty cents ($122.50) for filing fee, and three-thousand, two-hundred and seventeen dollars and ninety-eight cents ($3,217.98) for photocopy fees. Therefore, the total of taxable costs awarded to Ullman, Shapiro & Ullman is four-thousand, six-hundred and forty dollars and thirty-nine cents ($4,640.39).

**\*14** Similarly, the invoice for Foley, Cognetti, Comerford & Cimini included an list of costs of one-thousand and twenty-four dollars and ninety-five cents ($1,024.95). These costs included four-hundred and nineteen dollars and thirty cents ($419.30) for photocopies, three-hundred and thirty-two dollars and sixty-five cents ($332.65) for postage, one-hundred and fifty-three dollars and forty-two cents ($153.42) for phone and conference calls, forty-three dollars and fifty-eight cents ($43.58) for UPS, twenty-six dollars ($26.00) for fax, twenty-five dollars ($25.00) for Robert Cyphers' fee for appearance at a deposition, and twenty-five dollars ($25.00) for a service attempt. The costs permitted are the copying costs. However, as the firm did not distinguish between copies for action 3:99-CV-1574 and action 3:99-CV-1624, the Court will award a total of two-hundred and nine dollars and sixty-five cents ($209.65) in taxable costs.

## CONCLUSION

For the reasons stated above, the Plaintiff's motion for attorneys' fees and costs will be granted in part and denied in part.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 108671 (M.D.Pa.)
**(Cite as: 2008 WL 108671 (M.D.Pa.))**

An appropriate Order follows.

### ORDER

**NOW,** this *4th* day of January, 2008, **IT IS HEREBY ORDERED** that Plaintiff's motion for attorneys' fees and costs (Doc. 224) is **GRANTED in part** and **DENIED in part** as follows:

*(A) Attorneys' Fees*

(1) Ullman, Shapiro & Ullman, L.L.P. is awarded attorneys' fees in the amount of:

(a) $177,365.87 for attorney Dennis Cavanaugh;

(b) $12,116.50 for attorney Elizabeth S. Gioiosa Dillabough;

(c) $703.00 for attorney Steven Shapiro;

(d) $156.50 for attorney Marc S. Ullman;

(e) $1,200.00 for attorney Vanessa Riviera;

(f) $5,875.75 for work by the law clerk;

(g) and $4,640.39 in taxable costs.

(2) D. Bruce Hanes and Associates, P.C. is not awarded any attorneys' fees or costs.

(3) Foley, Cognetti, Comerford & Cimini is awarded:

(a) $29,548.00 for attorneys' fees; and

(b) $209.65 in taxable costs.

*(B) Costs*

(4) Plaintiff is awarded expert witness fees in conjunction with ParenteRandolph in the amount of $80.00.

(5) Plaintiff is awarded expert witness fees and costs in conjunction with Khaitan & Co. in the amount of $454.00.

(6) Plaintiff is awarded expert witness fees for the deposition appearance of the accountant in the amount of $40.00.

(7) Plaintiff is awarded lay witness fees for attendance in the amount of;

(a) $160.00 for M.K. Jalan;

(b) $120.00 for Rajiv Jalan;

(c) $40.00 for Rishi Jalan;

(d) $40.00 for Darel Kesner; and

(e) $40.00 for Dan Stoker.

(8) Plaintiff is awarded subsistence costs in the amount of:

(a) $752.00 for Rajiv Jalan;

(b) $282.00 for Rishi Jalan; and

(c) $1,034.00 for M.K. Jalan.

M.D.Pa.,2008.
Jama Corp. v. Gupta
Not Reported in F.Supp.2d, 2008 WL 108671 (M.D.Pa.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**TAB C**

Not Reported in F.Supp.                                                                                            Page 1
Not Reported in F.Supp., 1990 WL 33888 (E.D.Pa.)
**(Cite as: 1990 WL 33888 (E.D.Pa.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Rochelle and Clara WILEY
v.
NATIONWIDE MUTUAL INSURANCE COM-
PANY.
**CIV. A. No. 89-1467.**

March 22, 1990.

Melvin T. Sharpe, Jr., Philadelphia, Pa., for
plaintiffs.

John A. Lord, White & Williams, Philadelphia, Pa.,
for defendant.

*MEMORANDUM AND ORDER*

GAWTHROP, District Judge.

**\*1** This court entered a default judgment against
defendant Nationwide on May 17, 1989. On June
23, 1989, Nationwide filed a motion to set aside the
default. I granted the motion to set aside, but
ordered defendant to reimburse plaintiff for costs
and fees incurred by plaintiff as a result of defend-
ant's failure to answer the complaint. In accordance
with that order, Plaintiff's counsel submitted an
itemized request for fees to defense counsel, with a
copy to the court. Defendant's counsel submitted a
letter directly to the court objecting to the amount
of the fees requested, and plaintiff's counsel respon-
ded with a letter, explanatory exhibits, and an affi-
davit.

Evaluating the reasonableness of an attorney's fees
is within the discretion of the trial court. *Hensley v.
Eckerhart,* 461 U.S. 424, 437 (1983); *Ursic v. Beth-
lehem Mines,* 719 F.2d 670, 675 (3d Cir.1983). In
making this determination, the court must review
the bases for the requested fees, including specific-

ally the amount of time spent and the attorney's
hourly rate, and must explain its reasoning in ac-
cepting or rejecting the requested amount. *Ursic,*
719 F.2d at 675-677

Both the number of hours and the rate at which
counsel charges those hours are reasonable.
Plaintiff's counsel requests payment for fourteen
and one-half hours of work billed at $150 per hour,
plus $10.60 in costs. As to time spent, counsel
states that he is a sole practitioner and must, there-
fore, research legal issues, draft, type, and
proofread documents, and complete mail and deliv-
ery forms. Because he does not have an exhaustive
library at his office, he often travels to a law library
to complete research. In addition, Mr. Sharpe states
he has never before prepared a motion for default
judgment in federal court. Although counsel un-
tutored in an area of law should not be permitted to
requisition the opposition's wallets to subsidize his
own post-graduate legal education as to law he
already ought to have known, this legal question, as
to how properly to conform the presentation of
one's argument's to the procedural rules of an unfa-
miliar forum falls, in my view, within proper, com-
pensable research. Plaintiff's counsel includes cop-
ies of cases and research materials that he reviewed
and annotated by hand while preparing motions and
replies in this case. Mr. Sharpe swears in his affi-
davit that the fee accurately reflects his experience,
time spent, and limited available assistance. Based
on my review of Mr. Sharpe's representations, his
status as a busy sole practitioner, and his inexperi-
ence in preparing federal default motions, I find
that the time spent is reasonable.

Mr. Sharpe bases his fee request on his regular
hourly rate of $150 per hour. The defendant has not
challenged the reasonableness of this rate. An attor-
ney's customary hourly rate generally reflects the
reasonable market value of his services. *See Hens-
ley,* 461 U.S. at 447; *Cunningham v. City of McK-
eesport,* 753 F.2d 262, 268 (3d Cir.1985). In addi-
tion, $150 per hour is within the range of reason-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

able rates for experienced attorneys in the Philadelphia area. *See, e.g., In re: AIA Industries, Inc. Securities Litigation,* Master File No. 84-2276 (E.D.Pa. March 31, 1988) slip op. at 8, 12-17 (approving as reasonable attorneys' billing rates ranging from $75-$300 per hour, with approximately one-half of the approved rates equal to $150 per hour or higher); Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 260 n. 70 (1985) (citing a standardized fee schedule adopted by Community Legal Services in Philadelphia, which suggests fees ranging from $80-120 for attorneys with 2-5 years experience to $130-200 for supervising attorneys). In his affidavit, Mr. Sharpe states that he has "extensive experience in connection with civil litigation against insurance companies, and billing procedures for attorneys in PA."

**\*2** Although the $150 rate is reasonable for legal work performed by an experienced attorney, it is unreasonably high for work able to be performed by a non-lawyer staff person. A sole practitioner must perform personally many tasks delegated at a larger firm to a less experienced lawyer or non-lawyer, but he is not entitled to receive a premium rate for time spent doing those tasks. *See In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 583 (3d Cir.1984) (" 'the court may find that the reasonable rate of compensation differs for different activities,' " *quoting Lindy Bros. Bldrs. Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir.1984)); *Ursic,* 719 F.2d at 677 ("[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn"). It is difficult to identify from the computerized fee statement the type of task performed by Mr. Sharpe in connection with each entry. The entries for "Certified Mail Service" appear to be clerical, however, and I shall reduce counsel's hourly rate for that hour and one-half, plus an additional hour and one-half attributable to filing and typing, to $50 per hour, thereby reducing the fee award by $300 for a total of $1885.60.

I shall also award an additional $300 for fees incurred by counsel in preparing his response to defendant's objections to the original fee request. Plaintiff's counsel's original fee statement itemized the hours spent on each task performed and stated counsel's hourly rate, as ordered by the court, and the additional time spent was in response to defendant's objections. The Third Circuit has permitted award of fees in statutorily authorized fee cases for time spent litigating the original fee request. *See Black Grievance Committee v. Philadelphia Electric Co.,* 802 F.2d 648, 656-657 (3d Cir.1986); *Prandini v. National Tea Co.,* 585 F.2d 47, 52-54 (3d Cir.1978). Counsel here is similarly entitled to reimbursement for his time spent recovering fees due him under order of this court.

An order follows.

*ORDER*

AND NOW, this 22nd day of March, 1990, upon consideration of plaintiffs' counsel's fee statement, supplementary exhibits, and affidavit and the defendant's objections to the fee statement, it is hereby ORDERED that the defendant shall pay $2185.60 in attorney fees and costs to plaintiffs as reimbursement for costs incurred as a result of defendant's failure to answer the complaint.

E.D.Pa.,1990.
Wiley v. Nationwide Mut. Ins.Co.
Not Reported in F.Supp., 1990 WL 33888 (E.D.Pa.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**TAB D**

Slip Copy                                                                                              Page 1
Slip Copy, 2009 WL 900167 (D.N.J.)
**(Cite as: 2009 WL 900167 (D.N.J.))**

**H**

Only the Westlaw citation is currently available.NOT FOR PUBLICATION

United States District Court,
D. New Jersey.
Gary S. SERIO, et al., Plaintiffs,
v.
WACHOVIA SECURITIES, LLC, Defendants.
**Civil Action No. 06-4681 (MF).**

March 31, 2009.
As Amended April 2, 2009.

James E. Cecchi, Lindsey H. Taylor, Carella Byrne Bain Gilfillan Cecchi Stewart & Olstein, PC, Roseland, NJ, for Plaintiffs.

Catherine P. Wells, Russel David Francisco, Wolff & Samson, West Orange, NJ, for Defendant.

**AMENDED OPINION**[FN1]

> FN1. The Court's March 31, 2009 Opinion is amended solely to correct the inadvertent inclusion of footnote number 4 in the text of the original opinion.

MARK FALK, United States Magistrate Judge.

**\*1** This matter comes before the Court by way of Plaintiffs' motion for final approval of the proposed class action Settlement Agreement and Class Counsel's petition for an award of attorneys' fees and reimbursement of expenses. On November 21, 2008, this Court issued an Order granting preliminary approval of the Settlement Agreement. *See* CM/ECF Docket Entry No. 48. A fairness hearing was held on March 3, 2009. The Court has considered the parties' submissions, including two objections,[FN2] as well as the oral argument made at the hearing. Based on the reasons that follow, Plaintiffs' motion is **granted** in its entirety.

> FN2. The Court notes that three class members originally filed objections to the proposed Settlement Agreement: (1) John Ryan, (2) Michael Dobbins, and (3) Russell Stabley. However, by way of letter to the Court dated February 27, 2009, Michael Dobbins withdrew his objection.

*BACKGROUND*

Plaintiffs are generally a group of former Wachovia financial advisors and branch managers who were originally employed by Prudential.

**A. The MasterShare Plan**

During their employment with Prudential, Plaintiffs participated in and contributed to Prudential's MasterShare Plan (the "MasterShare Plan"). The MasterShare Plan was a deferred compensation program that gave Prudential employees the opportunity to invest pre-tax earnings through payroll deductions in shares of the Prudential Stock Index Fund at a 25% discount of the purchase price of Prudential securities. The shares were then deposited into a customer account established for the participant, vesting three years after the date of purchase. Pursuant to the MasterShare Plan, any participant who voluntarily terminated his or her employment with Prudential or was terminated for cause during the three-year period following the date of purchase would forfeit his or her shares.

**B. The Wachovia Plan**

On February 19, 2003, Wachovia and Prudential entered into an agreement (the "Agreement") providing for the transfer of Prudential's retail brokerage and other related assets to Wachovia/ Prudential Financial Advisors, LLC. The Agreement provided that all Prudential employees working for Prudential's brokerage division would be-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

come employees of Wachovia Securities as of June 30, 2003. Wachovia subsequently replaced the MasterShare Plan with the Wachovia Securities Transitional Deferred Compensation Plan (the "Wachovia Plan") (collectively, the MasterShare Plan and the Wachovia Plan are referred to as the "Plans").

### C. Termination of Employment

Plaintiffs allege, generally, that Wachovia Securities constructively terminated their employment as a result of the "impossible" working conditions and "intolerable workplace" environment existing at Wachovia. As a result of these alleged working conditions, Plaintiffs claim that they were unable to provide their clients with the type of financial services to which they were accustomed. Following their alleged constructive termination, Plaintiffs attempted to receive payment of their wage contributions to the Plans.

### D. Plaintiffs' Complaint

On September 28, 2006, Plaintiffs commenced a putative class action to: (1) obtain wages that they allegedly contributed to the Plans, and (2) to obtain the wages contributed to the Plans by the class they sought to represent. In this regard, Plaintiffs sought relief pursuant to the non-forfeiture provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), New York common law and New York labor law.

**\*2** After the initial Complaint was filed, Wachovia filed a motion to dismiss each of Plaintiffs' claims. On August 27, 2007, the Honorable Dennis M. Cavanaugh, U.S.D.J., granted in part and denied in part Wachovia's motion to dismiss. *See* CM/ECF Docket Entry No. 28. Plaintiffs' Amended Complaint asserts causes of action for: (1) recovery of benefits under the non-forfeiture provisions of ERISA, (2) constructive discharge, and (3) a claim that Plaintiffs were entitled to benefits even though they voluntarily stopped work. Wachovia has

denied any wrongdoing throughout the litigation and has challenged each of Plaintiffs' allegations.

### E. Settlement Negotiations

The parties began initial settlement discussions in the fall of 2007. The parties subsequently participated in a mediation session before the Honorable Edward E. Infante. Although the mediation itself failed, the parties continued to engage in negotiations. By November 2008, the instant proposed Settlement was reached. Shortly thereafter, the parties consented to have the undersigned conduct any and all proceedings in this case, including the trial, entry of final judgment, and all post-judgment proceedings. An Order of Reference was entered by the Honorable Dennis M. Cavanaugh, U.S.D.J., on November 13, 2008. *See* CM/ECF Docket Entry No. 47.

### F. Proposed Settlement

The proposed settlement provides for total consideration to the Class of $1,005,000.00 in exchange for: (1) the release of the claims of the Plaintiffs' Class; (2) Class Counsels' attorneys' fees; (3) Plaintiffs' expenses; (4) Class representative enhancements; (5) interest; and (6) Claims Administration expenses.

Under the terms of the proposed Settlement, Financial Advisors and Financial Advisors-In-Training who contributed to the MasterShare Plan would receive 4% of their wage contributions. Financial Advisors and Financial Advisors-In-Training who contributed to the Wachovia Plan would receive 3% of their wage contributions. Branch Managers who contributed to the MasterShare Plan would receive $500. However, if the total settlement fund, reduced by Class Counsels' fees and expenses, is not sufficient to pay these amounts then the awards to all Class Members would be reduced on a *pro rata* basis. Finally, the Class Settlement excludes from its terms all claims for class-wide resolution of Plaintiffs' constructive discharge claims.[FN3]

FN3. In granting preliminary approval of the Class Action Settlement Agreement, this Court found that the prerequisites for a class action under Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) had *not* been satisfied with regard to the alleged constructive discharge claims. In particular, the Court explained that, based upon the specific facts in this case and the record before the Court, each resignation-and the reasons underlying same-should be analyzed on a case-by-case basis. As a result, the Court found that such claims are not appropriate for class determination. *See* CM/ECF Docket Entry No. 48.

**G. Notice**

Following this Court's preliminary approval of the Plaintiff Class and the proposed Settlement Agreement in November 2008, Wachovia provided to the Claims Administrator and Class Counsel the names and addresses of all individuals identified in Wachovia's records as Class Members. The Claims Administrator mailed the direct mail notice within thirty (30) days of this Court's preliminary approval. The notice informed Class Members of the period of time in which they could file objections to the settlement. The Claims Administrator has submitted a certification attesting to same. Out of over six hundred (600) notice packets mailed, to date, only two Class Members have filed objections with respect to any aspect of the proposed Settlement. No objections were filed with respect to the proposed award of attorneys' fees.

*DISCUSSION*

**A. Certification of Settlement Class**

**\*3** The Court preliminarily found that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) were met. Based on the reasons that follow, the Court finds that all such requirements

are, in fact, satisfied; therefore, the Class should now be finally certified.

**1. Requirements of Fed.R.Civ.P. 23(a)**

The four requirements of Federal Rule of Civil Procedure 23(a) are that:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Weiss v. York. Hosp.,* 745 F.2d 786, 807 (3d Cir.1984). Such requirements are commonly referred to as numerosity, commonality, typicality and adequacy of representation. *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 527 (3d Cir.2004).

*Numerosity*

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. Impracticality does not, however, mean impossibility. *See, e.g., Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J.1990). The Third Circuit has found the numerosity requirement satisfied where the proposed class consisted of "more than 90 geographically dispersed plaintiffs." *Eisenberg v. Gagnon,* 766 F.2d 770, 785-86 (3d Cir.), *cert. denied,* 474 U.S. 946 (1985). Similarly, in this case, joinder of all class members is impracticable because there are hundreds of class members dispersed through the United States. None of the Class members dispute that this requirement has been met. Thus, the Court finds that the Class satisfies the numerosity requirement.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*Commonality*

Next, Plaintiffs must demonstrate that there are questions or fact or law that are common to the Class to satisfy the commonality requirement. Fed.R.Civ.P. 23(a)(2)."The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. Because the requirement may be satisfied by a single common issue, it is easily met." *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994) (internal citations omitted).

Here, the commonality requirement is satisfied because common questions of law and fact exist as to all members of the Class. Among such common questions of law and fact are: (1) whether the MasterShare Plan or the Wachovia Plan is an ERISA protected plan, (2) whether the surrounding circumstances suggest that the Plans are subject to ERISA, (3) whether the MasterShare Plan or the Wachovia Plan were retention rather than retirement plans designed to encourage employee longevity, (4) whether the atmosphere at Wachovia was so intolerable as to compel a reasonable person to leave, and (5) whether members of the Class have sustained damages, and if so, the appropriate measure of same. All claims at issue arise from the same nucleus of operative facts and pursuant to the same legal theories. *See, e.g., Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 183 (3d Cir.2001) (finding that the commonality requirement will be satisfied where "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.") (citations omitted). Accordingly, the Court finds that the Class satisfies the commonality requirement.

*Typicality*

**\*4** Rule 23(a)(3) requires that "the claims of ... the representative parties [be] typical of the claims ... of the class."Fed.R.Civ.P. 23(a)(3)."The typicality requirement is designed to align the interests of the

class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals. *Id.* at 57.This requirement does not mandate that all putative class members share identical claims." *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 141 (3d Cir.1998). Factual differences between the class representatives and other members of the class do not preclude a finding of typicality. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 311 (3d Cir.1998) (noting that " 'even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct.").

Here, Plaintiffs' claims, as well as the Class's claims, clearly arise out of the same events and practices alleged to have been perpetrated by Defendant. For instance, Plaintiffs allege that all Class members sustained injury as a direct result of the loss of their contributions to the Plans and their alleged constructive discharge claims. In addition, all Class members make the same legal claims under ERISA, New York common law, and New York labor law. Consequently, the Court finds that the Class satisfies the typicality requirement. *See, e.g., Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.1977) (finding the typicality requirement met where the "claims pressed by the representatives are identical to those which they press on behalf of the class generally.").

*Adequacy of Representation*

"Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.1975).

Both prongs are easily satisfied here. First, there

are no conflicts of interest between the Plaintiffs and other Class members. It is alleged that Plaintiffs, like the other Class members, were damaged because of Defendant's allegedly unlawful conduct and the Plaintiffs would have to prove the same wrongdoing as the absent Class members in order to establish Defendant's liability. In addition, Plaintiffs have acted, and continue to act, as fiduciaries of the Class and their interests are directly aligned with those of other Class members.

Second, Plaintiffs have retained attorneys who are highly qualified, experienced and certainly able to conduct this litigation. In fact, Class Counsel are all experienced in class action litigation, in particular, and have successfully prosecuted numerous class actions throughout the United States. The adequacy requirement of Rule 23(a) has, therefore, been met.

**\*5** In light of the foregoing, it is clear that the Class has demonstrated compliance with each of the four prongs of Rule 23(a). The Court turns now to the requirements of Rule 23(b)(2).

**2. Requirements of Fed.R.Civ.P. 23(b)(2)**

Federal Rule of Civil Procedure 23(b)(2) allows a court to certify a class, barring opt-outs, where the defendant has acted or refused to act in a way that is applicable to the entire class, making equitable and/or declaratory relief for the class as a whole appropriate. See, e.g., Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 119 (3d Cir.1990) (finding Rule 23(b)(2) certification appropriate where several key factual questions were dispositive as to all class members); In re Am. Family Enterprises, 256 B.R. 377, 416 (D.N.J.2000) ("[W]here the requirements for certification of a class under Rules 23(b)(1)(B) or 23(b)(2) have been satisfied, there is no constitutional or other right to opt-out of the class.").Rule 23(b) certification is proper here because the basis for the suit is Wachovia's alleged failure to return certain deferred compensation plan contributions-a practice applicable to all Class members. In addition, for purposes of Rule 23(b)(2) certification,

courts routinely characterize injunctions requiring the payment of monies unlawfully withheld as injunctive, rather than monetary, relief-particularly in ERISA cases such as this one. See, e.g., In re Citigroup Pension Plan ERISA Litig., 241 F.R.D. 172, n. 69 (S.D.N.Y.2006). In fact, numerous ERISA cases like this one have been certified under Rule 23(b)(2) without affording an opt-out right. See, e.g., In re Global Crossing Secs. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y.2004); In re McKesson HBOC, Inc. ERISA Litig., 391 F.Supp.2d 844, 847-48 (N.D.Cal.2005); Amara v. CIGNA Corp., 559 F.Supp.2d 192, 200 (D.Conn.2008). Therefore, the Court finds that proceeding under Rules 23(a) and 23(b)(2) is perfectly appropriate in this case.

**B. Fairness of Class Action Settlement**

Under Federal Rule of Civil Procedure 23(e), any proposed class action settlement must be approved by the district court, and reasonable notice must be provided to all class members who may be bound by such settlement. SeeFed.R.Civ.P. 23(e). Even where the requirements for certification under Rule 23 have been met, approval is warranted only if the Court also determines that the proposal is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2). Under this rule, the court acts as a fiduciary who serves as a guardian of the rights of absent class members. See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir.1995). In doing so, the court must "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished."Id. (quotation omitted). This determination is ultimately left to the sound discretion of the district court. See Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir.1975).

**\*6** The Third Circuit has identified nine factors that a district court should consider in determining the fairness of a proposed class action settlement.[FN4] These include: (1) the "complexity,

expense and likely duration of the litigation;" (2) "the reaction of the class to the settlement"; (3) "the stage of the proceedings and the amount of discovery completed"; (4) "the risks of establishing liability"; (5) "the risks of establishing damages"; (6) "the risks of maintaining the class action through the trial"; (7) "the ability of the defendants to withstand a greater judgment"; (8) "the range of reasonableness of the settlement fund in light of the best possible recovery"; and (9) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ..." *Girsh,* 521 F.2d at 156-157. In addition, the Third Circuit has directed district courts to apply an "initial presumption of fairness when reviewing a proposed settlement where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d at 535. The Court now turns to each of these factors.

> FN4. However, the *Girsh* factors do not provide an exhaustive list of factors to be considered. Instead, as recently articulated by the Third Circuit, "because of a 'sea-change in the nature of class actions' since *Girsh* was decided in 1975, district courts should also consider other potentially relevant and appropriate factors."*In re AT & T Corp.,* 455 F.3d 160, 165 (3d Cir.2006). These include:
>
> > [T]he maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison

between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.*

(i). *Complexity, Expense and Likely Duration of Litigation*

Courts have consistently held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a class action settlement. *See, e.g., Lake v. First Nationwide Bank,* 900 F.Supp. 726, 732 (E.D.Pa.1995); *Slade v. Shearson, Hammill & Co.,* 79 F.R.D. 309, 313 (S.D.N.Y.1978).

If this litigation were to continue, Plaintiffs' claims would require Plaintiffs to overcome considerable legal and factual challenges. Adding to such complexities is the fact that the MasterShare Plan and evidence related thereto is highly technical in nature. Indeed, the issues presented in this case are sufficiently complex that a layperson on a jury could have difficulty comprehending them. As a result, continued prosecution of this case both before and at trial would likely require the extensive involvement of experts on compensation plans, retirement plans and damages. The trial in this matter would likely last for weeks and result in substantial additional expenditures of time and expense. In addition, interlocutory and other appeals would inevitably follow, all of which would prolong the case for years. *See, e.g., Weiss v. Mercedes-Benz of North America, Inc.,* 899 F.Supp. 1297, 1301 (D.N.J.1995) ("Given the crowded state of this Court's calendars, the case would not be tried prior to 1997 [opinion dated May 11, 1995]. It is not un-

realistic to predict that, if fully litigated, the present class action would not be concluded before the end of this decade ....". The proposed Settlement, on the other hand, will provide the Class with immediate relief. Accordingly, this factor weighs in favor of the proposed Settlement.

(ii). *The Reaction of the Class to the Settlement*

**\*7** Out of a class comprised of hundreds of members, only two have objected to the proposed settlement. A small number of objections favors approval of a class action settlement agreement. *See, e.g., Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1314 (3d Cir.1993)* (noting that silence is a "tacit consent" to the agreement); *Stoetzner,* 897 F.2d at 119 (finding that objections by 29 members of a class comprised of 281 members "strongly favors settlement"). The low percentage of objections is evidence, in and of itself, that the Settlement should be approved because the class believes the settlement is fair. In any event, based on the reasons that follow, the objections of Russell Stabley and John J. Ryan are largely without merit.

*Objections*

As an initial matter, both objectors cite the fact that this was certified as a no opt-out class under Rule 23(b)(2) as a basis for their objections. As previously discussed, Federal Rule of Civil Procedure 23(b)(2) allows a court to certify a mandatory class, barring opt-outs, where the defendant has acted or refused to act in a way that is applicable to the class, making equitable and/or declaratory relief for the class as a whole appropriate. *See, e.g., Stoetzner,* 897 F.2d at 119; *In re Am. Family Enterprises,* 256 B.R. at 416. Rule 23(b)(2) certification was and is proper here because the basis for the suit is Wachovia's failure to return certain deferred compensation plan contributions-a practice applicable to all class members.

Russell Stabley also objects to the Settlement on the basis that: (1) it is unfair to him because he was

"separated from service" with Prudential Securities in 2003, and (2) he was "well above normal retirement age" at the time of his resignation. This Court has already rejected Mr. Stabley's first argument, namely that his MasterShare Plan benefits should have vested at the time when his employment with Prudential ceased. In particular, Judge Cavanaugh held that "plaintiffs' proposed amendment to add Count V, which seeks payment of plan benefits as a result of an 'actual termination' by Prudential is futile because an actual termination by Prudential would not have caused Plaintiffs' shares to vest-only a termination without cause by WPFA or its affiliates would have caused the shares to vest."*See* CM/ECF Docket Entry No. 28 at 21-22. Thus, while Mr. Stabley objects to the Settlement on the basis that class members should receive a higher percentage of their forfeited contributions because they were separated from service at the time they began working for Wachovia, this Court has already held that such a claim is futile.

With respect to Mr. Stabley's second argument, according to the MasterShare Plan, a person is not entitled to vesting of contributions through retirement, regardless of his or her age, if that person begins working for any other firm actively engaged in the financial services prior to completion of a Restricted Period. *See* CM/ECF Docket Entry No. 12-6, Ex. B. Mr. Stabley does not allege that he actually retired from the financial services industry after leaving Wachovia. In fact, FINRA public records reveal that upon resigning from Wachovia, Mr. Stabley began working as a registered broker for Janney Montgomery Scott, LLC and continues to be employed by that firm today. *See* Kaiser Decl., ¶ 2. Thus, Mr. Stabley is not entitled to the vesting of the MasterShare Plan benefits, irrespective of his age at the time he left Wachovia.

**\*8** John J. Ryan also objects to the Settlement on the following grounds: (1) he claims not to have received notice of the settlement, (2) he is a defendant in an arbitration initiated by Wachovia for collection on a promissory note and, therefore, should

Slip Copy, 2009 WL 900167 (D.N.J.)
**(Cite as: 2009 WL 900167 (D.N.J.))**

be entitled to resolve all disputes with Wachovia in those proceedings, and (3) the settlement value is too low because he has valuable counterclaims pending in arbitration.

As a preliminary matter, "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch TYCO Research Sec. Litig.,* 249 F.R.D. 124, 133 (S.D.N.Y.2008). Here, Class Counsel acted reasonably in implementing the notice regime, as detailed in the affidavit of the Claims Administrator attached to Plaintiffs' motion. Wachovia provided the names and addresses of all individuals identified in Wachovia's records as Class Members to the Claims Administrator. Thereafter, the Claims Administrator mailed the direct mail notices to each identified individual. Where notices were identified as undeliverable by the Postal Service, the Claims Administrator searched the United States Postal Service's National Change of Address database and re-sent notices for listed persons. Accordingly, the Claims Administrator used the best practicable method for providing notice. Whether or not Mr. Ryan received actual notice is not dispositive on this issue. *See, e.g .,* id.In any event, the address listed on his objection is the same address used by the Claims Administrator in disseminating the notice. *See* Kaiser Decl., ¶ 3.

With respect to Mr. Ryan's second argument regarding the implications of the arbitration proceedings initiated by Wachovia, to the extent Mr. Ryan suggests that Wachovia somehow waived its right to settle this class action by initiating an arbitration against Mr. Ryan, he cites to no legal authority-nor is the Court aware of any-which supports the proposition that a defendant in an arbitration has a right to have the arbitrator adjudicate every possible dispute the defendant might have with the party initiating the arbitration.

Finally, the counterclaims Mr. Ryan seeks to preserve have no merit. In particular, his claims for conversion and violation of New York Labor law were expressly rejected by this Court in its August 27, 2007 Opinion and Order. *See* CM/ECF Docket Entry No. 28 at 26-28; 31-32. Additionally, although the named Plaintiffs here did not assert the other counterclaim raised by Mr. Ryan, that is, the violation of the covenant of good faith and fair dealing, this Court's August 27, 2007 Opinion is fatal to this claim. In particular, the Court held that an express contract between Wachovia and the Class members, namely the MasterShare Plan, governed the terms under which the MasterShare Plan contributions would be returned to participants. *See* CM/ECF Docket Entry No. 28 at 28. Because a court cannot simply imply a covenant inconsistent with terms expressly set forth in the contract, Mr. Ryan's violation of the covenant of good faith and fair dealing counterclaim is questionable and, therefore, does not weigh against the proposed Settlement. *See, e.g., Hartford Fire Ins. v. Federated Dept. Stores,* 723 F.Supp. 976, 991 (S.D.N.Y.1989).

(iii). *The Stage of the Proceedings and Amount of Discovery Completed*

**\*9** This factor "captures the degree of case development that class counsel have accomplished prior to settlement." *In re General Motors,* 55 F.3d at 813. "Through this lens," the Third Circuit has explained, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."*Id.; see also Lazy Oil Co. v. Witco Corp.,* 166 F.3d 581, 588 (3d Cir.1999) ("Post-discovery settlements are more likely to reflect the true value of the claim and be fair.") (citation omitted).

This matter has been pending before the Court for nearly three years. During this time period, numerous exhaustive conferences were held before this Court. Class Counsel conducted discovery and pushed this case forward in a manner favorable to the Class. Armed with such discovery and due dili-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

gence, Class Counsel has demonstrated an adequate appreciation of the merits of this case in arriving at the proposed Settlement. Therefore, the Court finds that this factor also weighs in favor of the proposed Settlement.

(iv). *The Risks of Establishing Liability and Damages*

In assessing the fairness, reasonableness and adequacy of the settlement, the Court must balance the risks of establishing liability and damages against the certainty of obtaining immediate and substantial recovery through the proposed Settlement. *See, e.g., Girsh,* 521 F.2d at 157; *see generally Weiss,* 899 F.Supp. at 1301 (noting that "the risks surrounding a trial on the merits are always considerable.").

Here, the risks that Plaintiffs face in establishing liability clearly demonstrate that the proposed Settlement provides the Class with a substantial benefit that is not only fair, reasonable and adequate, but an excellent result. First, it is uncertain that a court would find that the MasterShare Plan was a retirement plan protected by ERISA. Indeed, to date, at least one court has held that the MasterShare Plan was a retention plan, not an ERISA-protected retirement plan. *See, e.g.,* D.N.J. Civil Action No. 01-4940, Docket Entry Nos. 35, 35.Second, without a viable constructive discharge claim, the Class Members' entitlement to a return of their unvested contributions is questionable. Third, Plaintiffs represent that many of the Class Members are high-income individuals in the financial services sector for whom a jury may have little sympathy given the current economic crisis facing our country. Therefore, Plaintiffs could face the prospect that a jury would not sympathize with their case and thus either find no liability or severely limit any damages awarded to the Class. In addition, the trial of this case would surely require the extensive involvement of experts on ERISA, compensation and damages. The acceptance of expert testimony by a jury is always far from certain. Further, divergent

expert testimony leads inevitably to a "battle of the experts." *See generally Rubenstein v. Republic. Nat'l Life Ins. Co.,* 74 F.R.D. 337, 345 (N.D.Tex.1976). Finally, even if the Class were to succeed at trial, Defendant would almost certainly appeal and continue to mount a zealous defense to the Class's claims. Accordingly, the significant risks and costs, when compared with the immediate benefits provided by the Settlement, favor approval of the Settlement.

(v). *The Risks of Maintaining the Class Action Through Trial*

**\*10** Although the Court has preliminary found certification of the Class to be appropriate, there remains a risk that the Court would not find this action suitable for certification as a litigated class. Even if class certification were granted in the litigation context, class certification can always be reviewed or modified at any time before trial. *See, e.g., Prudential,* 148 F.3d at 321 ("There will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement."). Accordingly, this factor weighs in favor of settlement.

(vi). *Defendant's Ability to Withstand a Greater Judgment and Reasonableness of Settlement in Light of Best Possible Recovery and All Attendant Risks of Litigation*

The last three *Girsh* factors are the reasonableness of the settlement in light of: (a) Defendant's ability to withstand a greater judgment, (b) the best possible recovery, and (c) all the attendant risks of litigation. The Court finds that each of these factors also supports approval of this Settlement and its significant financial and structural benefits. Although the Court has no reason to believe that Defendant could not withstand a judgment higher than the Settlement amount, the Third Circuit has noted that this factor alone does not weigh against settlement approval. *See, e.g., In re Warfarin Sodium An-*

*titrust Litig.*, 391 F.3d at 538. Additionally, the relief provided to the Class presents a significant achievement given the significant risks to the Class if the case were to proceed to trial, as discussed above. In light of such risks, there is a strong indication that the Settlement represents the best possible recovery for the Class. Therefore, the *Girsh* factors militate strongly in favor of approving the proposed Settlement.

In light of the foregoing, it is clear that the proposed Settlement was reached after arms-length negotiations between experienced and capable counsel, and after significant discovery. *See generally In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535. The reaction of the Class has been overwhelmingly favorable. None of the *Girsh* factors weigh against settlement. Accordingly, the Court concludes that the settlement of $1,005,000.00 represents a reasonable and adequate result for the Class.

**C. Fairness of Class Counsel's Attorneys' Fees**

Finally, Class Counsel seek an award of attorneys' fees and reimbursement of actual out-of-pocket expenses in the amount of up to $336,000.00. This amount represents 32% of the settlement amount.[FN5] *See generally In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir.2001) ("In common fund cases the fees paid to class counsel come directly out of the recovery of the class, as opposed to statutory fee-shifting cases where the plaintiffs' recovery and counsel's fees are distinct."). As a preliminary matter, the Court notes that it has received no objections from the Class on the issue of the proposed fee. *See, e.g., Lenahan v. Sears, Roebuck and Co.*, 2006 WL 2085282, at * 19 (D.N.J. July 24, 2006) ("The lack of significant objections from the Class supports the reasonableness of the fee request.").

> FN5. Class Counsel requests $300,000.00 in attorneys' fees. This amount represents 28% of the settlement amount. Class Counsel requests an additional $36,000.00 in

out-of-pocket expenses. This brings the total amount requested to 32% of the common fund. *See* Tr. (March 3, 2009) at 8:2-12.

**\*11** Under the percentage-of-recovery approach, the Court must determine whether the percentage of total recovery that the proposal would allocate to attorneys fees is reasonable based on the circumstances of the case. *See, e. g., Cendant Corp. Litig.*, 264 F.3d at 256. In assessing the reasonableness of the fee award, the Court should primarily be guided by the following seven factors:

(1) the size of the fund created and the number of persons benefitted;

(2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;

(3) the skill and efficiency of the attorneys involved;

(4) the complexity and duration of the litigation;

(5) the risk of nonpayment;

(6) the amount of time devoted to the case by plaintiffs' counsel; and2

(7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000). Based on the reasons that follow, application of the *Gunter* factors fully supports the fees requested in this matter.

First, counsel has achieved a substantial recovery in the face of significant legal and factual obstacles. Hundreds of people who participated in the Plans, who, in most instances, never expected to recover any portion of their contributions, will be benefited by this Settlement.

In addition, the Notice of the Proposed Settlement sent to the Class Members specifically provided that Class Counsel would apply for an award of at-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

torneys' fees of 33% of the Settlement. *See* Notice, ¶ 12. The Notice further advised Class Members that they could object to the Settlement and explained the procedure for doing so. To date, there have been no objections to the fee request.

Third, Class Counsel's success in bringing this litigation to a successful conclusion is perhaps the best indicator of the experience and ability of the attorneys involved. *See, e.g., Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 548 (S.D.Fla.1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). It is clear, as demonstrated by the accompanying affidavits, that Class Counsel practices extensively in the highly complex field of class action litigation. It is also clear, based on the Court's own experience in managing this litigation, that Class Counsel has spent a considerable amount of time and resources in developing the background necessary to truly assess the strengths and weaknesses of Plaintiffs' case. By doing so, Class Counsel not only significantly benefited the Class, but also undertook a substantial risk that the litigation would yield no or very little recovery and leave them uncompensated for their time, as well as for their substantial out-of-pocket expenses. "Counsel's contingent fee risk is an important factor in determining the fee award." *In re Prudential-Bache Energy Income P'ships Sec. Litig.,* No. 888, 1994 WL 202394, at *6 (E.D.La. May 18, 1994). Class Counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise in numerous class actions. The risk of nonpayment to Class Counsel, therefore, was great and clearly weighs in favor of the requested fee.

*12 The requested fee is consistent with awards in similar cases. Although there is no general rule, at least one court in this Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 822 (3d Cir.1995) ("In common fund cases, a district judge can award attorneys' fees as a per-

centage of the fund recovered. One court has noted that the fee awards have ranged from nineteen percent to forty-five percent of the settlement fund.") (internal citations omitted). The fee requested in this case-which amounts to 32% of the settlement fund-falls within this range and is entirely consistent with fee awards for similar cases in this Circuit. *See, e.g., Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 150 (E.D.Pa.2000) ( "Therefore, I conclude that an award of one-third of the settlement fund is reasonable in consideration of other courts' awards."); *In re Valuevision Intern. Inc. Sec. Litig.,* 957 F.Supp. 699, 700 (E.D.Pa.1997) ("I am approving a fee award of approximately 34.27% of the net fund-a percentage which, in the circumstances of this case, does not seem exorbitant.").

Finally, the fee request is also supported by the Loadestar method. *See, e. g., In re Cendant Corp. Litig.,* 264 F.3d at 256 (recommending that district courts consider, in addition to the percentage-of-recovery approach, "a lodestar 'cross-check' "). Plaintiffs' counsel lodestar is $1,223,071.75. As reflected in the Cecchi Declaration, the hours recorded were incurred on the time spent investigating Plaintiffs' claims, preparing and filing the Complaint, briefing various motions, preparing for and attending various court conferences and arguments, document review and depositions, working with experts, and negotiating and finalizing the settlement. Plaintiffs' Counsels' rates vary appropriately between attorneys and paralegals, depending on the position, experience level and locale of the particular attorney. Given the effort expended and the complexity of the legal and factual issues involved in this case, the hours incurred are entirely reasonable. The lodestar crosscheck, therefore, supports Class Counsels' fee request.

The Court likewise finds that Plaintiffs' Counsels' request for reimbursement of $35,265.12 in actual out-of-pocket litigation expenses is appropriate given that such expenses have been adequately documented and are reasonable based on the circumstances of this case. *See generally In re Safety*

*Components, Inc. Sec. Litig.,* 166 F.Supp.2d 72, 108 (D.N.J.2001) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.") (citing *Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1225 (3d Cir.1995)).

### CONCLUSION

Based on the reasons set forth above, the Court: (a) certifies the proposed Class for purposes of this settlement; (b) approves the Settlement Agreement; and (c) awards Class Counsel the attorneys' fees and costs requested. An appropriate Order accompanies this Opinion.

D.N.J.,2009.
Serio v. Wachovia Securities, LLC
Slip Copy, 2009 WL 900167 (D.N.J.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**TAB E**

Not Reported in F.Supp.                                                                                               Page 1

Not Reported in F.Supp., 1989 WL 131274 (D.Or.), 1989-2 Trade Cases P 68,857

**(Cite as: 1989 WL 131274 (D.Or.))**

H

United States District Court, D. Oregon.
Elsie Viola MILLER and Oretta Bernice Lancaster,
dba the Junction Cafe and Tavern; Taylor's Coffee
Shop, Inc., dba Rennie's Landing; and Wian, Inc.,
dba Barney's Cable, individually and as representat-
ives of others similarly situated, Plaintiffs,
v.
William H. HEDLUND, Sylvia S. Bedingfield, Re-
uben Worster, Stan Auderkirk and Jill Thorne, indi-
vidually in their representative capacities as the
Commissioners of the Oregon Liquor Control Com-
mission; C. Dean Smith, individually in his capa-
city as Administrator for the Oregon Liquor Control
Commission; Spear Beverage Co., Inc., and Coast
Distributors, Inc., individually and as representat-
ives of others similarly situated, Defendants.
**CIV. No. 78-259-FR.**

Oct. 12, 1989.

David W. Axelrod, Schwabe, Williamson & Wyatt,
Portland, Or., for plaintiffs.

Dave Frohnmayer, Attorney General, Luther L.
Jensen, Assistant Attorney General, Salem, Or., for
defendants.

OPINION

FRYE, District Judge:

**\*1** The matter before the court is plaintiffs' petition
for attorney fees and litigation expenses pursuant to
section 16 of the Clayton Act, 15 U.S.C. § 26.
Plaintiffs request a base fee award of $290,449.00,
enhanced by a factor of "3," for a total of
$871,347.00.

Defendants contend that plaintiffs are not entitled
to an award of attorney fees, and that if attorney
fees are awarded, the amount requested is inappro-

priate.

1. *Entitlement*

Section 16 of the Clayton Act, 15 U.S.C. § 26,
provides:

Any person ... shall be entitled to sue for and have
injunctive relief ... against threatened loss or dam-
age by a violation of the antitrust laws.... In any ac-
tion under this section in which the plaintiff sub-
stantially prevails, the court shall award the cost of
suit, including a reasonable attorney's fee, to such
plaintiff.

Plaintiffs prevailed on virtually every substantive
issue litigated by the defendants. Plaintiffs do not
seek attorney fees for the only issue upon which
they did not prevail (whether damages can be re-
covered from private defendants for conduct re-
quired by administrative regulation).

Defendants argue that section 16 of the Clayton Act
does not require an award of attorney fees and costs
because no state can violate the provisions of the
Sherman Act. Defendants explain that the issue in
this case involves an issue of preemption and not a
claim of violation of the Sherman Act by the State
of Oregon.

The fee shifting provision in section 16 of the
Clayton Act is intended to insure that citizens are
reimbursed for "what it costs them to vindicate
their rights in court." *Va. Academy of Clinical Psy-
chologists v. Blue Shield of Va.,* 543 F.Supp. 126,
132 (E.D.Va.1982). The House Report states:

Indeed, the need for the awarding of attorneys' fees
in § 16 injunction cases is greater than the need in §
4 treble damage cases. In damage cases, a prevail-
ing plaintiff recovers compensation, at least. In in-
junction cases, however, without the shifting of at-
torneys' fees, a plaintiff with a deserving case
would personally have to pay the very high price of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1989 WL 131274 (D.Or.), 1989-2 Trade Cases P 68,857
**(Cite as: 1989 WL 131274 (D.Or.))**

obtaining judicial enforcement of the law and of the important national policies the antitrust laws reflect. A prevailing plaintiff should not have to bear such an expense. Section 3(3) ... is intended to reiterate congressional encouragement for private parties to bring and maintain meritorious antitrust injunction cases.

1976 U.S.C.A. & A.N., p. 2572.

Plaintiffs sought relief from regulations of the State of Oregon alleging that the regulations violated the Sherman Act. The opinion of the Ninth Circuit in *Miller v. Hedlund,* 813 F.2d 1344 (9th Cir.1987), states that the regulations at issue constitute a violation of the Sherman Act. The Ninth Circuit stated that "[h]aving concluded that the Oregon regulations violate Section 1 of the Sherman Act, a decision must be made as to whether Oregon's involvement in the regulatory scheme is sufficient to establish antitrust immunity." 813 F.2d at 1351.

**\*2** While a preemption issue was litigated and resolved, it was only necessary to reach this issue because the regulations of the State of Oregon violated the Sherman Act. Section 16 of the Clayton Act provides that plaintiffs are entitled to collect fees and costs in an action in which they have substantially prevailed in receiving injunctive relief for a violation of the antitrust laws. There is no basis for denying fees and costs to a plaintiff who has substantially prevailed in receiving injunctive relief for a violation of the antitrust laws on the basis that the violator is a state. The court concludes that plaintiffs are entitled to collect "cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 26.

### 2. Amount of Cost of Suit and Attorney Fees

Defendants argue that plaintiffs Elsie Miller, Oretta Lancaster and Wian, Inc. are not prevailing parties; that fees should be adjusted downward and not enhanced; and that plaintiffs are not entitled to recover fees for expert witnesses.

*(a) Miller, Lancaster and Wian, Inc.:*

This action was commenced in 1978 by the Millers. In 1983, the current plaintiff, Rennie's Landing, joined the action. The Millers continued as plaintiffs through eleven years of litigation and until June, 1989 when the court granted a *post-trial* motion to dismiss on the grounds that the Millers' tavern was no longer in business. The history of the litigation up until the dismissal of the Millers is lengthy and predominantly successful for the plaintiffs. The Millers, as plaintiffs, were successful through several appeals and throughout numerous court proceedings.

The test of a prevailing party under section 16 is that "there must ... be a causal relationship between the litigation brought and the practical outcome realized. *Southwest Marine, Inc. v. Campbell Indus.,* 732 F.2d 744, 747 (9th Cir.), *cert. denied,* 469 U.S. 1072 (1984). The court finds that the Millers and Rennie's Landing are "substantially prevailing" parties entitled to recover the costs of this action from its initiation.

*(b) Amount of Fees:*

A lodestar fee is determined by multiplying the attorney hours reasonably expended by an appropriate hourly rate charged for the type of services rendered. The factors considered to determine the lodestar figure include 1) the novelty and difficulty of this issues; 2) the time required; 3) whether acceptance of the case required counsel to decline other representations; 4) the result; 5) the complexity of the work; (6) counsel's ability and efficiency; 7) the prevailing fee in the community; and 8) awards in similar cases, among other things. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951 (1976).

The lodestar amount requested by plaintiffs, in the sum of $290,499.00, represents the number of hours expended on the litigation multiplied by an hourly rate. The court finds that the hours claimed by plaintiffs are adequately documented, and the hourly fee requested is reasonable.

Not Reported in F.Supp.
Not Reported in F.Supp., 1989 WL 131274 (D.Or.), 1989-2 Trade Cases P 68,857
**(Cite as: 1989 WL 131274 (D.Or.))**

Page 3

**\*3** (c) *Enhancement:*

Plaintiffs assert that the factors noted in determining the reasonableness of the requested base fee argue in favor of the full fee together with an enhancement. Plaintiffs assert that an enhancement of "3" is appropriate to reach a reasonable fee.

In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* ---U.S. ----, 107 S.Ct. 3078 (1987), the court explained:

Indeed, it may well be that using a contingency enhancement is superfluous and unnecessary under the lodestar approach to setting a fee. The reasons a particular lawsuit are considered to be "risky" for an attorney are because of the novelty and difficulty of the issues presented, and because of the potential for protracted litigation. Moreover, when an attorney ultimately prevails in such a lawsuit, this success will be primarily attributable to his legal skills and experience, and to the hours of hard work he devoted to the case. These factors, however, are considered by the court in determining the reasonable number of hours expended and the reasonable hourly rate for the lodestar, and any further increase in this sum based on the risk of not prevailing would result not in a "reasonable" attorney's fee, but in a windfall for an attorney who prevailed in a difficult case.

... [P]ayment for the time and effort involved-the lodestar-is presumed to be the reasonable fee authorized by the statute, and enhancement for the risk of nonpayment should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record and specific findings by the courts.

107 S.Ct. 3087-88.

This litigation has been protracted and the legal issues difficult. Counsel is very able and very professional, and he has achieved a significant result for his clients. All of these factors are reflected in the lodestar amount of $290,499.00. This amount represents a reasonable fee as contemplated by section 16. The court finds no need or justification for enhancement beyond reasonable compensation.

(d) *Expert Witness Fees:*

Plaintiffs seek an award of $35,177.00 in litigation expenses, including expert witness fees. The parties agree that the United States Supreme Court and the Ninth Circuit have not decided whether or not expert witness fees are recoverable under fee shifting statutes. The federal circuits are divided on the question. Defendants point to *Kraus v. Sante Fe Southern Pacific Corp.,* No. 86-361-MA (D.Or. Nov. 10, 1987), in which the Honorable Malcolm F. Marsh, United States District Judge, found that costs are limited to those set forth in 28 U.S.C. § 1920. The taxation of costs under section 1920 is specifically limited to five categories of costs, none of which include expert witness fees.

Section 16 states that a plaintiff substantially prevailing is entitled to "the cost of suit, including a reasonable attorney's fee." In *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* --- U.S. ----, 107 S.Ct. 2494 (1987), the Court disallowed expert witness fees on the grounds that "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witnesses as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." 107 S.Ct. at 2499. The court finds that section 16 does not explicitly provide for the taxation of the expenses of witnesses as costs and that the costs of suit are limited by 28 U.S.C. § 1920. Expert witness fees are therefore not allowed.

CONCLUSION

**\*4** Plaintiffs are awarded attorney fees in the amount of $290,499.00.

ORDER

Not Reported in F.Supp.
Not Reported in F.Supp., 1989 WL 131274 (D.Or.), 1989-2 Trade Cases P 68,857
**(Cite as: 1989 WL 131274 (D.Or.))**

IT IS HEREBY ORDERED that plaintiffs are awarded attorney fees in the amount of $290,499.00.

D.Or.,1989.
Miller v. Hedlund
Not Reported in F.Supp., 1989 WL 131274 (D.Or.),
1989-2 Trade Cases P 68,857

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**TAB F**

Slip Copy                                                                                                  Page 1
Slip Copy, 2009 WL 874046 (S.D.N.Y.)
(Cite as: 2009 WL 874046 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Albert T. BEANE, Jr., individually and on behalf of
all others similarly situated, Plaintiffs,
v.
The BANK OF NEW YORK MELLON, Bny Con-
vergex Execution Solutions LLC, and Callan Asso-
ciates, Inc., Defendants.
No. 07 Civ. 09444(RMB).

March 31, 2009.

**ORDER**

RICHARD M. BERMAN, District Judge.

**I. Introduction**

**\*1** This class action was initiated on October 27,
2007 by Albert T. Beane, Jr. ("Beane") on behalf of
the Federal-Mogul Corporation Pension Plan
("Pension Plan"), and on behalf of a putative class
of similarly situated pension plans (together with
the Pension Plan, "Plaintiffs") pursuant to Sections
502(a)(2) and 502(a)(3) of the Employment Retire-
ment Security Act of 1974 ("ERISA"), as amended,
29 U.S.C. §§ 1132(a)(2), and 1132(a)(3), against
The Bank of New York Mellon ("BNY"), BNY
Convergex Execution Solutions LLC ("BNYB")
(together, "BNY Defendants"), and Callan Asso-
ciates, Inc. ("Callan") (collectively with the BNY
Defendants, "Defendants") for violations of ERISA
Sections 404, 405, and 406, as amended, 29 U.S.C.
§§ 1104, 1105, and 1106. (First Am. Class Action
Compl. dated May 9, 2008 ("Am.Compl."), at ¶¶
10-12, 18-20.) Plaintiffs alleged that Callan
breached its fiduciary duties to Plaintiffs because
"Callan concealed the true nature of its commis-
sion-sharing arrangement with BNY Defendants by
making inaccurate and misleading statements in its

public disclosures"; and "BNY Defendants know-
ingly aided and abetted Callan's efforts to conceal
the commission-sharing arrangement from Callan
pension plan clients."(Am.Compl.¶¶ 33, 56, 57.)

Plaintiffs state, among other things, that prior to
reaching a settlement "the parties [ ] engaged in ex-
tensive discovery"; "[e]ach side [ ] served and re-
sponded to numerous interrogatories, requests for
production and requests for admission"; "[t]he
parties [ ] exchanged over 60,000 pages of docu-
ments and [conducted] the depositions of six of
Callan's officers and directors"; and Plaintiffs
"conducted a 30(b)(6) deposition of Callan
itself."(See Mem. in Supp. of Pl.'s Mot. for Final
Approval of Settlement and Certification of Settle-
ment Class, dated Dec. 11, 2008 ("Settlement
Mem."), at 5; (Mem. in Supp. of Class Counsel's
Pet. for an Award of Attorneys' Fees, Reimburse-
ment of Costs and Expenses, and Case Contribution
Compensation for Class Representative Albert T.
Beane Jr., dated Dec. 11, 2008 ("Fees Mem.") at 5.)
At the time of the settlement in principle, Defend-
ants' motion to dismiss "as well as Plaintiff's mo-
tion for class certification were [fully briefed and]
pending."(Id.)

On or about September 15, 2008, the parties
entered into a Stipulation and Agreement of Settle-
ment ("Settlement"), and established a $2,200,000
settlement fund ("Settlement Fund"). On or about
October 24, 2008, the Court entered an Order grant-
ing preliminary approval of the Settlement
("Preliminary Approval Order").

The Settlement provides, among other things, the
following:

•The "Class" shall be defined as "ERISA pension
plans who retained Callan Associates, Inc.
('Callan') for pension consulting services and
who used BNY ConvergEx Solutions LLC
('BNY Brokerage'), directly or indirectly, for
brokerage services from October 30, 1998

through January 9, 2007 (the 'Class Period')." (Preliminary Approval Order at 1.)

**\*2** •"Defendants have concluded that further conduct of the litigation would be protracted and expensive, and have also taken into account the uncertainty and risks inherent in any litigation ... [and] therefore, determined that it is desirable and beneficial to each Defendant that the litigation be settled ...." (Settlement at 3.) And, "Counsel for the Plaintiff also are mindful of the inherent problems proving, and possible defenses to, the [ERISA] violations asserted in the litigation." (Settlement at 4.)

• The "Defendants will cause to be deposited two million two hundred thousand dollars ($2.2 million) ... in an interest-bearing escrow account maintained by Gilardi & Co. LLC ... and [upon] a Final Judgment approving the settlement, the Settlement Funds shall be released to the Plans."(Settlement § 2.1.)

•"Defendants shall not oppose or take any position on [Class Counsel's] petition for fees and expenses, provided that [Class Counsel] seeks no more than 30 percent of the Settlement Fund."(Settlement § 2.16.) And, "Defendants shall not oppose an incentive payment of $5,000 to the named representative plaintiff, Albert T. Beane, Jr. to be paid from the Settlement Fund."(Settlement § 2.13.)

•"Nothing in this Settlement Agreement shall be considered to be an admission or evidence of liability by any Defendant."(Settlement § 2.4.)

Pursuant to the Preliminary Approval Order, McTigue & Porter LLP ("Class Counsel") "posted the Settlement Agreement and [its] exhibits ... on the website identified in the Class Notice and caused the court-approved Class Notice to be mailed to appropriate representatives of each [of the 78 ERISA] plan[s] that [are] class member[s] ['Class Members']." (*See* Settlement Mem. at 2.) On December 11, 2008, Plaintiffs submitted a memorandum of

law in support of final approval of the Settlement and for certification of the settlement class. (*See* Settlement Mem.) On the same date, Class Counsel petitioned ("Fee Petition") the Court for an award of attorneys' fees, and reimbursement of costs and expenses in the amount of 28.5% of the Settlement Fund or $627,000, plus $37,914.60 in litigation expenses. (*See* Fees Mem. at 2.) Class Counsel also petitioned the Court for a $5,000 award to class representative Beane ("Incentive Payment").[FN1] (*Id.*) As of January 2, 2009, "Class Counsel [has] received no objection to the Settlement Agreement, the Plan of Allocation or the Petition for Award of Attorneys' Fees and Expenses."(Decl. of Gregory Y. Porter Regarding Compliance with Mailing and Publication Requirements of Order Preliminarily Approving Class Action Settlement, dated Jan. 2, 2009 ("Porter Decl."), at ¶ 7.)

> FN1. Defendants have not opposed Plaintiffs' motion for final approval of the Settlement or Class Counsel's Fee Petition.

On or about January 5, 2009, the Court held a "fairness" hearing pursuant to Fed.R.Civ.P. 23(e)(2). (*See* Tr. of Proceedings, dated Jan. 5, 2009 ("Fairness Tr.").) No person present opposed the proposed Settlement or the Fee Petition. (*See* Fairness Tr.) The Court heard from Class Counsel who spoke in favor of the Settlement and its application for attorneys' fees, and from Defendants' counsel who also spoke in favor of the Settlement. (*Id.*)

**\*3 For the reasons set forth below, the Settlement is approved and the Fee Petition is granted in part and denied in part.**

**II. Legal Standard**

The Court "determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms," in light of "the judicial policy favor[ing] the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

settlement of class actions."*Gilliam v. Addicts Rehab. Ctr. Fund.,* No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *9 (S.D.N.Y. Mar. 24, 2008). Courts must ensure: (1) that the settlement was the product of arm's length negotiations; and (2) that class counsel " 'possessed the experience and ability, and ... engaged in the discovery, necessary to effective[ly] represent [ ] ... the class's interests.' " *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir.2001) (quoting *Weinberger v. Kendrick,* 698 F.2d 61, 74 (2d Cir.1982); *see also Taft v. Ackermans,* No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *14 (S.D.N.Y. Jan. 31, 2007). The Court also determines whether the settlement is fair, adequate and reasonable by considering the (nine) factors enumerated initially in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir.2000):

(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re AOL Time Warner ERISA Litig.,* No. 02 Civ. 8853, 2006 U.S. Dist. LEXIS 70474, at *8 (S.D.N.Y. Sept. 27, 2006) (citations omitted).

A party seeking attorneys' fees bears the "burden of 'establishing entitlement to an award ....' " *Cruz v. Local Union No. 3 of the IBEW,* 34 F.3d 1148, 1160 (2d Cir.1994) (citation omitted). Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger v. Integ-*

*rated Resources, Inc .,* 209 F.3d at 47;*see also Banyai v. Mazur,* No. 00 Civ. 9806, 2008 U.S. Dist. LEXIS 99850, at *7 (S.D.N.Y. Dec. 2, 2008). Under the percentage method of awarding legal fees, the "court sets some percentage of the recovery as a fee," but "look[s] to the same 'less objective' factors that are used to determine the multiplier for the lodestar." *In re Polaroid ERISA Litig.,* No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983, at *6 (S.D.N.Y. July 19, 2007); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 123 (2d Cir.2005). "[N]o matter which method is chosen ... district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.' " *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 466 (S.D.N.Y.2004) (quoting *Goldberger,* 209 F.3d at 50).

## IV. Analysis

### *Settlement*

**\*4** The Settlement is approved as fair, reasonable, and adequate to the Class for the following reasons:

(1) The Settlement was the product of "negotiations, [that] once started, were conducted at arm's length" between experienced counsel. (Settlement Mem. at 8); *see also States of N.Y. and Md. v. Nintendo of America, Inc.,* 775 F.Supp. 676, 680-81 (S.D.N.Y.1991). And, experienced Class Counsel "engaged in sufficient investigation and discussions about the merits of the action to evaluate fully the merits of the claims and the obstacles to success ."*In re EVCI Career Colleges Holding Corp. Sec. Litig.,* No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *18-19 (S.D.N.Y. July 27, 2007). The Settlement is thus "entitled to a strong initial presumption of fairness." *In re Global Cross-*

Slip Copy
Slip Copy, 2009 WL 874046 (S.D.N.Y.)
**(Cite as: 2009 WL 874046 (S.D.N.Y.))**

*ing Sec. & ERISA Litig.,* 225 F.R.D. at 461;*see also Wal-Mart Stores,* 396 F.3d at 116.

(2) The *Grinnell* factors favor approval of the Settlement. The first *Grinnell* factor-the "complexity, expense and likely duration of the litigation"-supports the Settlement because, among other reasons, significant additional time, effort, and expense would be incurred to complete discovery, pre-trial motions, trial, post-trial motions, and to pursue likely appeals. (Settlement Mem. at 3); *see In re Vecco Instruments Sec. Litig.,* No. 05 MDL 1695, 2007 U.S. Dist. LEXIS 85629, at *21 (S.D.N.Y. Nov. 7, 2007) (describing risks and expense of trial and likely appeals).

The second *Grinnell* factor-"reaction of the class to the settlement"-favors approval of the Settlement because no Class Member objected to the Settlement. (Porter Decl. ¶ 7); *see D'Amato,* 236 F.3d at 86-87;*In re AOL Time Warner ERISA Litig.,* 2006 U.S. Dist. LEXIS 70474, at *20 ("the lack of objections may well evidence the fairness of the Settlement").

The third *Grinnell* factor-"the stage of the proceedings and the amount of discovery completed"-weighs in favor of approving the Settlement because "the parties had already engaged in significant amounts of discovery (including the production of over 60,000 pages of documents),""the depositions of six of Callan's officers and directors," and "Class Counsel had already consulted experts regarding damages and matters of proof," (Settlement Mem. at 5, 8, 10), which provided the parties with "sufficient information to make an informed judgment on the reasonableness of the settlement proposal,"*Diamond v. Fogelman,* No. 90 Civ. 900, 1992 U.S. Dist. LEXIS 9734, at *9 (E.D.N.Y. June 26, 1992).

The fourth through seventh *Grinnell* factors-namely, the risks faced by the Class in establishing liability and damages, maintaining the class action, and collecting on any judgment-all support settlement. Plaintiffs recognize that they faced litigation

risks because, among other things, "experts advised that it would be very difficult, costly, and time-consuming to prove that BNYB engaged in less than best execution for the Class Members because it would require extensive expert analysis of thousands of trades conducted over an eight-year time span" and "the problem of establishing damages, and the complexity of proving their existence, presented significant risk to the successful prosecution of this case through trial"; and "Defendants likely could withstand a greater judgment, but [there was] risk of an adverse judgment."(Settlement Mem. at 10); *see also Gilliam,* 2008 U.S. Dist. LEXIS 23016, at *12-13.

**\*5** The eighth and ninth *Grinnell* factors-"the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation"-also support settlement. *Grinnell,* 495 F.2d at 455. Plaintiffs state, among other things, that "the 'contingent' payment identified in the [Securities and Exchange Commission's ('SEC') cease and desist order, entered in or about September 2007] amounts to four million dollars"; "the proposed settlement amount recovers more than half of that sum"; and "Plaintiffs would face considerable difficulty and expense in attempting to prove additional damages."[FN2](Settlement Mem. at 10.) "The Settlement [ ] in this matter represents a compromise between the strengths of Plaintiffs' case and the possible success of [Defendants'] defenses." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 185 (W.D.N.Y.2005).

> FN2."In September 2007, Callan entered into a cease and desist order ('C & D') with the SEC." (Settlement Mem. at 4.) The C & D states, among other things, that "[t]his matter concerns the incomplete disclosure of potential conflicts of interest by Callan Associates, a registered investment adviser and one of the nation's largest pension consultants.... Although Callan dis-

closed in its Form ADV Part II that it had a contractual relationship with BNY that required Callan to identify BNY as its preferred or exclusive broker, Callan failed to disclose that it was receiving annual payments that were contingent on Callan clients generating a certain level of commissions for BNY. The omission of this potential conflict caused Callan's public disclosures to be misleading."(Order Instituting Administrative and Cease-and-Desist Proceedings, dated Sept. 19, 2007, available at http:// sec.gov/litigation/admin/adminarchive/adm inarc2007.shtml.) "The 'payments that were contingent' were eight annual payments of $500,000, totaling $4 million."(Settlement Mem. at 4.)

### Class Certification

The Court provisionally certified the Class in the Preliminary Approval Order. (Prelim. Approval Order ¶ 3.)

"A class seeking to be certified for purposes of effectuating a settlement must satisfy the applicable requirements of Rules 23(a) and 23(b), *i.e.,* numerosity, commonality, typicality, adequacy of representation, predominance of common issues, and superiority."*In re Top Tankers,* No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, at *28 (S.D.N.Y. July 31, 2008) (citing *Amchem Products. Inc. v. Windsor,* 521 U.S. 591 (1997)). The Class satisfies Fed.R.Civ.P. 23(a). It is "impracticable" to join the 78 potential Class Members. *See Varljen v. H.J. Meyers & Co.,* No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205, at *2 (S.D.N.Y. Nov. 8, 2000). Plaintiffs allege questions of law and fact that are "common to the class," including whether "Callan failed to disclose that it was receiving annual payments [from BNYB] that were contingent on Callan clients generating a certain level of commissions for BNYB," whether Callan "breached its duty of loyalty to [Class Members] by putting its own and

BNY Defendants' commission-generating interests ahead of the interests of its clients," and whether "BNY Defendants breached their fiduciary and cofiduciary duties to [Class Members] by placing their commission-generating interests ahead of their pension plan clients."(Am.Compl.¶¶ 6, 7, 9).*See Marisol A. v. Guiliani,* 126 F.3d 372, 376 (2d Cir.1997) (commonality and typicality "tend to merge into one another"); *In re AOL Time Warner ERISA Litig.,* 2006 U.S. Dist. LEXIS 70474, at *8 ("ERISA breach of fiduciary duty actions regularly present common questions of law and fact."). And, as noted above, Class Counsel appears "qualified, experienced, and generally able to conduct the litigation." *Marisol A.,* 126 F.3d at 378.

The Court also finds that Fed.R.Civ.P. 23(b)(1)(B) is satisfied because "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."Fed.R.Civ.P. 23(b)(1)(B); *see also Amchem,* 521 U.S. at 623, 625; *In re Polaroid ERISA Litig.,* 240 F.R.D. 65, 78 (S.D.N.Y.2006) ("ERISA litigation of this nature presents a paradigmatic example of a Rule 23(b)(1) class."); *In re AOL Time Warner ERISA Litig.,* 2006 U.S. Dist. LEXIS 70474, at *12.

### Class Representative Incentive Payment

**\*6** Class Counsel seeks the approval of a $ 5,000 Incentive Payment to Beane as class representative, (Settlement Mem. at 4), arguing, among other things, that "such payments should be encouraged in ERISA class actions since enforcement of the ERISA laws by private litigants is expressly contemplated by the statute and is in the public interest"; and Beane "bore all the risk of serving as representative plaintiff."(Settlement Mem. at 16-17.)

The Court does not find that a payment to Beane who will receive the indirect benefit of a better fun-

ded Pension Plan-is either necessary or appropriate. *See, e.g., Silverberg v. People's Bank,* 23 Fed. Appx. 46, 48 (2d Cir.2001); *Brown v. Steinberg,* No. 84 Civ. 4654, 1990 U.S. Dist. LEXIS 13516, at *11 (S.D.N.Y. Oct. 12, 1990) ("the court perceives no circumstances warranting a special award" to class representatives) (quoting *Weseley v. Spear, Leeds & Kellogg,* 711 F.Supp. 713, 720 (E.D.N.Y.1989))."In calculating incentive payments, courts consider 'the existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (*e.g.,* factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim and of course, the ultimate recovery.' " *Frank,* 228 F.R.D. at 187 (quoting *Roberts v. Texaco, Inc.,* 979 F.Supp. 185, 200 (S.D.N.Y.1997)). Plaintiffs' application for an Incentive Payment does not demonstrate a "level of special circumstances warranting an incentive award." *Silverberg,* 23 Fed. Appx. at 48. There is "no indication that [Beane] assumed a risk or inconvenience not shared by the other class members which is of such magnitude to merit" an incentive award, *In re Laidlaw Sec. Litig.,* No. 91 Civ. 1829, 1992 U.S. Dist. LEXIS 13935, at *9 (E.D.Pa. Sept. 15, 1992), and Plaintiffs "do not provide specific evidence of [any] purported risk's magnitude," *In re AOL Time Warner ERISA Litig.,* No. 02 Civ. 8853, 2007 U.S. Dist. LEXIS 79545, at *14 (S.D.N.Y. Nov. 28, 2007). Based upon the attorney time sheets provided to the Court by Class Counsel, Beane appears to have worked with counsel for approximately 2.21 hours via "phone calls" regarding the matter. (*See* Ltr. from J. Brian McTigue to the Hon. Richard M. Berman, dated Feb. 11, 2009 ("McTigue Ltr."), at 2.) He "did not perform any extraordinary services to the class." *Weseley,* 711 F.Supp. at 720. Nor have Plaintiffs claimed that there is "the need to reimburse [Beane] for specific expenses," *Sheppard,* 2002 U.S. Dist. LEXIS 16314, at *19 n. 9, or that "any other burdens

[were] sustained by [Beane] in lending himself ... to the prosecution of the claim," *Frank,* 228 F.R.D. at 187.

### Attorneys' Fees and Costs

**\*7** Class Counsel argues, among other things, that they should receive $627,000 or 28.5% of the $2.2 million Settlement Fund plus $37,914.60 in costs and expenses because it "expended 1,879.81 hours of attorney time and 1,025.42 of paralegal and staff time" plus "24.7 hours" of liaison counsel time which were necessary to perform "the initial factual investigation," "brief[ ] a motion for class certification,""brief the opposition to Defendants' joint motion to dismiss," and "successfully negotiate[ ] the instant settlement"; and "Class Counsel has served without pay for its services during the pendency of this action" when "there was substantial risk of an unfavorable outcome."(Fees Mem. at 5, 8-10 .)

Employing the percentage method of fixing Class Counsel's compensation (while relying upon the lodestar method as a "cross-check"), the Court finds, for the reasons that follow, that 16% of the $2,200,000 Settlement Fund or $352,000 is a fair and reasonable fee under *Goldberger* and related cases.

The first *Goldberger* factor relates to "the time and labor expended by counsel."Because the Court is awarding fees on a percentage basis, the Court need not "exhaustively scrutinize" counsel's hourly submissions, *Goldberger,* 209 F.3d at 49-50, but "[e]ven in a cursory review of the time spent for specific tasks, this Court finds what appears to be [some] excessive hours spent and inappropriate staffing,"*In re KevSpan Corp. Sec. Litig.,* No. 01 Civ. 5852, 2005 U.S. Dist. LEXIS 29068, at *16 (E.D.N.Y. Aug. 25, 2005). The four senior attorneys on the case, whose hourly rates range from $425 to $640, billed a total of 1,580.26 hours or 82.9% of the total attorney time. (Decl. of J. Brian McTigue in Supp. of PL's Pet., dated Dec. 11, 2008 ("McTigue Decl."), at Ex. 2.) The two more junior

attorneys, whose hourly rates range from $200 to $325, billed a total of 324.25 hours, or 17% of the total attorney time.(*Id.*) The remaining 1,025.42 hours were charged by two paralegals and two document reviewers at $150 to $200 an hour. (*Id.*)"It appears that some of the work done by [ ] senior attorney[s] [i.e., 1,580.26 hours] could have been performed by a junior attorney" at a lower billing rate. *Rossa v. PI Mgmt. Assoc.,* No. 02 Civ. 1702, 2006 U.S. Dist. LEXIS 27127, at *11-12 (S.D.N.Y. May 5, 2006). Mr. McTigue and Mr. Porter (partners charging $500 an hour) billed for certain tasks that seemingly could have been performed by more junior attorneys or paralegals, including, among other things, "review document production"; "prepare class list for submission"; "research doc production"; and "research and draft opposition to motion to dismiss."(*See* McTigue Ltr. at Ex. A.) And, many of the paralegal time entries are too imprecise and vague for meaningful review, including, among other things, billings for "research"; "review and code documents"; "case administration"; and "Lextranet." (McTigue Ltr. at Ex. A.) *See Schruefer v. Winthorpe Grant, Inc.,* No. 99 Civ. 9365, 2003 U.S. Dist. LEXIS 11179, at *11 (S.D.N .Y. July 2, 2003) (reducing lodestar for imprecise and vague time entries such as "various phone conferences"; "review file"; "legal research"; and "case administration").

**\*8** As to the second and third *Goldberger* factors-"the magnitude and complexities of the litigation" and "the risk of [contingency] litigation"-the issues faced by Plaintiffs were not significantly different or greater than those faced by plaintiffs in other similar ERISA class action litigations. *See Taft v. Ackermans,* No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *29(S.D.N.Y. Jan. 31, 2007).

The fourth *Goldberger* factor-"the quality of representation"-was acceptable and expected. "Courts should not necessarily award an increased fee where counsel simply displays the general level of skill expected."*Ling v. Cantley & Sedacca, LLP,* No. 04 Civ. 4566, 2006 U.S. Dist. LEXIS 4711, at

*8 (S.D.N.Y. Feb. 8, 2006).

As to the fifth *Goldberger* factor-"the requested fee in relation to the settlement"-a fee of 16%, or $352,000, of the $2,200,000 Settlement Fund is reasonable and consistent with fees granted in other ERISA class actions. *See, e.g., In re AOL Time Warner ERISA Litig.,* 2007 U.S. Dist. LEXIS 79545, at *3 (awarding approximately 17.9% of a $100M settlement fund); *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. at 469 (awarding approximately 15% of a $78M settlement fund); *Banyai v. Mazur,* No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *18 (S.D.N.Y. Mar. 30, 2007) (awarding 8.45% of a $40M settlement); *see also In re NTL, Inc. Sec. Litig.,* No. 02 Civ. 3013, 2007 U.S. Dist. LEXIS 13661, at *30 (S.D.N.Y. Mar. 1, 2007) (Peck, M.J.), *adopted by, In re NTL, Inc. Sec. Litig.,* No. 02 Civ. 3013, 2007 U.S. Dist. LEXIS 32285 (S.D.N.Y. May 1, 2008) (awarding 15% of a $9M settlement fund).

As to the sixth *Goldberger* factor-"public policy considerations"-a fee award of 16% balances the "overarching concern for moderation" with the public policy enforcing ERISA. *See Goldberger,* 209 F.3d at 53.

The reasonableness of a $352,000 legal fee award is confirmed by a lodestar "cross-check." *Goldberger,* 209 F.3d at 50. Class Counsel's proposed lodestar is $1,014,549.25-which is 46.1% of the Settlement Fund. (McTigue Decl. at Ex. 2.) The hourly rates charged by Class Counsel-*e.g.,* $640 for Mr. Preminger and $500 for Mr. McTigue and Mr. Porter-are generous, considering that Mr. Preminger, Mr. McTigue, and Mr. Porter billed 984.01 hours and "[t]he disproportionately high percentage of work performed by ... [these attorneys] resulted in a disproportionately higher lodestar." *KeySpan,* 2005 WL 3093399, at *16. Approximately $495,463 of Class Counsel's proposed $1,014,549.25 lodestar is attributed to Mr. Preminger, Mr. McTigue and Mr. Porter, while only approximately $97,830 of the lodestar is attributable to the two junior attorneys on the matter. (McTigue Decl. at Ex. 2.) Class

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Counsel "fail[ed] to delegate work to junior, less expensive attorneys [and this is] grounds for reducing [the] award of attorney's fees."*Rossa,* 2006 U.S. Dist. LEXIS 27127, at \*11-12. "A negative multiplier of plaintiff counsel's lodestar is not out of the ordinary in common fund cases, particularly where awarding a positive multiplier of the lodestar may 'swallow up' a significant portion of the settlement funds."*Fears v. Wilhelmina Model Agency, Inc.,* No. 02 Civ. 4911, 2007 U.S. Dist. LEXIS 48151, at \*18 (S.D.N.Y. July 5, 2007) (collecting cases); *see also In re NTL, Inc. Sec. Litig.,* No. 02 Civ. 3013, 2007 U.S. Dist. LEXIS 13661, at \*30 (S.D.N.Y. Mar. 1, 2007) (Peck, M.J.), *adopted by, In re NTL, Inc. Sec. Litig.,* No. 02 Civ. 3013, 2007 U.S. Dist. LEXIS 32285 (S.D.N.Y. May 1, 2008) ("Here ... the multiplier is negative (even at the requested 20%, the multiplier is negative) ... [and] the lodestar cross-check demonstrates that a 15% fee is reasonable because it will not bring a windfall to co-lead plaintiffs' counsel.").

**\*9** Class Counsel's request for reimbursement of expenses in the amount of $37,914.60 appears reasonable. *See In re Ashanti Goldfields,* No. 00 Civ. 717, 2005 U.S. Dist. LEXIS 28431, at \*5 (E .D.N.Y. Nov. 15, 2005) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."). Plaintiffs submitted a list of all costs "reasonable and necessary for the prosecution of this litigation."(Fees Mem. at 16.) The requested fees include, among other things, court fees ($1,320.50), photocopying and reproduction ($4,031.51), deposition transcription ($5,676.90), postage and messenger services ($2,113.10), transportation and lodging ($10,372.33); telephone bills ($702.44); and expert and electronic litigation database support ($13,697.82). (*See* McTigue Decl. at Ex. 2.) The expenses incurred "are the type for which 'the paying, arms' length market' reimburses attorneys." *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R .D. at 468;*see also In re Top Tankers,* 2008 U.S. Dist. LEXIS 58106, at \*59 (approving expenses in full for "photocopying of documents, on-line research, messenger services,

postage, express mail and next day delivery, long distance telephone and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of [the class action]")."For this reason, they are properly chargeable to the Settlement fund." *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. at 468.

## V. Conclusion and Order

For the foregoing reasons, Plaintiffs' motion for final approval of the Settlement [# 76] is granted and Class Counsel's petition for attorneys' fees, costs, and an incentive payment [# 78] is granted in part and denied in part. The Court awards 16% of the $2,200,000 Settlement fund or $352,000 in attorneys' fees and $37,914.60 in expenses.

The parties are directed to participate in a status conference regarding the progress of the distribution to the Class on Wednesday, April 22, 2009, at 9:00 a.m., in Courtroom 21D, 500 Pearl Street, New York, New York. Attorneys' fees and expenses are not to be distributed to Class Counsel until at least 75% of the Settlement Fund has been distributed to the Class.

S.D.N.Y.,2009.
Beane v. Bank of New York Mellon
Slip Copy, 2009 WL 874046 (S.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**TAB G**

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2007 WL 4086339 (M.D.Pa.)
**(Cite as: 2007 WL 4086339 (M.D.Pa.))**

H

Only the Westlaw citation is currently available.

United States District Court,
M.D. Pennsylvania.
Lorie R. BOWERS, Plaintiff
v.
FOTO-WEAR, INC., Donald S. Hare, D. Troy Se-
christ, Lorraine L. Hare, Paul D. Jetter, Mark S.
Sawchak, Each Individually and as an Officer of
Foto-Wear, Inc., Defendants.
**No. 3:CV-03-1137.**

Nov. 15, 2007.

Neil A. Grover, Law Office of Neil A. Grover, Har-
risburg, PA, for Plaintiff.

Foto-Wear, Inc., Lake Ariel, PA, Lorraine L. Hare,
Hawley, PA, pro se.

*MEMORANDUM*

THOMAS I. VANASKIE, District Judge.

**\*1** Plaintiff Lorie Bowers initiated this action
against her former employer, Foto-Wear, Inc., and
its officers, claiming that the company breached its
employment contract with her by failing to pay her
monies due under that agreement. After a jury trial,
Ms. Bowers secured a verdict in her favor, with
compensatory damages of $97,500, plus a liquid-
ated damages award of $24,375. Ms. Bowers now
moves for attorney fees, costs, and prejudgment in-
terest pursuant to the Pennsylvania Wage Payment
and Collection Law (the "WPCL"), 43 Pa.
Cons.Stat. Ann. § 260.1, *et seq.,* and Federal Rule
of Civil Procedure 54(d). (Pl.'s Mot. Att'y Fees,
Dkt. Entry 158, at p. 2-8.)Specifically, Ms. Bowers
requests the following: (1) attorney fees for the leg-
al services provided by Mr. Neil Grover in the
amount of $123,054.75; (2) a separate award of
$2,750 in attorney fees for the legal services

provided by Mr. Richard M. Schall before litiga-
tion; (3) costs in the amount of $10,869.08, or in
the alternative, $5,549.49; (4) prejudgment interest
of $25,418.25 on the breach of contract compensat-
ory damage award; and (5) prejudgment interest
of $6,230.25 on the liquidated damages. (*Id.*) In sum,
Ms. Bowers requests that $168,322.33 be added to
the monetary judgment entered in her favor. (*Id.* ¶
32.)

For the reasons discussed below, the Court will
grant in part and deny in part Ms. Bowers' motion.
Ms. Bowers will be entitled to collect from Defend-
ants $123,054.75 in attorney fees and $5,627.93 in
costs, for a total of $128,682.68. The request for
prejudgment interest is denied.

*I. BACKGROUND*

On July 9, 2003, Ms. Bowers filed a five-count
complaint. (Dkt. Entry 1.) She subsequently
amended her complaint on May 19, 2004. (Dkt.
Entry 27.) Ms. Bowers asserted the following
claims against Foto-Wear, Inc. and its officers: (1)
breach of employment contract for failing to pay
monies; (2) violation of the WPCL, 43 Pa.
Cons.Stat. Ann. § 260.1, *et seq.,* for failing to pay
her commission and benefits due at termination; (3)
violation of the Fair Labor Standards Act (the
"FLSA"), 29 U.S.C. § 201, *et seq.,* and the
Pennsylvania Minimum Wage Act (the "Pa.
MWA"), 43 Pa. Cons.Stat. Ann. § 333.102, *et seq.,*
for failing to pay her overtime wages; (4) unlawful
retaliation against her for making complaints about
Defendants' noncompliance with wage laws; and
(5) violation of the New Jersey Conscientious Em-
ployee Protection Act (the "CEPA"), N.J. Stat.
Ann. 34:19-1, *et seq.,* for terminating her employ-
ment in response to complaints about Defendants'
noncompliance with wage laws. (Dkt. Entry 27.)

On March 22, 2007, in response to cross-motions
for summary judgment, this Court denied both

parties' motions for summary judgement on the breach of contract and WPCL claims, and granted Defendants' motion for summary judgment on Ms. Bowers' FLSA, Pa. MWA, CEPA, and retaliation claims. (Dkt. Entry 105.) The case then proceeded to trial on the contract and WPCL claims.[FN1]

> **FN1.** A more complete recitation of the procedural history and factual background of the this case is found in this Court's memorandum decision resolving the motions for summary judgment. *See Bowers. v. Foto-Wear, Inc.,* No. 3:CV-03-1137, 2007 WL 906417 (M.D.Pa. March 22, 2007).

**\*2** On July 17, 2007, a jury returned a verdict in favor of Ms. Bowers, finding that Foto-Wear, Inc. had breached the employment contract. (Dkt. Entry 147.) The Court then entered judgment in favor of Ms. Bowers and against Defendant Foto-Wear, Inc., on Count I of the amended complaint (breach of contract) in the principal amount of $97,500, with any award of prejudgment interest to be decided in a post-judgment decision. (Dkt. Entry 153, ¶ 1.) The Court also entered judgment in favor of Ms. Bowers and against Defendants Foto-Wear, Inc. and Loraine L. Hare, Executrix of the Estate of Donald S. Hare, on Count II of the amended complaint for the principal amount of unpaid salary and benefits in the amount of $97,500 plus liquidated damages of $24,375, pursuant to 43 Pa. Cons.Stat. Ann. § 260.10.[FN2] *(Id.* ¶ 2.)

> **FN2.** This total amount was subject to any offset for amounts paid in settlement by Co-Defendant Troy Sechrist.

## II. DISCUSSION

Plaintiff has requested attorney fees of $125,804.75, costs in the amount of $10,869.08, or in the alternative $5,549.49, and prejudgment interest totaling $31,648.50. These requests will be addressed *seriatim.*

### A. Attorney Fees

Plaintiff seeks to recover fees for the two attorneys that represented her before and during litigation. (Pl.'s Mot. Att'y Fees, Dkt. Entry 158, ¶ 8.) In particular, she seeks $123,054.75 for the services rendered by her trial counsel, Neil A. Grover, and $2,750 for her pre-litigation counsel, Richard M. Schall. (*Id.* ¶¶ 7, 8.)

According to the WPCL, 43 Pa. Cons.Stat. Ann. § 260.9a(f), a court "shall ... allow costs for reasonable attorney fees of any nature to be paid by the defendant."Courts have held that "an award of attorney fees to a prevailing employee in an action brought under the Wage and Payment Collection Law is mandatory, but the Court retains discretion to determine the amount." *Bair v. Purcell,* 500 F.Supp.2d 468, 494 (M.D.Pa.2007) (citing *Oberneder v. Link Computer Corp.,* 548 Pa. 201, 206, 696 A.2d 148 (Pa.1997); *see also Hensley v. Echerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (emphasizing the discretion allotted to the district court in determining the amount of a fee award).

In the instant case, Plaintiff has employed the lodestar method to calculate her counsel fees. The lodestar method is typically employed in the statutory fee shifting framework. *In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.,* 55 F.3d 768, 821 (3d Cir.1995). The lodestar multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley,* 461 U.S. at 433. The result of the computation is the lodestar, which is strongly presumed to yield a reasonable fee. *Washington v. Phila. County Court of Common Pleas,* 89 F.3d 1031, 1035 (1996) (citing *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)). The two factors of the lodestar, the number of hours and hourly rate, are to be assessed, and then a court may exercise its discretion to adjust the results obtained. *Public Interest Research Group of N. J., Inc. v. Windall,* 51 F.3d 1179, 1190 (1995).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 4086339 (M.D.Pa.)
**(Cite as: 2007 WL 4086339 (M.D.Pa.))**

**\*3** A reasonable hourly rate is calculated according to the prevailing market rates in the community. *Blum v. Sentson,* 465 U.S. 886, 895-96 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The prevailing party bears the burden of establishing by way of satisfactory evidence, "in addition to the attorney's own affidavits," that the requested hourly rates meet this standard. *Washington,* 89 F.3d at 1035.

In arriving at a rate of $200 per hour for litigation time and $250 for trial time beginning eight (8) weeks prior to trial, Mr. Grover relies on *EEOC v. Fed. Express Corp.,* where the court found the hourly rates of $350 and $275 reasonable. No. 1:02-CV-1194, 2005 U.S. Dist. LEXIS 5834, 2005 WL 6073699 (M.D.Pa. January 18, 2005) (finding the hourly fees of $350 and $275 reasonable for attorneys with twenty (20) to twenty-five (25) years experience in employment litigation). Here, Mr. Grover had approximately fifteen (15) years experience at the beginning of this action and approximately nineteen (19) years at the time trial commenced. The proposed hourly rates do not appear to be unreasonable for employment litigation considering his experience. Moreover, Defendants have not objected to these rates. Thus, the Court finds that Mr. Grover has adequately shown the market rate and that his rates are reasonable in comparison.[FN3]

> [FN3.] Plaintiff has not indicated the hourly rates for Mr. Schall.

The Court is obligated "to review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described [,] and then exclude those that are 'excessive, redundant, or otherwise unnecessary.' " *Public Interest Research Group of N.J., Inc.,* 51 F.3d at 1188 (quoting *Hensley,* 461 U.S. at 434). Our Court of Appeals has admonished the district courts to undertake a "thorough and searching analysis" and that "it is necessary that the Court go line, by line, by line through the billing records supporting the fee request ." *Evans v. Port Auth. of N.Y. & N.J.,* 273 F.3d 346, 362 (3d Cir.2001)

(internal citations omitted).

Mr. Grover has recorded 647.25 total hours of legal work over the past four (4) years in connection with the case at bar. (Ex. A, Pl.'s Mot. Att'y Fees, Dkt. Entry 158-2, ¶ 10.) Of the total claimed, 501.7 hours were performed at the hourly rate of $200 per hour, and 145.55 hours at the trial practice rate of $250 per hour. (*Id.* ¶ 14.)Mr. Grover has also provided a detailed description of his legal work, including the date, task accomplished and time expended for each entry. (Ex. B, Pl.'s Mot. Att'y Fees, Dkt. Entry 158-3.) After a thorough review, this Court does not find Mr. Grover's hours unnecessary or duplicative.[FN4]Given the ardent opposition to the litigation, the time expended was reasonable and necessary. The lodestar is thus $136,727.50.[FN5]

> [FN4.] Plaintiff has not included the billable hours for Mr. Schall.
>
> [FN5.]*Lodestar Calculation:*
>
> 501.7 (hours) x $200 (rate) = $100,340
>
> 145.55 (hours) x $250 (rate) = $36,387.50
>
> *Total Fee:* $100,340 + $36,387.5 = $136,727.50

With a lodestar figure of $136,727.50, the Court must now determine whether an adjustment to the lodestar is warranted. Mr. Grover has proposed a 10% ($36,387.50) reduction to the lodestar to account for inefficiencies and issues removed from this action.[FN6](Pl. Att'y Aff., ¶¶ 12-14.) Defendants assert, however, that $125,805 in attorneys fees plus expenses in order to collect a judgment of $121,875 is unreasonable, especially in a breach of contract or collection case against a corporation. (Opp'n Br. Pl.'s Mot. Att'y Fees, Dkt. Entry 162, at p. 7.) Specifically, Defendants argue that portions of Mr. Grover's work were exclusively, or almost exclusively, focused on unsuccessful claims from this action. (*Id* . at p. 6 n. 2.) Defendants list twelve

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 4086339 (M.D.Pa.)
**(Cite as: 2007 WL 4086339 (M.D.Pa.))**

(12) days in which Plaintiff's counsel focused on the unsuccessful claims, totaling $13,100 in attorney fees. (*Id.*)

> FN6. Mr. Grover also excluded approximately 30 hours of work from the total hours worked. (Mem. Supp. Mot. Att'y Fees, Dkt. Entry 159, at 4; Pl. Att'y Aff., Dkt. Entry 158-2, ¶ 8.)

**\*4** A district court may adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained. *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990) (citing *Hensley,* 461 U.S. at 434-37.)) In fact, "[w]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result obtained." *Hensley,* 461 U.S. at 434-35.

In this case, Plaintiff succeeded on the breach of contract and WPCL claims. This Court dismissed the other four (4) claims. *See Bowers. v. Foto-Wear, Inc.,* No. 3:CV-03-1137, 2007 WL 906417 (M.D.Pa. March 22, 2007). Mr. Grover's proposal to reduce his attorney fees by $36,387.50 would more than offset the twelve (12) days in which he worked on the dismissed claims. This reduction would also be a reasonable adjustment to the lodestar. It accounts for the four (4) dismissed counts, and at the same time, gives credit for the hours worked between the motion for summary judgment and jury verdict phases of the litigation, when Plaintiff exclusively worked on the two successful claims. FN7

> FN7. This Court's order granting in part and denying part summary judgment was issued on March 22, 2007. (Dkt. Entry 105.) The jury verdict was entered on July 17, 2007. (Dkt. Entry 154.) Mr. Grover worked a total of 151.95 hours during this period. (Ex. B, Pl.'s Mot. Att'y Fees.)

Because Plaintiff has failed to submit documentation relating to Mr. Schall's experience, hourly rate, or hours worked, the attorneys fees requested on his behalf will be denied. Therefore, the Court will grant Plaintiff the sum of $123,054.75 in attorneys fees.

**B. Costs**

Federal Rule of Civil Procedure 54(d)(1) provides, in pertinent part, that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs ..."FED. R. CIV. P. 54(d)(1). Thus, the determination of which costs will be awarded to the prevailing party is a matter left to the sound discretion of the district court. *Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 232, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964)."Although that discretion is not unbounded it allows the district court a wide range within which its determination will not be upset by an appellate court." *Copperweld Steel Co. v. Demag-Mannesmann-Bohler,* 624 F.2d 7, 8 (3d Cir.1980); *Pearlstine v. United States,* 649 F.2d 194, 198 (3d Cir.1981) (recognizing that the taxation of costs is a matter within the discretion of the trial court).

Rule 54(d)(1) creates a strong presumption that costs are to be awarded to the prevailing party. *In re Paoli R.R. Yard PCB Litig.,* 221 F.3d 449, 462 (3d Cir.2000). Those costs mentioned in Rule 54(d)(1) are defined in 28 U.S.C. § 1920 to include:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

**\*5** 28 U.S.C. § 1920. Not only are taxable expense recoverable, but Rule 54(d)(2) allows claims for "related non-taxable expenses." Fed.R.Civ.P. 54(d)(2). A district court is permitted to award non-taxable expenses, which may include costs for postage, telephone, expert fees, travel, deposition transcripts, shipping, parking, lodging and food. *David v. AM Intern.,* 131 F.R.D. 86, 90 (E.D.Pa.,1990) (citing *Rank v. Balshy,* 590 F.Supp. 787, 801-804 (M.D.Pa.1984)). The costs and expenses incurred by counsel are subject to the court's determination. *Apple Corps. Ltd. v. Int'l Collectors Soc.,* 25 F.Supp.2d 480, 497 (D.N.J.1998) (citing *Abrams v. Lightolier Inc.,* 50 F.3d 1204, 1225 (3d Cir.1995)).

Mr. Grover has requested reimbursement of costs and expenses in the amount of $10,869.08, which includes Mr. Grover's postage charges and expenses incurred by the Plaintiff herself. In the alternative, Mr. Grover requests $5,549.49, which excludes the two expenses mentioned above. The list of Mr. Grover's costs is broken down into seven (7) categories: (1) filing fees; (2) court reporters; (3) printing, binding and copying; (4) computerized legal research; (5) attorney travel expenses for D. Troy Sechrist deposition (CEO of Foto-Wear, Inc.); (6) attorney travel expenses for two-days of depositions at Foto-Wear Headquarters; and (7) postage charges and client incurred expenses.

The Court will award Mr. Grover all the categories of costs, except the client incurred expenses in category seven (7). All of these costs are deemed fair, reasonable and necessary to the litigation. District courts in this Circuit have routinely allowed these types of costs. *David,*131 F.R.D. at 90 (citing *Rank v. Balshy,* 590 F.Supp. 787, 801-804 (M.D.Pa.1984)); *Danny Kresky Enter. Corp. v. Magid,* 716 F.2d 215, 219 (3d Cir.1983); *see also Sypniewski v. Warren Hills Reg'l Bd. of Ed.,* No. 01-3061, 2006 WL 1675066 (D.N.J. June 14, 2006)

(granting the plaintiff's request for additional non-taxable expenses, including photocopying expenses, telephone expenses, travel time and postage); *cf. Lenahan v. Sears, Roebuck & Co.,* No. 02-CV-0045, 2006 WL 2085282, at \*22 (D.N.J. July 24, 2006) (citing *Yong Soon Oh v. AT & T Corp.,* 225 F.R.D. 142, 154 (D.N.J.2004)) (granting counsel's request, in a class action case, for costs of legal research, travel, experts, mediators and copying). Moreover, allowing these costs furthers the purpose of the WPCL to "make employees whole again" and "protect employees when employers breach a contractual obligation to pay wages." *Oberneder,* 548 Pa. at 532-33, 699 A.2d 710.

With respect to Plaintiff's personal expenses included in category seven (7), Plaintiff has provided a list of her expenses, such as travel, postage, long distance telephone charges, shipping charges, fax charges, parking, tolls and commercial copy charges, for a total expense of $5,241. (Ex. C, Pl. Mot. Att'y Fees, Dkt. Entry 158-4, at 3-4.) Plaintiff has also provided a detailed description of these costs. (Ex. D, Pl. Mot. Att'y Fees, Dkt. Entry 158-5.)

**\*6** Plaintiff has failed to cite legal authority in support of her claim for reimbursement of her personal expenses. Accordingly, Plaintiff's request for reimbursement of personal expenses will be denied. Plaintiff is thus awarded a total of $5,627.93 in costs.

### C. Prejudgment Interest

The decision whether or not to award prejudgment interest is within the sound discretion of the trial court. *Booker v. Taylor Milk Co.,* 64 F.3d 860, 868 (3d Cir.1995). Prejudgment interest should be awarded "in response to considerations of fairness and denied when its exaction would be inequitable."*Id.* (internal citations omitted).

Defendants argue that Plaintiff would receive a windfall or dual payment if entitled to collect both

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2007 WL 4086339 (M.D.Pa.)

**(Cite as: 2007 WL 4086339 (M.D.Pa.))**

liquidated damages and prejudgment interest. (Def.s' Br. Opp'n Mot. Att'y Fees, Dkt. Entry 162, at 1.) In arguing against an award of prejudgment interest, Defendants primarily rely on *Signora v. Liberty Travel, Inc.,* where the court found the prevailing party could not recover both liquidated damages and prejudgment interest. 886 A.2d 284 (Pa.Super.Ct.2005). The Superior Court reasoned that both prejudgment interest and statutory liquidated damages "are intended to compensate for the loss of use of the proper amount of wages payable ." *Signora,* 886 A.2d at 296 (citing *Friedrich v. U.S. Computer Sys., Inc.,* Civ. A. No. 90-1615, 1995 WL 412385, at *4 (E.D.Pa. July 10, 1995). Under the WPCL, the award of liquidated damages is not considered punitive in nature, but goes to compensate the prevailing party where interest is not separately awarded. *Id.* The Superior Court thus found that an award of liquidated damages and prejudgment interest would constitute a dual recovery or a windfall. *Id.*

The logic of *Signora* and *Friedrich* is compelling. Under the WPCL, liquidated damages are intended to compensate an employee for wages wrongfully withheld, and not to punish the defendant.[FN8] Under these circumstances, an award of prejudgment interest may not be made. Thus, Plaintiff's request for prejudgement interest is denied.

> FN8. If the liquidated damages award under the WPCL were considered punitive in nature, there would be a stronger argument that both liquidated damages and prejudgment interest should be awarded. The two would serve different interests-the prejudgement interest would serve as compensation to the prevailing party for the unpaid wages and the liquidated damages would serve as punishment to the employer.

An appropriate Order follows.

### ORDER

AND NOW, THIS 15th DAY OF NOVEMBER, **2007,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** Plaintiff's motion for attorney fees, costs and prejudgment interest is **GRANTED IN PART** and **DENIED IN PART** as follows:

1) Plaintiff is awarded attorneys fees of $123,054.75.

2) Plaintiff is awarded costs of $5,549.49.

3) Plaintiff's request for prejudgment interest is **DENIED.**

M.D.Pa.,2007.
Bowers v. Foto-Wear, Inc.
Not Reported in F.Supp.2d, 2007 WL 4086339 (M.D.Pa.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.